# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL VANDERHEIDEN, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>UBIQUITI NETWORKS, INC., ROBERT J. PERA, KEVIN RADIGAN, CRAIG L. FOSTER and MARK SPRAGG,<br><br>  Defendants. | No.: 1:18-cv-01620<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF XIYA QIAN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |
| XIYA QIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>UBIQUITI NETWORKS, INC., ROBERT J. PERA, KEVIN RADIGAN, CRAIG L. FOSTER AND MARK SPRAGG,<br><br>  Defendants. | No.: 1:18-cv-01841 |
| PJOHN KHO, Individually and on Behalf Of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>UBIQUITI NETWORKS, INC., ROBERT J. PERA AND KEVIN RADIGAN,<br><br>  Defendants. | No.: 1:18-cv-02242 |

Movant Qian[1] submits this Memorandum of Law in further support of her motion for consolidation of the Related Actions, appointment as Lead Plaintiff, and approval of her selection of counsel, and in opposition to the appointment of competing applicant Kho.

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 432 (E.D. Va. 2000) (describing a "sequential procedure for litigants and the district court to follow in determining who among the members of the alleged class is the 'most adequate plaintiff' to serve as the lead plaintiff").  This presumption can only be rebutted upon proof that the movant with the largest financial interest is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Mere speculation or innuendo is insufficient to rebut this presumption.  *See*, *e.g.*, *Foley v. Transocean, Ltd.*, 272 F.R.D. 126, 131-33 (S.D.N.Y. 2011) (finding that the presumption "may only be rebutted upon "proof" of inadequacy or atypicality and rejecting challenge founded on speculation).

Here, as discussed more fully in Qian's opposition brief (Dkt. No. 20), the movant with the greatest financial interest in the subject matter of this litigation is Qian, with losses of approximately $464[2] in connection with her Class Period purchases of Ubiquiti securities.  *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (finding the amount of the financial loss to be "the most significant factor in determining financial interest).  Although competing lead plaintiff applicant Kho misleadingly characterizes his own loss of $140 as "roughly equal" to that of Qian (Dkt. No. 21 at 4) and on that purported basis urges the Court to deviate from nearly universal practice and consider factors other than loss to assess

---

[1] All capitalized terms are defined in Qian's moving or opposition briefs, unless otherwise indicated.  (*See* Dkt. Nos. 15, 20.)  Unless otherwise indicated, all docket citations are to *Vanderheiden v. Ubiquiti Networks, Inc. et al.*, 1:18-cv-01620.

[2] In her moving and opposition papers, Qian alleged a loss of $298, based on her Class Period transactions set forth accurately and in full in her certification.  (Dkt. No. 16-2.)  As discussed below, Qian's counsel subsequently learned that Qian sold 33 shares of Ubiquiti common stock at $63.66 per share on February 28, 2018—after the end of the Class Period—resulting in a total realized loss of $464 in connection with the fraud at issue herein.

financial interest, the fact remains that Qian's losses are more than three times as large as those of Kho. Objectively, these losses are *not* "roughly equal."

In addition to alleging the greatest losses, and thus the largest financial interest in the litigation under the meaning of the PSLRA, Qian has made a *prima facie* showing of adequacy and typicality under Rule 23 of the Federal Rules of Civil Procedure. Accordingly, Qian has more than satisfied the requirements entitling her to the strong presumption as the "most adequate plaintiff," and should be appointed as Lead Plaintiff. 15 U.S.C § 78u-4(a)(3)(B)(iii)(II). Kho, meanwhile, is inadequate within the meaning of Rule 23, having submitted an inaccurate, and thus defective, certification that failed to disclose in full his Class Period transactions in Ubiquiti securities as mandated by the PSLRA. 15 U.S.C. § 78u-4(a)(2); *see*, *e.g.*, *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 406-10 (D. Mass. 2007) (finding that a faulty PSLRA certification, among other issues, demonstrated inadequacy). Accordingly, even separate and apart from the fact that Kho does not possess the greatest financial interest in this litigation, he would in any event not qualify as the "most adequate plaintiff" due to his failure to satisfy the requirements of Rule 23.

