## Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/14/19

RECEIVED
MAR 13 2019
CHAMBERS OF
JUDGE MARRERO

Direct Dial Number
+1-212-455-3525

E-mail Address
pkazanoff@stblaw.com

BY HAND DELIVERY                                March 12, 2019

Re:   *In re Ubiquiti Networks, Inc. Securities Litigation*, 18-cv-01620 (VM)

Hon. Victor Marrero
United States District Court
United States Courthouse
500 Pearl Street
New York, NY 10007

Dear Judge Marrero:

     I write on behalf of Defendants[1] in the above-captioned matter. In accordance with Rule II.B.1 of the Court's Individual Rules of Practice, the parties exchanged letters regarding pleading deficiencies in the Consolidated Amended Complaint ("Complaint" or "CAC"). Plaintiff has not amended the Complaint to cure these deficiencies and therefore, for the reasons stated below, the filing of a motion to dismiss is warranted.

### I. Untimely claims asserted in the Complaint should be dismissed.

     Section 10(b) claims are time barred when brought more than two years after "a reasonably diligent plaintiff would have discover[ed] the facts constituting the violation." *See Merck & Co. v. Reynolds*, 559 U.S. 633, 649, 653 (2010). Plaintiff does not, and cannot, dispute that the "facts" underlying Plaintiff's claims regarding Ubiquiti's accounts receivable and internal controls were publicly available by February 21, 2016. Plaintiff's sole response is that "scienter allegations . . . came to light within two years of when the initial complaint in this action was filed in February 2018." *See* Pl. Ltr. at 1. But Plaintiff concedes that these scienter allegations – which are deficient for the reasons stated below – were discoverable more than two years before the initial complaint was filed on February 21, 2018. *See* CAC ¶ 138 ("The flow of Ubiquiti's products through its distributors has *always* been murky") (emphasis added); ¶ 339 ("Ubiquiti also discussed these [distributor] issues in its SEC filings from *before through the beginning of the Class Period*" (*i.e.*, May 9, 2013)) (emphasis added); CAC ¶ 342 ("It turned out that in 2015, Ubiquiti still had totally inadequate internal controls").[2] In addition, Plaintiff's claim that Ubiquiti falsely attributed its

---

[1] "Defendants" are Ubiquiti Networks, Inc. ("Ubiquiti" or the "Company") and Individual Defendants Robert Pera, Craig Foster, Mark Spragg, and Kevin Radigan.

[2] Moreover, scienter allegations unrelated to accounts receivable and internal controls are not "facts constituting the violation." *Merck*, 559 U.S. at 637. And these post-February 2016 scienter allegations, for instance, the publication of the Citron Report, are premised on performing a comparative analysis—the same one Plaintiff here performs—using information that has been publicly available for more than two years.

Hon. Victor Marrero -2- March 12, 2019

success to a "disruptive business model" is derivative of, and relies on the same allegations as, its "internal controls" and "accounts receivable" claims, and likewise is untimely. *See* CAC ¶¶ 199, 341, 351. For these reasons, all statements concerning accounts receivable, internal controls, and Ubiquiti's business model made prior to February 21, 2016 are not actionable.[3]

## II. The Complaint fails to meet the PSLRA's heightened pleading standard.

***A. The Complaint does not plead actionable misstatements or omissions.*** To satisfy the heightened pleading standards of Rule 9(b) and the PSLRA, Plaintiff must, but does not, specify the statements alleged to be fraudulent, identify the speaker, and explain why the statements were false. *See ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

