

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/14/19

Michael Grunfeld
mgrunfeld@pomlaw.com

VIA EMAIL AND U.S. MAIL

March 1, 2019

Peter E. Kazanoff
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017

*Re: In re Ubiquiti Networks, Inc. Securities Litigation*, **18-cv-01620 (VM) (S.D.N.Y.)**

Dear Mr. Kazanoff:

I write on behalf of Lead Plaintiff Xiya Qian, in response to your letter dated February 22, 2019 and pursuant to Rule II.B.1 of the Court's Individual Rules of Practice. Your letter does not identify any "pleading deficiencies" in the Consolidated Amended Class Action Complaint ("Complaint") for the reasons explained below.[1]

**The claims in the Complaint are timely.** Defendants do not argue that the entire Complaint is time-barred—just that "substantial portions" are untimely. Even that argument is easily rebutted. In *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), the Supreme Court held that the statute of limitations does not start to run until the plaintiff has discovered "facts showing scienter[, which] are among those that 'constitut[e] the violation.'" *Id.* at 649-53. The Complaint pleads scienter allegations that first came to light within two years of when the initial complaint in this action was filed in February 2018, as described in the section addressing scienter below.[2]

Moreover, Defendants cannot possibly argue that the many misstatements that they made since 2016 are time-barred. (*See, e.g.*, ¶¶ 207, 215, 223, 227, 229, 235, 241, 246, 266). Defendants also do not address the timeliness of whole categories of misrepresentations, including quantitative metrics related to the Ubiquiti Community "beginning in February 2017" (¶ 244), Defendants' failure to disclose that Ubiquiti was subject to an SEC investigation since December 2016 (¶¶ 197-98, 199(viii), 259-63), statements made after the Citron Report (§ V.H), and that Ubiquiti had no basis for its forecasted financial performance during that time (§ V.E).

**The false and misleading statements alleged in the Complaint are actionable.** Defendants argue that seven categories of allegedly false statements and omissions are not actionable. But Defendants ignore the common thread across these categories whereby they made several types of misstatements all in the service of misrepresenting the basic nature of Ubiquiti's business model. They are also wrong for the following reasons.

Ubiquiti Community Statements. Defendants do not contest the falsity of their statements related to the Ubiquiti Community. They argue only that the Complaint fails to plead materiality

---

[1] ¶ _ and § _ references in this letter refer to the corresponding paragraphs and sections of the Complaint.
[2] The Complaint also alleges many recent facts constituting other elements of Defendants' violations.

600 Third Avenue, New York, New York 10016 tel: 212.661.1100 www.pomerantzlaw.com
NEW YORK         CHICAGO         LOS ANGELES         PARIS

**POMERANTZ LLP**

Peter E. Kazanoff

March 1, 2019

or scienter. Defendants, however, do not cite a single source to support their argument that the Community metrics—which were essential to Ubiquiti's "disruptive business model" (¶¶ 103-17)—were immaterial. That is because a complaint may not be dismissed on materiality grounds unless statements "are so obviously unimportant" that "reasonable minds could not differ [as to] their importance." *Ganino v. Citizens Utils.*, 228 F.3d 154, 162 (2d Cir. 2000). In addition, the adequacy of the Complaint's scienter allegations are addressed below.

Internal Control Statements. Defendants again primarily challenge whether these misstatements were made with scienter, which is addressed below. Defendants also ignore the different reasons why the Complaint alleges these statements were false at different time periods, including 1 - before Ubiquiti disclosed its internal control failures (¶ 218); 2 - while Defendants claimed they were remediating those failures (¶ 226); and 3 - after they said the failures were fixed (¶ 231). The sheer breadth of Ubiquiti's internal control failures and Defendants' unfounded reassurances after the failures were disclosed support the Complaint's allegations. (*See* § IV.B.b); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 380-81 (S.D.N.Y. 2015); *Varghese v. China Shenghuo Pharm. Holdings*, 672 F. Supp. 2d 596, 606-08 (S.D.N.Y. 2009).

Accounts Receivable Statements. The cases that Defendants cite on this topic do not apply because the Complaint does not allege merely that Ubiquiti's reported accounts receivable were inconsistent with how similarly labeled figures were reported in foreign countries. Rather, the Complaint alleges that Ubiquiti's accounts receivable were not supported based on what Ubiquiti's counterparties described as their trade payable obligations (which should have informed Ubiquiti's assessment of its receivables), the fact that the SEC is investigating Ubiquiti's "accounting practices, financial information . . . and relationships with distributors," and Ubiquiti's more fundamental problems with its distributor relationships. (*See* § IV.D).

Statements Concerning Ubiquiti's "Disruptive Business Model" Are Not Puffery. The Complaint alleges that Defendants falsely attributed Ubiquiti's "disruptive business model" to *specific factors*—including its "price disruptive offering," low expenditures, and the Ubiquiti Community—while failing to disclose improper practices at the heart of Ubiquiti's business model. (¶¶ 97-117 and § V.C). That is not puffery. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2018 U.S. Dist. LEXIS 199809, at *36 (S.D.N.Y. Nov. 26, 2018) (statements "not puffery when viewed in context" of omitted information); *In re VEON Ltd. Sec. Litig.*, 2017 U.S. Dist. LEXIS 152240, at *28 (S.D.N.Y. Sep. 19, 2017) (holding disclosures were sufficiently specific).

