# Simpson Thacher & Bartlett LLP

425 LEXINGTON AVENUE
NEW YORK, NY 10017-3954

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/10/19

RECEIVED
JUN 10 2019
CHAMBERS OF
JUDGE MARRERO

Direct Dial Number
+1-212-455-3525

E-mail Address
pkazanoff@stblaw.com

BY HAND DELIVERY                                June 7, 2019

Re:   *In re Ubiquiti Networks, Inc. Securities Litigation*, 18-cv-01620 (VM)

Hon. Victor Marrero
United States District Court
United States Courthouse
500 Pearl Street
New York, NY 10007

Dear Judge Marrero:

As the parties and the Court discussed during the May 23, 2019 teleconference, to survive dismissal, the Complaint must adequately plead, on a Defendant-by-Defendant basis, that each challenged statement was made with fraudulent intent. The Complaint, however, does not link allegations of scienter to alleged misstatements and does not even attempt to do so on a Defendant-by-Defendant basis. Instead, Plaintiff relies on a footnote in the Complaint, ¶ 199 n.18,[1] alleging that certain individuals signed a laundry list of SEC filings. This type of puzzle pleading is insufficient, particularly under the heightened pleading standards of Rule 9(b) and the PSLRA. For this reason alone, dismissal is necessary. In the alternative, Defendants request leave to move to dismiss Plaintiff's 100-plus page Complaint, which challenges eight categories of alleged misstatements—in 40 separate SEC filings—made during a nearly five-year putative class period. Defendants, including certain Individual Defendants who were only at the Company for a portion of that period, respectfully contend that full motion to dismiss briefing is necessary to adequately address the myriad pleading deficiencies in the Complaint.

## I.   The Complaint Relies On Impermissible Puzzle Pleading[2]

To survive dismissal, Plaintiff must allege "facts giving rise to a strong inference" of fraudulent intent "with respect to each act or omission" and each defendant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007); *Jacquemyns v. Spartan Mullen Et Cie, S.A.*, No. 10 Civ. 1586(CM)(FM), 2011 WL 348452, at *6 (S.D.N.Y. Feb. 1, 2011) (scienter must "be pleaded as to each defendant individually"); *see also* 15 U.S.C. § 78u-4(b)(2) ("[T]he complaint shall, **with respect to each act or omission alleged to violate this chapter**, state with particularity

---

[1] References to ¶ _ refer to paragraphs of the Consolidated Amended Complaint.

[2] Defendants do not concede that the Complaint adequately pleads any of the elements of its claims and respectfully submit that dismissal is warranted for the reasons stated in their prior letters. ECF Nos. 30, 32. Defendants also do not concede the accuracy of any facts alleged in the Complaint.

facts giving rise to a strong inference that the defendant acted with the required state of mind.") (emphasis added). The Complaint does not meet this statutory requirement. Rather than tie the allegations to each Defendant and alleged misstatement, the Complaint inadequately claims that all "Defendants" are responsible for non-specific purported wrongs, invoking a footnote identifying the SEC filings Defendants signed. *See* ¶ 199 n.18. Such "puzzle pleading" is impermissible and warrants dismissal. *See Colbert v. Rio Tinto Plc., et al.*, 17 Civ. 8169 (AT)(DCF), slip op. at 14 (S.D.N.Y. June 3, 2019) (dismissing claims where Plaintiff failed to specify "the Individual Defendants' involvement with [the alleged] statements at all"); *In re Deutsche Bank AG Sec. Litig.*, No. 16 Civ. 3495 (AT)(BCM), 2017 WL 4049253, at *5 (S.D.N.Y. June 28, 2017) (dismissing complaint that "employs the same conclusory formula . . . to cover all of the allegedly material misrepresentations"); *see also Rumbaugh v. USANA Health Scis., Inc.*, No. 17 Civ. 106(DB), 2018 WL 5044240, at *4 (D. Utah Oct. 17, 2018) ("[The] tendency to place the burden on the reader to sort out the statements and match them with the corresponding adverse facts to solve the 'puzzle' of interpreting plaintiffs' claims" is "an improper means of pleading [and] an unwelcome and wholly unnecessary strain on defendants and the court system.").