Accordingly, Qian respectfully requests that the Court appoint her Lead Plaintiff and otherwise grant her motion.

## ARGUMENT

### I. QIAN IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

#### A. Qian Has The Largest Financial Interest In The Relief Sought By The Class

Qian, with a recoverable loss of roughly $464 in connection with her purchases of Ubiquiti securities during the Class Period, has the greatest financial interest in this litigation. The PSLRA does not define "largest financial interest", but courts in this and other jurisdictions across the country have assessed a movant's financial interest for lead plaintiff status in terms of the movant's losses. *See*, *e.g.*, *Transocean Ltd.*, 272 F.R.D. at 128 ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors, the approximate loss suffered by the

movant"). "[T]he best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball." *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, 2006 U.S. Dist. LEXIS 3028, at *14 (S.D.N.Y. Jan. 25, 2006). *See also Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses."); *In re Sequans Communs. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 420 (E.D.N.Y. 2018) ("the approximate losses suffered[] is considered to be the most important" factor); *Khunt v. Alibaba Group Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015) (financial loss "is the most important" factor); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012) ("most courts 'place the most emphasis on the last of the four factors: the approximate loss suffered by the movant.'") (quoting *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008)).

Indeed, Kho's own counsel, Robbins Geller Rudman & Dowd LLP ("RGRD"), is demonstrably aware that a movant's loss is the most significant factor to be considered in assessing financial interest, having consistently asserted loss as the most appropriate measure of financial interest, generally to the exclusion of the other three *Lax* factors, in prior PSLRA actions. *See*, *e.g.*, *Robinson v. Diana Containerships*, 2:17-cv-06160 (E.D.N.Y.), Dkt. No. 40 at 5; *Lawrence Henry Smallen and Laura Anne Smallen Revocable Living Trust et al. v. The Western Union Company*, 1:17-cv-00474 (D. Colo.), Dkt. No. 24 at 3-4; *Rao v. Quorum Health Corporation*, 3:16-cv-02475 (M.D. Tenn.), Dkt. No. 59 at 5-7. Indeed, RGRD briefed this precise issue extensively in seeking appointment as lead counsel in *In re Goldman Sachs Group, Inc. Sec. Litig.*, 1:10-cv-03461 (S.D.N.Y.) ("*Goldman Sachs*"). In that action, RGRD stated, in relevant part:

> Movants who lack the largest losses often "contend that [courts] should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended." *In re Bally Total Fitness Sec. Litig.*, 04-cv-3530, 2005 WL 627960, at *5 (N.D. Ill. Mar. 15, 2005). As the *Bally* court noted in rejecting a similar attempt to downplay the significance of losses,

3

> however, "[i]t is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all, and the [IIG] provides no explanation." *Id.* Rather, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball." *Id.*
>
> \* \* \* \*
>
> Time and again, in cases where two factors favor one movant and a third factor favors a second movant, "***the court must weigh the approximate losses suffered to determine the plaintiff with the largest financial loss.***" . . . This makes sense because the PSLRA's test at this stage requires the Court to determine which movant has the "largest financial interest ***in the relief sought by the class***." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Here, the interest "sought by the class" is monetary damages based upon recoverable losses. . . . As such, losses – not how many net shares a movant purchased – is the best measure of the "relief sought by the class."

*Goldman Sachs*, Dkt. No. 29 at 2-5. (Emphases in original.) RGRD again briefed the issue at length in seeking appointment as lead counsel in *Smilovits v. First Solar, Inc.*, 2:12-cv-00555 (D. Ariz.) ("First Solar"), taking the same position: "the presumptive lead plaintiff is the one with the largest financial ***loss***." *First Solar*, Dkt. No. 71 at 2 (internal quotations omitted) (emphasis in original).