*1. Statements regarding Ubiquiti's accounts receivable.* Plaintiff alleges inconsistencies between Ubiquiti's accounts receivables and foreign companies' reported trade payables, but the Complaint does not allege with particularity that any of the challenged statements were actually false. *See In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 410–12 (S.D.N.Y. 2013) (dismissing allegations that SEC filings "must be false because they do not match [foreign] filings"). The Complaint fails to allege falsity given that Ubiquiti and its foreign distributors are not alleged to apply the same U.S. GAAP standards, share the same reporting periods, or adhere to the same disclosure rules. *See In re China XD Plastics Company Ltd. Sec. Litig.*, No. 14 Civ 5308 (GBD), 2016 WL 1241522, at *6 (S.D.N.Y. Mar. 23, 2016) (noting a comparison between foreign financials must be "substantively appropriate"). Plaintiff's alternative theory, that an SEC investigation into related topics is sufficient to plead falsity, fails as a matter of law. *Lipow v. Net1 UEPS Techs., Inc.*, No. 13 Civ 9100 (ER), 2015 WL 5459730, at *17 (S.D.N.Y. Sept. 16, 2015) ("[G]overnment investigations cannot bolster allegations . . . that do not exist.").

*2. Statements regarding Ubiquiti's internal controls.* Plaintiff does not dispute that the Complaint must allege Defendants *knowingly* misrepresented both the sufficiency of the Company's internal controls and the ensuing remediation. *See Novak v. Kasaks*, 216 F.3d 300, 308–09 (2d Cir. 2000). Rather than plead specific facts that Defendants allegedly concealed, Plaintiff claims the "sheer breadth" of the alleged controls failures "support the Complaint's allegations." Pl. Ltr. at 2. Courts reject claims that the "depth and breadth of the internal controls deficiencies" are sufficient to plead securities fraud. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 297 (S.D.N.Y. 2014).[4] While Plaintiff baldly claims that Defendants made "unfounded reassurances" about Ubiquiti's internal controls during and after the remediation, *see* Pl. Ltr. at 2, Plaintiff has not identified particularized allegations in the Complaint that show Defendants made false assurances about the Company's remediation process, or did so knowingly. Rather, Plaintiff relies on claims by a confidential witness that Ubiquiti replaced its former accounting team, which are consistent with Ubiquiti's 2017 disclosure that it had "recruit[ed] and transition[ed] the leadership team within the finance organization." CAC ¶ 70.

*3. Statements regarding Ubiquiti's business model.* Neither the Complaint nor Plaintiff's letter explains why the tenets of Ubiquiti's "disruptive" business philosophy are objectively false. Plaintiff instead claims that Ubiquiti's strategy of offering cost-effective products must be false

---

[3] *See* CAC ¶¶ 200–224, 232–235.

[4] Plaintiff's cases are inapposite because they involve concrete evidence of "extensive corruption," *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380–81 (S.D.N.Y. 2015), or misstated financial results and lack of remediation efforts, *Varghese v. China Shenghuo Pharm.*, 672 F. Supp. 2d 596, 607–08 (S.D.N.Y. 2009).

because of a purported failure to disclose "improper practices." *See* CAC ¶ 199(iii). "Repeatedly and conclusorily referring to [a company's third party] relationships as 'improper'" does not make them so. *See In re Francesca's Holdings Corp. Sec. Litig.*, No. 13 Civ 6882 (RJS), 2015 WL 1600464, at *7, *16 (S.D.N.Y. Mar. 31, 2015). Furthermore, Ubiquiti's statements about its industry niche are precisely the type of generalized statements that courts rule are not actionable. *See Schaffer v. Horizon Pharma PLC*, No. 16 Civ 1763 (JMF), 2018 WL 481883, at *9 (S.D.N.Y. Jan. 18, 2018) (statements "extolling [a] 'unique commercial business model'" were protected puffery).[5]

*4. Statements regarding Ubiquiti's financial forecasts.* Plaintiff claims that Defendants "did not have any basis" for Ubiquiti's second quarter 2018 financial forecasts because a new Company product (*i.e.*, the FrontRow camera) underperformed and was already on the market when the forecasts were made. Pl. Ltr. at 2. But Plaintiff does not allege that Defendants knew at the time the challenged forecasts were made that the product's performance would materially impact those forecasts. Moreover, such a prediction would have required clairvoyance, given (as stated in Ubiquiti's February 8, 2018 Form 10-Q,[6] incorporated by reference in the Complaint) that the FrontRow Camera's underperformance was not realized until the 2017 holiday season, which was *after* the second quarter forecasts were disclosed. Plaintiff also ignores the plain text of the second quarter 2018 earnings disclosure, which cautioned investors about the risk that materialized: future demand could impact future performance. With this cautionary language, "no reasonable investor could have found the statement[s] materially misleading." *See Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 141 (2d Cir. 2010).