Financial Forecasts. Defendants did not have any basis for their forecasts for the second quarter of fiscal 2018 because by November 9, 2017, the FrontRow camera had already been on the market for nearly three months, Ubiquiti was well over a month into its second quarter, and Defendants were motivated to inflate these forecasts to call attention away from the Citron Report. (¶¶ 187, 256, 324-25). Defendants do not point to any "meaningful cautionary language" related to these statements or to any cases in support of their argument.

Defendants' Actionable Omissions. Defendants ignore the allegation that as of December 2016, a far-reaching SEC investigation was not only "likely," but had *already begun*. (¶¶ 196-98). *See Menaldi v. Och-Ziff Capital Mgmt. Grp.*, 164 F. Supp. 3d 568, 584 (S.D.N.Y. 2016) (sustaining claim that defendant "misled investors by suggesting" the company was not facing a potentially material investigation). Defendants also do not cite any support for their position that

2

**POMERANTZ LLP**

Peter E. Kazanoff

March 1, 2019

Ubiquiti did not have a "reportable relationship" with Streakwave, which was one of its top distributors through 2015 (when Ubiquiti stopped naming its distributors). (¶¶ 145, 151, 161-64).

Post-Citron Report Statements. Defendants cherry-pick two of Pera's statements following the Citron Report but ignore his other statements in which he "went to great lengths to specifically deny the Citron Report's allegations" and to perpetuate Ubiquiti's false narrative. (§ V.H). Defendants also ignore the fact that after the Citron Report, they continued to make the same type of misstatements that they had been making earlier in the Class Period. The Complaint describes those statements in topic-specific sections and, to avoid duplication, cross-references them in its discussion of Defendants' misstatements following the Citron Report. (¶ 271).

**Defendants incorrectly contend that the Complaint attributes all misstatements to all Defendants.** The Complaint states specifically which Defendant signed each periodic SEC filing and explains that references to these filings "refer to the filings that were signed . . . by the individuals described in this footnote." (¶ 199 n.18). The Complaint also expressly refers back to that explanation when referencing these filings later and states which Defendant made misstatements contained in other sources. (*See, e.g.,* ¶¶ 202-04).

**The Complaint pleads a strong inference of scienter.** Defendants cite isolated allegations that they argue do not show scienter, but fail to read the Complaint "as a whole." *In re Philip Servs. Corp. Sec. Litig.,* 383 F. Supp. 2d 463, 476 (S.D.N.Y. 2004). Furthermore, Defendants ignore entirely most of the facts that the Complaint alleges to show Defendants' scienter, including Pera's unusually tight control of Ubiquiti (¶¶ 333-37); Defendants' knowledge of problems with distributors (¶¶ 138, 339); Pera's devoting insufficient resources to financial controls (¶¶ 341-46); the suspicious nature of the misstated Ubiquiti Community metrics (¶¶ 125-29); Pera's denials following the Citron Report (¶¶ 270-82); Defendants' direct involvement with internal control failures (¶ 338); their motive to commit fraud, including Pera's incentives tied to his buyout of the Grizzlies (¶¶ 179, 347-48, 350); Streakwave's undisclosed relationship with Ubiquiti (¶ 349); the SEC's investigation since at least December 2016 (¶ 352); Defendants' roles at Ubiquiti and signing of SOX certifications (¶¶ 332, 340); additional red flags (¶¶ 189-93); and the relation of the misconduct to Ubiquiti's core operations (¶¶ 351, 353-54). This evidence supports a strong inference of scienter under both the "motive and opportunity" and "conscious misbehavior or recklessness" tests. *See In re Van der Moolen Holding N.V. Sec. Litig.,* 405 F. Supp. 2d 388, 404-06 (S.D.N.Y. 2005); *In re Refco, Inc. Sec. Litig.,* 503 F. Supp. 2d 611, 646 (S.D.N.Y. 2007) ("concrete benefit" supports motive).

**The Complaint adequately pleads loss causation.** Ubiquiti's disclosure of the SEC subpoena supports loss causation even though it came after the Citron Report because the Report only partially revealed the fraud and Defendants continued to espouse their false narrative after the Report. *Freudenberg v. E*Trade Fin. Corp.,* 712 F. Supp. 2d 171, 202-03 (S.D.N.Y. 2010) ("partial disclosures" support loss causation); *see also In re Gentiva Sec. Litig.,* 932 F. Supp. 2d 352, 387-88 (E.D.N.Y. 2013). Moreover, Defendants do not contest that other disclosures of the fraud adequately allege loss causation. (*See* ¶¶ 286-88, 296-98, 304-05, 320-21, 324-25).[3]

For all of these reasons, Defendants do not have any basis to file a motion to dismiss.

---

[3] Defendants Section 20(a) argument fails because it is premised entirely on their arguments related to Section 10(b).

3

Peter E. Kazanoff

**POMERANTZ LLP**
March 1, 2019

Best regards,

*[signature]*

Michael Grunfeld

Cc: Hon. Victor Marrero

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Lead Plaintiff.

**SO ORDERED.**

3-13-19
DATE          VICTOR MARRERO, U.S.D.J.