## II. The Complaint Fails To Allege "Motive And Opportunity" Or "Conscious Misbehavior Or Recklessness" As To Any Defendant Or Alleged Misstatement

The Complaint also should be dismissed because its scienter allegations are insufficient to show either the "motive" or "conscious misbehavior or recklessness" needed to avoid dismissal.

### A. The Complaint Does Not Allege A Fraudulent Motive

To plead motive, Plaintiff must show "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001). The Complaint ascribes two motives to Defendants: (1) stock sales by Messrs. Pera and Foster and (2) Mr. Pera's use of Ubiquiti stock to collateralize a loan. Neither suffice.

Although the Complaint references stock sales by Messrs. Pera and Foster, Plaintiff has effectively abandoned these allegations by not including them in her March 1 letter, *see* ECF No. 31, and declining to defend them at the May 23 teleconference. As this Court has held, stock sales are not *per se* evidence of scienter. *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 218 (S.D.N.Y. 2018) (Marrero, J.). Motive only inheres when sales were "highly unusual and suspicious" based on "the amount and percentage of shares sold" and "the timing of the sales." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 349 (S.D.N.Y. 2011). After their sales, Messrs. Pera and Foster retained over 98% and 75% of their stock, respectively. *See In re Travelzoo Inc. Sec. Litig.*, No. 11 Civ. 5531(GBD), 2013 WL 1287342, at *10 (S.D.N.Y. Mar. 29, 2013) (no motive where executive retained 78% of stock). Nor were the sales suspiciously timed. Mr. Pera's first sale was in a registered secondary offering subject to underwriter scrutiny, an unlikely method to sell purportedly inflated stock. *See In re Axis Capital Hldgs. Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 595 (S.D.N.Y. 2006) (no motive where sale was in secondary offering six months before alleged corporate harm). While Plaintiff alleges that Mr. Pera's second sale occurred "just before the Citron Report was released," ¶ 176, she does not allege that Mr. Pera knew at the time of his sale that a third party would issue the Report weeks later. *See In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 271 & n.5 (S.D.N.Y. 2009) (no motive where trades pre-dated negative information). With respect to Mr. Foster's sale, the Complaint is completely silent as to any purported "knowledge" precipitating Mr. Foster's trade.

Nor does Mr. Pera's alleged use of Ubiquiti stock as loan collateral establish motive. ¶¶ 179–80. Plaintiff alleges that in April 2018 (after the putative class period), Mr. Pera exercised an option to increase his ownership of a basketball team and secured financing for that purchase. *Id.* To plead motive, Plaintiff must (but does not) show how the alleged financing was related to the purported misstatements. *See Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 868 (S.D.N.Y. 2011). No such relationship could exist because the financing occurred *after* the putative class period. While Plaintiff alleges that the "transaction was set in motion" in November 2017, ¶ 347, the Complaint states only that Mr. Pera's "co-owners" initiated a negotiation about "one side buying the other out," ¶ 179—meaning that Mr. Pera did not know whether he was a buyer or a seller of a stake in the team during the putative class period. Moreover, numerous courts have held that a pledge of stock is insufficient to show motive. *See, e.g., Mechel OAO*, 811 F. Supp. 2d at 869 (defendant's stock pledge was not evidence of scienter); *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 899 (S.D. Tex. 2004) ("[M]erely pledging stock as collateral for a loan" is insufficient to "create a strong inference of scienter").

### B. The Complaint Does Not Allege Conscious Misbehavior Or Recklessness

Given that the Complaint fails to plead a fraudulent motive, its allegations of conscious misbehavior or recklessness must be "correspondingly greater." *Kalnit*, 264 F.3d at 142. Allegations of willful "recklessness—*i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence" are required. *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir 2015). Plaintiff must "specifically identify the reports or statements" known to Defendants at the time of the alleged misstatements. *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008). Here, the Complaint only speculates as to what all Defendants "should" have known based on allegations related to: (1) their corporate positions, (2) alleged corporate mismanagement, (3) involvement in financial reporting, (4) prior regulatory investigations, (5) Ubiquiti Community metrics, (6) claims in report by a short seller, and (7) "Ubiquiti's core operations." These scattershot allegations fail whether looked at in isolation or taken "as a whole."