On this analysis, the largest financial interest belongs to Qian. The following chart compares Qian's losses to those of Kho:

| Movant | Recoverable Loss |
|---|---|
| Xiya Qian | $464 |
| John Kho | $140 |

Kho misleadingly characterizes his loss of $140 as "roughly equal" to that of Qian, and argues on this supposed basis that the Court should therefore consider other factors in assessing financial interest. (Dkt. No. 21 at 4.) However, the losses at issue herein are objectively ***not*** "roughly equal." ***Qian's loss is more than three times as large as Kho's***. Accordingly, "[t]he inquiry need not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball." *Friedman, Billings, Ramsey Group,*

4

*Inc.*, 2006 U.S. Dist. LEXIS 3028, at *14.  Qian plainly incurred a significantly larger loss than Kho, and thus has the greatest financial interest in this litigation by a significant margin.

In support of his argument that the other three *Lax* factors in the aggregate somehow outweigh Qian's greater loss, Kho cites only a single case: *City of Hollywood Firefighters' Pension Fund v. Transdigm Group, Inc.*, 1:17-cv-1677 (N.D. Ohio. Dec. 5, 2017).  As an initial matter, the competing losses at issue in *Transdigm* were respectively $40,905 and $76,311—a difference of only 46%, significantly less than the disparity between the losses of Kho and Qian (again, Qian's losses are more than three times as large as Kho's).  More significantly, in applying the *Lax* factors to determine financial interest within the meaning of the PSLRA, the overwhelming majority of courts have assessed the first three factors only for the purposes of "approximating an investor's potential recovery."  *Pio v. GM Co.*, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014).  That is, there is no intrinsic weight to each of these factors such that they would outweigh an investor's recoverable loss for the purposes of assessing financial interest.  *See*, *e.g.*, *In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *14 (N.D. Ill. 2005) ("It is not self-evident . . . what weight these factors should be given in relation to the amount of loss, or **even why we should consider them at all**") (emphasis added).

### B. Qian Otherwise Satisfies The Typicality And Adequacy Requirements Of Rule 23

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large."  *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994)).  The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the

5

class." *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

As set forth in her opening and opposition briefs, Qian satisfies the adequacy and typicality requirements of Rule 23. Like all class members, Qian alleges that the defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Ubiquiti, or omitted to state material facts necessary to make the statements they did make not misleading. Like all class members, Qian traded Ubiquiti securities at prices artificially inflated by defendants' misrepresentations and/or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the class claims, satisfy the typicality requirement of Rule 23(a)(3).

## II. KHO IS ATYPICAL AND INADEQUATE TO REPRESENT THE CLASS

Even assuming, *arguendo*, that Kho possessed the greatest financial interest in this litigation (and for the reasons discussed above, Qian respectfully submits that Kho does not), Kho fails to satisfy the adequacy and typicality requirements of Rule 23, and as such is disqualified from serving as Lead Plaintiff. As discussed above, the presumptively "most adequate plaintiff" is the movant with the largest financial interest who has also made a *prima facie* showing that he meets the adequacy and typicality requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). After a presumptive lead plaintiff is identified, the Court must then determine if the presumption has been rebutted with proof that the "presumptively most adequate plaintiff will not . . . adequately protect the interest of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Beck*, 457 F.3d at 297 (if subject to a unique defense, "the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class").