*5. Statements regarding the number of registered users in the Ubiquiti Community.* As Defendants explained in their letter, the Ubiquiti Community claims are based on hindsight and the Complaint does not plead that the number of registered users in Ubiquiti's online forum was material. Plaintiff's response is that Defendants have not supported their argument that the registered users metric was immaterial. Pl. Ltr. at 2. But the burden to plead materiality rests with Plaintiff (not Defendants). *See ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) ("In order to succeed on a [Section 10(b)] claim, a '*plaintiff must* establish that the defendant . . . made a materially false statement or omitted a material fact . . .'") (emphasis added). Plaintiff claims – citing paragraphs 103–117 of the Complaint – that unspecified "[c]ommunity metrics" were "essential" to Ubiquiti's business model, Pl. Ltr. at 2, but nowhere in the Complaint (including those paragraphs) does Plaintiff plead facts that show Ubiquiti represented the registered users metric itself was material. At most, the allegations in the Complaint show that the Ubiquiti Community is one of multiple aspects of the Company's business model and that one of multiple metrics used in descriptions of that Community was incorrectly stated. Moreover, the Complaint itself cites to an industry report that

---

[5] Plaintiff's cases are inapposite because they involve statements touting compliance processes that were neither generalized nor true. *See In in re Signet Jewelers Ltd. Sec. Litig.*, No. 16 Civ 6728 (CM), 2018 WL 6167889, at *12 (S.D.N.Y. Nov. 26, 2018) (statements that a credit portfolio was "carefully managed" and "high quality" were not puffery because of issuer's reckless underwriting processes); *In in re VEON Ltd. Sec. Litig.*, 15 Civ 8672 (ALC), 2017 WL 4162342, *2, *9 (S.D.N.Y. Sept. 19, 2017) (detailed description of issuer's compliance program was not puffery).

[6] *Available at* https://www.sec.gov/Archives/edgar/data/1511737/000151173718000005/ubnt-12312017x10q.htm.

Hon. Victor Marrero -4- March 12, 2019

explains "management has not highlighted the 4 million registered users metric in our discussions as a critical metric for evaluating the company." *See* CAC ¶ 320.[7]

*6. Omissions.* The parties agree that an omission is only actionable if there is a duty to disclose. *Levitt v. J.P. Morgan Sec., Inc.*, 710 F.3d 454, 465 (2d Cir. 2013). Plaintiff claims that the SEC was investigating the Company in 2016, but does not explain why that allegation, even if true, gave rise to any disclosure obligation. *See In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("[A] government investigation, without more, does not trigger a generalized duty to disclose."). Instead, Plaintiff cites to *Menaldi v. Och-Ziff Capital Management Group LLC*, a case that concerns the *completeness* of a company's disclosure about an investigation, rather than any obligation to disclose the existence of one. 164 F. Supp. 3d 568, 584 (S.D.N.Y. 2016). Plaintiff does not allege that Defendants made any disclosures in 2016 about an investigation. And, with respect to the Company's purported relationship with Streakwave, Plaintiff again impermissibly attempts to shift her pleading burden by claiming Defendants "do not cite any support for their position that Ubiquiti did not have a 'reportable relationship' with Streakwave." Pl. Ltr. at 2–3. Plaintiff's failure to plead particularized facts that show the existence of such a relationship warrants dismissal.

*7. Post-Citron Report claims.* In their letter, Defendants explained that the Complaint challenged statements made by Mr. Pera after the release of the Citron Report but did not allege that any of those statements were objectively false. Instead of responding to Defendants, Plaintiff makes the sweeping and generalized claim that Mr. Pera "went to great lengths" to deny the allegations in the Citron Report and "perpetuate Ubiquiti's false narrative." Pl. Ltr. at 3. Plaintiff's response confirms these claims are not pleaded with particularity and should be dismissed.[8]

**B. The Complaint impermissibly relies on group pleading.** Plaintiff does not dispute that only the "maker" of a statement can be liable for alleged violations of Section 10(b), but impermissibly pleads all causes of action against all Defendants, irrespective of their employment and authorship of the challenged disclosures. *See Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011). For this reason alone, a motion to dismiss is warranted.