Leadership positions fail to show intent, because "accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *Mechel OAO*, 811 F. Supp. 2d at 873. Given that Messrs. Spragg, Foster, and Radigan held these positions for finite periods, Defendants' roles cannot show motive for alleged misstatements throughout the class period.

Rote allegations that Mr. Pera devoted "insufficient resources to Ubiquiti's operations, oversight, and financial" controls, ¶¶ 341–46, are qualms with "corporate mismanagement," not well-pled facts supporting scienter. *Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 721–22 (S.D.N.Y. 2018) (alleged mismanagement "do[es] not establish fraudulent intent"). Further, Mr. Pera's decision-making is not alleged to show intent for any specific misstatement and cannot be imputed to another Individual Defendant.

Equally insufficient are claims that Defendants had intent because they were "involved" in control failures and signed SOX certifications. ¶¶ 332, 338, 340. Rather than plead the role each Defendant had in the alleged control failures, Plaintiff surmises that all are culpable by virtue of their involvement in financial reporting, but this is insufficient. *See In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 298–99 (S.D.N.Y. 2014). Defendants' signatures on SOX

certifications add "nothing substantial to the scienter calculus." *See Int'l Ass'n of Heat v. IBM Corp.*, 205 F. Supp. 3d 527, 536 (S.D.N.Y. 2016).

Nor can Plaintiff plead scienter by referencing prior regulatory investigations. The mere existence of a government investigation does "not give rise to a compelling inference of scienter." *Cortina v. Anavex Life Scis. Corp.*, No. 15-CV-10162 (JMF), 2016 WL 7480415, at *8 (S.D.N.Y. Dec. 29, 2016). The 2011 OFAC investigation, which Plaintiff does not tie to any specific misstatement, lacks probative value because it pre-dates the putative class period and occurred before Messrs. Foster, Spragg, and Radigan were at Ubiquiti. *See id.* And Plaintiff does not explain how a December 2016 SEC investigation establishes scienter as to alleged misstatements made during the three years before its purported start. The Complaint also fails to show how such an investigation is tied to any purported misstatements post-dating the inquiry. Plaintiff's suggestion that it made the February 2018 SEC subpoenas foreseeable is similarly unavailing because there is no allegation, beyond Plaintiff's speculation, that the investigations were related.

Claims that Defendants "knew" the Ubiquiti Community metric was misstated because it was "suspicious" fare no better, as there is nothing inherently suspect about the reported figure. ¶¶ 125–29. Indeed, the number in question was an accurate number: as the result of an internal miscommunication, the Company simply confused the number of "registered user sessions" with the number of "registered users."[3] Further, according to Plaintiff, the metric only became "suspicious" when the Citron Report identified the error. Pl. Ltr. at 3. Such hindsight analysis does not show scienter, especially since the Company corrected the confusion after the Citron Report. *See In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 568–69 (S.D.N.Y. 2004).[4]

Relying on the Citron Report's conclusory assertion that the Company's "financial performance is too good to be true" is also insufficient. ¶¶ 189–93. Short sellers "have an obvious motive to exaggerate" and "do not provide the basis for an adequate pleading of scienter." *In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 577 (S.D.N.Y. 2012). And, "superior performance" is "too thin a reed on which to hang a finding of recklessness." *Id.* at 579.[5]

Finally, Plaintiff's reliance on the "core operations" theory, ¶¶ 351, 353–54, is misplaced, and numerous courts, including this Court, have rejected such an allegation as insufficient to show scienter. *See, e.g., Frankfurt-Tr. Inv. Luxemburg AG*, 336 F. Supp. 3d at 225.

\* \* \* \* \*

Given these fatal shortcomings, the Complaint should be dismissed. Defendants, including Individual Defendants who were only at the Company for a portion of the putative class period (*see* Exhibit A attached hereto), request the opportunity to fully brief these issues.

---

[3] In its November 2017 Form 8-K, the Company stated that while it had previously referenced 4 million registered users, there were approximately 609,000 registered users and 4 million registered user sessions. Significantly, there is no incentive to misstate the number of registered users because Ubiquiti does not monetize the metric.