Here, Kho is inadequate to represent the putative class within the meaning of Rule 23 because he submitted an inaccurate and defective shareholder certification. On March 13, 2018, Kho filed his initial complaint in the Related Actions, appending a shareholder certification, dated March 8, 2018, and transaction history that reflected losses of $493 in connection with his Class Period purchases of Ubiquiti securities. (*Kho v. Ubiquiti Networks, Inc. et al.*, 1:18-cv-02242, Dkt. No. 1 at *42.) Kho's certification purported to list **all** of his Class Period transactions in Ubiquiti securities, and Kho "declare[d] under penalty of perjury" that the certification's contents were "true and correct." (*Id.* at *43.) Then, on May 7, 2018—**60 days** after executing his shareholder certification—Kho disclosed additional Class Period transactions in Ubiquiti securities, which had the effect of reducing his realized loss to only $140. (Dkt. No. 21-1.) Kho's certification was thus defective, and Kho initially overstated his losses by roughly $353, or **more than 250%.** Courts have found lead plaintiff movants to be inadequate on the basis of submitting defective PSLRA certifications. *See*, *e.g.*, *Steamfitters Local 449 Pension Fund. v. Cent. European Distrib. Corp.*, 2012 U.S. Dist. LEXIS 118693, at *36 (D.N.J. Aug. 22, 2018) ("The PSLRA has specific requirements for lead plaintiff certifications, and the Court finds that there is substantial likelihood that the [movants] would be subject to a unique defense regarding invalid or lack of certification because the validity of their purported certification is fairly debatable."); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1337 (N.D. Ala. 2000) ("The Court has serious reservations about awarding the lead plaintiff mantle to an investor . . . where the veracity of the representations made in the certifications filed by that investor . . . can be questioned."); *In re Organogenesis Sec. Litig.*, 241 F.R.D. at 406-10 (finding that a faulty PSLRA certification, among other issues, demonstrated inadequacy); *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339, 342-43, 348 (D. Mass. 2005) (decertifying class including because of inaccurate certification).

For these reasons, irrespective of Kho's financial interest, Kho is not the most adequate plaintiff because he is inadequate within the meaning of Rule 23. As such, Kho may not be appointed Lead Plaintiff.

### III. THE PRESUMPTION IN FAVOR OF QIAN HAS NOT BEEN AND CANNOT BE REBUTTED

Possessing the greatest financial interest in this litigation, and having made a *prima facie* showing of adequacy and typicality pursuant to Rule 23, Qian is presumptively the most adequate plaintiff. This presumption can only be rebutted upon proof that Qian is inadequate or atypical. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No competing movant has so much as argued that Qian is an inadequate or atypical class representative, let alone met the high standard of ***proof*** of inadequacy or atypicality required by the PSLRA. Accordingly, the presumption in favor of Qian remains unrebutted.

Anticipating a potential argument by Kho, Qian respectfully submits that her omission of post-Class Period transactions from the certification and damages analysis submitted with her moving brief have no bearing on her adequacy within the meaning of Rule 23, and certainly falls well short of the proof necessary to rebut the presumption in favor of her adequacy. Qian's certification was signed on February 26, 2018, and by its express terms, and pursuant to the requirements of the PSLRA, appended as Schedule A a list of all of Qian's transactions in Ubiquiti securities ***during the Class Period***. (Dkt. No. 16-2.) Subsequently, on February 28, 2018—***after*** the end of the Class Period—Qian sold 33 shares of Ubiquiti common stock at $63.66 per share. These additional transactions caused Qian's realized loss in connection with her transactions in Ubiquiti securities to increase to $464. Qian's certification was accurate when signed and filed, and her counsel learned of Qian's post-Class Period transactions after the filing of Qian's opposition brief. Qian respectfully submits that understating her losses in her moving brief was inadvertent, and not calculated to—and indeed, would not—gain her any advantage in the instant lead plaintiff appointment process. By contrast, as discussed in greater detail above, Kho in fact submitted an inaccurate certification to the Court, thereby ***overstating*** his losses by roughly $353, or ***more than 250%***.

## CONCLUSION

For the foregoing reasons, Qian respectfully requests that the Court grant her motion in its entirety and deny the competing application of Kho.

Dated: May 14, 2018

<div style="margin-left: 3em;">

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
    ahood@pomlaw.com
    hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Movant and*
*Proposed Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Movant*

</div>