**C. The Complaint does not allege a strong inference of scienter.** Instead of responding to the reasons and cases cited in Defendants' letter explaining that the Complaint fails to plead the required strong inference of scienter, Plaintiff seeks to rely on conclusory allegations, none of which supports any inference—let alone a strong inference—of scienter.

As Defendants will explain in further detail in their motion to dismiss, Plaintiff cannot rely on conclusory and general allegations of corporate seniority,[9] the discredited "core operations"

---

[7] As Defendants will explain in their motion to dismiss, Plaintiff also cannot show the number of registered online users altered the "total mix" of information given this metric was provided in "the context of supporting other statements that the plaintiffs have not alleged are materially false or misleading," including statements regarding the level of user engagement—11 million site visits and "1.3 million posts." *See In re World Wrestling Ent., Inc. Sec. Litig.*, 180 F. Supp. 3d 157, 177 (D. Conn. 2016) (dismissing claims that Defendant misstated the size of its social media following in light of other user engagement metrics that were not misleading).

[8] Plaintiff also cannot manufacture disclosure claims by arguing that Defendants made "the same type of misstatements" they allegedly made earlier in the putative class period. *See In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006).

[9] *See Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 873 (S.D.N.Y. 2011).

Simpson Thacher & Bartlett LLP

Hon. Victor Marrero                               -5-                               March 12, 2019

theory,[10] speculation by short sellers,[11] the alleged existence of regulatory investigations,[12] and generic claims of mismanagement[13] to create the required "compelling" inference that specific statements were made with scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). While the Complaint alleges that stock sales by Messrs. Pera and Foster demonstrate scienter, *see* CAC ¶ 350, Defendants explained that these allegations do not support any inference of scienter because the sales are not alleged to have been suspicious. *See City of Taylor Gen. Emps. Ret. Sys. v. Magna Int'l Inc.*, 967 F. Supp. 2d 771, 798–99 (S.D.N.Y. 2011) (finding no motive where stock sales were not suspicious). Plaintiff apparently concedes this point – it is not addressed in her letter. The failure to plead scienter warrants dismissal of the entire Complaint.

**D.  Loss Causation.**  The PSLRA requires plaintiffs to plead facts showing "that the act or omission . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). Given the Court's Individual Practices, Defendants will, however, focus their motion to dismiss on Plaintiff's insistence on asserting time-barred claims, reliance on group pleading, and failure to sufficiently plead a material misrepresentation or omission made with scienter. But the burden to prove loss causation ultimately rests with Plaintiff and therefore Defendants reserve all rights to contest loss causation in the event the Complaint survives dismissal.

*          *          *

For these reasons, Defendants believe the filing of a motion to dismiss is warranted.[14]

Respectfully Submitted,

*/s/ Peter E. Kazanoff*

Peter E. Kazanoff

Enclosures

cc:     Jeremy A. Lieberman (via email and U.S. Mail)
        Michael Grunfeld (via email and U.S. Mail)

> The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by _Defendants_.
>
> SO ORDERED.
>
> 3-13-19
>
> DATE          VICTOR MARRERO, U.S.D.J.

---

[10] *See In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 353 (S.D.N.Y. 2011).

[11] *See In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012).

[12] *See Cortina v. Anavex Life Scis. Corp.*, No. 15 Civ 10162 (JMF), 2016 WL 7480415, at *8 (S.D.N.Y. Dec. 29, 2016).

[13] *See Fries v. N. Oil and Gas, Inc.*, 285 F. Supp. 3d 706, 722 (S.D.N.Y. 2018).

[14] In light of the foregoing, Plaintiff's Section 20(a) claim fails. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 441–42 (S.D.N.Y. 2001).