[4] Plaintiff also claims that "Streakwave's undisclosed relationship with Ubiquiti" is evidence of scienter. Not so. It is simply a recital of a purported omission and "is not enough to plead scienter based on conscious misbehavior or recklessness." *See In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 24 (S.D.N.Y. 2016).

[5] Nor do Mr. Pera's statements following the Citron Report show intent. ¶¶ 270–82. None of the statements Plaintiff references are "denials" and Plaintiff does not show how Mr. Pera's statements support a claim for scienter.

Simpson Thacher & Bartlett LLP

Hon. Victor Marrero -5- June 7, 2019

Respectfully submitted,

*Pat M*

Peter E. Kazanoff

cc: Jeremy A. Lieberman (via email and U.S. Mail)
Michael Grunfeld (via email and U.S. Mail)

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendants.

**SO ORDERED.**

6-10-19

DATE                VICTOR MARRERO, U.S.D.J.

Simpson Thacher & Bartlett LLP

## Exhibit A[1]

| Disclosures Referenced In The Consolidated Amended Class Action Complaint | Craig Foster (3/4/13 – 4/21/15) | Mark Spragg (8/4/15 – 5/3/16) | Kevin Radigan (5/3/16 – Present) |
|---|---|---|---|
| May 9, 2013 Form 10-Q | ✓ | | |
| May 9, 2013 Q3 Earnings Call | ✓ | | |
| August 8, 2013 Q4 2013 Earnings Call | | | |
| September 13, 2013 Form 10-K | ✓ | | |
| October 28, 2013 Proxy Statement | ✓ | | |
| November 8, 2013 Form 10-Q | ✓ | | |
| February 7, 2014 Form 10-Q | ✓ | | |
| May 9, 2014 Form 10-Q | ✓ | | |
| August 22, 2014 Form 10-K | ✓ | | |
| October 28, 2014 Proxy Statement | ✓ | | |
| November 6, 2014 Form 10-Q | ✓ | | |
| November 6, 2014 Q1 2014 Earnings Call | | | |
| February 5, 2015 Form 10-Q | ✓ | | |
| May 7, 2015 Form 10-Q | | | |
| August 6, 2015 Form 8-K | | | |
| August 21, 2015 Form 10-K | | ✓ | |
| October 27, 2015 Proxy Statement | | | |
| November 5, 2015 Form 10-Q | | ✓ | |
| February 4, 2016 Form 10-Q | | ✓ | |
| May 5, 2016 Form 10-Q | | | ✓ |
| August 22, 2016 Form 10-K | | | ✓ |
| October 27, 2016 Proxy Statement | | | |
| November 7, 2016 Form 10-Q | | | ✓ |
| December 8, 2016 Form 8-K | | | |
| February 9, 2017 Form 8-K | | | |
| February 9, 2017 Form 10-Q | | | ✓ |
| February 21, 2017 Form 8-K | | | |
| May 4, 2017 Form 10-Q | | | ✓ |
| May 4, 2017 Form 8-K | | | |
| August 3, 2017 Form 8-K | | | |
| August 10, 2017 Form 8-K | | | |
| August 25, 2017 Form 10-K | | | ✓ |
| September 18, 2017 Form 8-K | | | |
| September 18, 2017 Twitter Statements | | | |
| September 26, 2017 Investor Day Conference | | | |
| October 27, 2017 Proxy Statement | | | |
| November 9, 2017 Form 10-Q | | | ✓ |
| November 9, 2017 Form 8-K | | | |
| February 8, 2018 Form 10-Q | | | ✓ |
| February 8, 2018 Form 8-K | | | |

---

[1] Plaintiff alleges that Mr. Foster served as CFO from March 4, 3013 to April 21, 2015, ¶ 31, that Mr. Spragg served as the Interim Chief Accounting Officer and Interim Principal Financial Officer from August 4, 2015 to May 3, 2016, ¶ 32, and that Mr. Radigan has served as Chief Accounting Officer and Principal Financial Officer since May 3, 2016, ¶ 33.