**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE UBIQUITI NETWORKS, INC. SECURITIES LITIGATION | No.  1:18-cv-01620 (VM) |
| | Class Action |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Page(s)

I.  PRELIMINARY STATEMENT ................................................................. 1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT............................ 2

    A.  Procedural History of the Litigation ......................................................... 2

    B.  Summary of Key Terms of the Proposed Settlement.................................. 4

        1.  Relief to Class Members and Release of Claims ....................................... 4

        2.  Class Notice and Settlement Administration .......................................... 5

            a)  Notice ................................................................................... 5

            b)  Administration ...................................................................... 6

        3.  Papers in Support of the Settlement, Award of Lead Counsel Fees and
           Expenses, and Plaintiff's Compensatory Award ....................................... 6

        4.  Objections .......................................................................................... 6

        5.  Opt-Outs............................................................................................. 7

        6.  Termination of the Settlement ............................................................. 7

        7.  No Admission of Liability ................................................................... 7

III.  THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 7

    A.  The Courts Favor Settlements of Complex Class Actions.................................... 7

    B.  The Proposed Settlement Merits Preliminary Approval ......................................... 9

        1.  The Proposed Settlement Recovery Is Substantively Fair ......................... 9

            a)  The Settlement Was Negotiated by Well-Informed Counsel
                  With the Assistance of a Mediator and Thus Warrants a
                  Presumption of Fairness............................................................. 10

            b)  The Settlement is Within the Reasonable Range of Recovery ..... 11

IV.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR
    SETTLEMENT PURPOSES ......................................................................... 15

    A.  The Settlement Class Meets the Requirements of Rules 23(a) and 23(b)(3)........ 15

        1.  The Settlement Class Satisfies the Requirements of Rule 23(a)............... 17

        2.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3).......... 18

    B.  Nationwide Class Certification is Appropriate for Settlement Purposes.............. 20

    C.  The Court Should Appoint Lead Counsel as Counsel for the Settlement Class... 20

V.  THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF
    CLASS NOTICE ......................................................................................... 20

    A.  Notice by Direct Mail and Publication is Appropriate ......................................... 20

      B.     The Proposed Notice Adequately Informs Settlement Class Members of Their Rights in This Litigation .................................................................. 22

VI.     PROPOSED SCHEDULE OF EVENTS ........................................................ 23

CONCLUSION.......................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................16, 18

*Bourlas v. Davis Law Assocs.*,
237 F.R.D. 345 (E.D.N.Y. 2006) ..........................................................................17

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ..........................................................................................8

*Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ....................................................................17

*Christine Asia Co. v. Yun Ma*,
No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ..............................................................................8

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ..................................................................9, 11, 15

*Clark v. Ecolab Inc.*,
2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ......................................10

*Diaz v. E. Locating Serv. Inc.*,
No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) .......................10

*Fleisher v. Phoenix Life Ins. Co.*,
Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ..................................................................8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ........................................................................14

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................17, 19

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001) ..........................................................13

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
689 F.3d 229 (2d Cir. 2012) ..........................................................................16

*In re Celera Corp. Sec. Litig.*,
   No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31,
   2015) ........................................................................................................................15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ............................................................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009).......................................................................................18

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   327 F.R.D. 483 (S.D.N.Y. 2018) ............................................................................11

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................21

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ............................................................................18

*In re Petrobras Sec. Litig.*,
   No. 14-cv-9662 (JSR), 2018 U.S. Dist. LEXIS 161898 (S.D.N.Y. Sept. 19,
   2018) ..........................................................................................................................7

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................15

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................................17

*In re Salomon Analyst Metromedia Litig.*,
   544 F.3d 474 (2d Cir. 2008)......................................................................................19

*In re Sturm, Ruger, & Co. Sec. Litig.*,
   No. 3:09CV1293 VLB, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20,
   2012) ........................................................................................................................13

*In re Zynga Sec. Litig.*,
   No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27,
   2015) ........................................................................................................................15

*Marisol A. v. Guiliani*,
   126 F.3d 372 (2d Cir. 1997).....................................................................................17

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950).................................................................................................21

*Palacio v. E*TRADE Fin. Corp.*,
   2012 U.S. Dist. LEXIS 88019 (S.D.N.Y. June 22, 2012) ......................................10

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983)..................................................................................21

*Spagnuoli v. Louie's Seafood Rest., LLC*,
   No. 13-CV-4907 (JMA) (ARL), 2018 U.S. Dist. LEXIS 221803 (E.D.N.Y.
   Sept. 27, 2018) ....................................................................................................10

*Torres v. Gristede's Operating Corp.*,
   Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 U.S. Dist. LEXIS
   139144 (S.D.N.Y. Dec. 21, 2010)........................................................................10

*Torres v. Toback, Bernstein & Reiss LLP*,
   No. CV-11-1368 (NGG) (VVP), 2014 U.S. Dist. LEXIS 36925 (E.D.N.Y.
   Mar. 14, 2014)......................................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................8, 9

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)..................................................................................16

**Statutes**

15 U.S.C. § 78, *et seq.*.............................................................................................20

28 U.S.C. § 1775 ........................................................................................................5

Private Securities Litigation Reform Act...................................................12, 22, 23

Securities Exchange Act of 1934 .......................................................................3, 12, 18

**Rules**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

**Other Authorities**

*Manual for Complex Litigation (Fourth)* (2004) ......................................9, 11, 16, 20

*Manual for Complex Litigation (Third)* (1995) .....................................................9

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action
   Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) ...............................15

William Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class
   Actions* (4th ed. 2002) ...............................................................................7, 9, 21

Lead Plaintiff Xiya Qian ("Lead Plaintiff"), individually and on behalf of all Settlement Class Members, respectfully submits this memorandum in support of her unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated December 2, 2019 (the "Stipulation")[1]; (ii) certification of the proposed Settlement Class; (iii) approval of the form and manner of giving notice of the proposed Settlement to the Settlement Class Members; (iv) a date for a Settlement Fairness Hearing (the "Settlement Hearing") and deadlines for the mailing and publication of the Notice, for Settlement Class Member objections and Settlement Class Member opt-out notices, for the filing of Lead Plaintiff's motion for Final Approval of the Settlement, and for the filing of Lead Counsel's application for an award of attorneys' fees and reimbursement of expenses and a compensatory award to Lead Plaintiff.

## I.    PRELIMINARY STATEMENT

Lead Plaintiff has achieved a very favorable resolution of this Litigation.  The proposed Settlement will resolve all claims against Defendants in exchange for a sizable cash payment of $15,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.  This recovery represents approximately 11% of the recoverable damages in this case.

By the time the Settlement was reached, Lead Plaintiff and her counsel were well-informed about the strengths and weaknesses of the claims and Defendants' defenses.  Prior to reaching the Settlement, Lead Counsel: (i) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Ubiquiti filings with the U.S. Securities and Exchange Commission ("SEC"), public reports concerning

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the Declaration of Jeremy A. Lieberman ("Lieberman Declaration"), which is filed concurrently herewith.

Ubiquiti, and transcripts of Ubiquiti's investor calls; interviews with former employees and other potential witnesses with relevant information; and consultation with damages and accounting experts; (ii) drafted the Consolidated Amended Class Action Complaint (the "Complaint"); (iii) engaged in letter briefing and a phone hearing with the Court related to Defendants' proposed motion to dismiss the Complaint; (iv) drafted and exchanged extensive mediation statements; (vi) participated in a full-day mediation session before mediator Jed D. Melnick of JAMS; (vii) engaged in negotiations regarding the terms of the proposed Settlement; and (viii) engaged in extensive confirmatory discovery, in order to assess the fairness, reasonableness and adequacy of the Settlement. The Settlement is the result of arm's-length negotiations conducted by informed and experienced counsel, in conjunction with a well-respected mediator.  As discussed in greater detail below, Lead Plaintiff and Lead Counsel believe that the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Class. Accordingly, Lead Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Procedural History of the Litigation

Beginning in February of 2018, three class action complaints were filed in the United States District Court for the Southern District of New York.[2] On October 24, 2018, the Court ordered that the cases be consolidated under the caption *In re Ubiquiti Networks, Inc. Securities Litigation*, No. 1:18-cv-01620; appointed Xiya Qian as Lead Plaintiff for the consolidated action; and approved Lead Plaintiff's selection of Pomerantz LLP  as Lead Counsel. (Dkt. No. 25.)

---

[2] The first, filed on February 21, 2018, was styled *Vanderheiden v. Ubiquiti Networks, Inc. et al*, No. 1:18-cv-01620. The second, filed on February 28, 2018, was styled *Qian v. Ubiquiti Networks, Inc. et al*, No. 1:18-cv-01841. The third, filed on March 13, 2018, was styled *Kho v. Ubiquiti Networks, Inc. et al*, No. 18-cv-02242.

On December 24, 2018, Lead Plaintiff filed and served her Consolidated Amended Class Action Complaint (the "Complaint") alleging claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and also asserting claims against the Individual Defendants under Section 20(a) of the Exchange Act. (Dkt. No. 26.)  Among other things, the Complaint alleged that Ubiquiti and the Individual Defendants violated Section 10(b) of the Exchange Act by making certain statements that Lead Plaintiff alleges were false and misleading. The specific statements that Lead Plaintiff identifies in the Amended Complaint and alleges were false and misleading are, *inter alia*, statements regarding: (i) the purported size of the Company's user community; (ii) the Company's internal controls; (iii) the Company's publicly reported accounts receivable figures; (iv) the Company's purported "disruptive business model"; (v) the Company's forecasts for the second quarter of fiscal 2018; (vi) related-party transactions; and (vii) an SEC investigation into the Company.  The Complaint further alleged that the prices of Ubiquiti's publicly-traded securities were artificially inflated during the Settlement Class Period as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.   The Complaint further alleged that the prices of Ubiquiti's publicly-traded securities were artificially inflated during the Settlement Class Period as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

On March 12, 2019, pursuant to Judge Marrero's Individual Rule II.B.1, the parties completed their Motion to Dismiss Pre-Motion Letters. (Dkt. Nos. 32-34.) On May 23, 2019, the Court held a telephonic hearing on Defendants' proposed Motion to Dismiss.  At the hearing, the Court indicated that it was not inclined to dismiss the Complaint and agreed to Defendants' request to submit an additional letter on the topics discussed.  On June 7, 2019, Defendants filed

a letter based on Court's May 23, 2019 Order. (Dkt. No. 36.)  On August 1, 2019, before the Court determined whether it was necessary for Lead Plaintiff to respond to that letter, the parties informed the Court that they were planning to mediate, with the understanding between the parties that the Court was not inclined to dismiss this action.

On October 7, 2019, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before an experienced mediator In advance of that session, the parties exchanged detailed mediation statements and exhibits, which addressed the issues of both liability and damages. The session culminated in the parties reaching an agreement in principle to settle the Litigation for $15,000,000, which was memorialized in a memorandum of understanding (the "MOU") executed on October 16, 2019.

On October 30, 2019, in the context of settlement negotiations and as provided in the MOU, Ubiquiti produced 15,766 pages of documents to Lead Plaintiff on a confidential basis for confirmatory discovery. Lead Plaintiff has reviewed a substantial portion of those documents and will continue to do so, as well as to conduct other confirmatory research, until making a Motion for Final Approval, to assess the fairness, reasonableness and adequacy of the Settlement.

**B.     Summary of Key Terms of the Proposed Settlement**

**1.     Relief to Class Members and Release of Claims**

Defendants have agreed to settle the Litigation for $15,000,000, as described more fully in the Stipulation, in return for which all claims that have been, or could have been, asserted in the Complaint against Defendants and Released Persons will be dismissed, barred and released.

The monies will be deposited in an escrow account maintained by the Escrow Agent and will be held in instruments or accounts backed by the Full Faith & Credit of the United States Government. If the Settlement is approved, none of the monies will revert to Ubiquiti or its

insurance carriers. If the Settlement is not approved, or otherwise does not become effective, the monies other than notice and administrative expenses already incurred will revert.

### 2.    Class Notice and Settlement Administration

#### a)    Notice

Within 21 days of Preliminary Approval, a proposed Notice and Proof of Claim substantially in the form set forth in Exhibits A-1 and A-2 to the Stipulation will be mailed to each Settlement Class Member identified by records maintained by Ubiquiti's transfer agent, as well as institutional investors, and a list of banks and brokerage firms that usually maintain custodial accounts. A Summary Notice will also be published through the Internet, since that medium is most frequently accessed by investors, and is the most cost-effective.

The Notice describes in plain English the terms of the Settlement, the considerations that led Lead Counsel and Lead Plaintiff to conclude that the Settlement is fair and adequate, the Plan of Allocation, the maximum attorneys' fees award and expense reimbursement that may be sought, and the proposed compensatory award. A copy of the Notice, Claims Form and Stipulation will also be posted on a website that the Settlement Administrator maintains.

The Notice will also set forth the date of the Settlement Hearing, as well as procedures for objecting to the foregoing matters or opting out of the Settlement. It is respectfully requested that the Settlement Hearing be scheduled no earlier than 100 days after entry of the Preliminary Approval Order. This will allow mailing to be completed within 21 days; Class Members to have ample time to consider their options and, if they choose, to file objections or opt out of the Class; the filing of Notice to Attorneys General under the Class Action Fairness Act, 28 U.S.C. § 1775; and time for the parties to respond to such objections.

The Notice will also set the date by which claims must be filed on the Settlement Fund, which Lead Counsel requests be postmarked no later than 7 days after the Settlement Hearing.

### b)       Administration

After provision of a competitive bid, Lead Counsel selected JND Legal Administration (the "Claims Administrator") to administer the notice and process the claims for the Settlement. The Claims Administrator is well known and highly experienced in the administration of securities fraud class action settlements.

### 3.       Papers in Support of the Settlement, Award of Lead Counsel Fees and Expenses, and Plaintiff's Compensatory Award

No later than 35 days prior to the Settlement Hearing, Lead Counsel will submit papers in support of the Settlement and Plan of Allocation, as well as the request for the awards of attorney fees, expenses, and Lead Plaintiff's compensatory award. Those papers will explain why the Settlement should be approved, as well as Lead Counsel's efforts on behalf of the Class (including the time and rates of each attorney and paralegal who contributed to the outcome).

No less than 7 days prior to the Settlement Hearing, Lead Counsel may submit reply papers in support of the motion for final approval of Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses or request for a compensatory award to Lead Plaintiff.

### 4.       Objections

Any Settlement Class Member who objects to the Settlement or related matters must do so 21 days prior to the Hearing, and must send copies of such objections to the Court as well as designated counsel for the Settlement Class and Defendants. Any Settlement Class Member who does not file a timely written objection to the Stipulation shall be foreclosed from seeking any adjudication or review of the Stipulation by appeal or otherwise.

To insure the legitimacy of any such objections, the Settlement Class Member must file documents evidencing transactions in Ubiquiti Securities, as well as submit to the jurisdiction of this court for possible deposition. These measures are meant to thwart "professional objectors"

who sometimes appear in these actions. *See In re Petrobras Sec. Litig.*, No. 14-cv-9662 (JSR), 2018 U.S. Dist. LEXIS 161898, at *16 (S.D.N.Y. Sept. 19, 2018) (sanctioning objector).

### 5.    Opt-Outs

Any Settlement Class Member who wishes to be excluded must do so by written request accompanied by Ubiquiti transaction documentation, postmarked no later than 21 days prior to the Settlement Hearing. The opt-out must be sent to Lead Counsel, Defendants' Counsel, and the Claims Administrator (but not the Court).

### 6.    Termination of the Settlement

Defendants have the right to withdraw from the Settlement if Settlement Class Members owning a previously negotiated amount of Ubiquiti Securities elect to opt out of the Class. The threshold amount is set forth in a separate agreement that will not be filed with the Court unless Defendants choose to exercise their right of withdrawal.

In the event that the Settlement is not approved by the Court, or does not become final due to any appeals or Defendants' withdrawal from the Settlement, the parties will return to their respective positions prior to the Settlement and the litigation will proceed apace.

### 7.    No Admission of Liability

By entering into the Stipulation, the Defendants do not admit liability and continue to deny that they engaged in any misconduct or violated the law.

## III.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Courts Favor Settlements of Complex Class Actions

The law favors settlement, particularly in class actions and other complex cases. William Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("*Newberg*") ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or

collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, at *35 (S.D.N.Y. Oct. 16, 2019) (citation and internal quotation marks omitted). The Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981). Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. *See* Fed. R. Civ. P. 23(e). As the Second Circuit has held:

> A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion. A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement. A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (citations and internal quotation marks omitted). In evaluating a proposed class-action settlement, "courts should give proper deference to the private consensual decision of the parties" and should bear in mind "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation." *Fleisher v. Phoenix Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 U.S. Dist. LEXIS 121574, at *17 (S.D.N.Y. Sept. 9, 2015) (citations omitted). Moreover, the Supreme Court has cautioned that courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson*, 450 U.S. at 88 n.14. This is particularly important in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.

The three-step process for approval of a class-action settlement is: (1) preliminary approval; (2) dissemination of notice of the settlement to the class; and (3) a settlement approval hearing where class members may be heard regarding the fairness, adequacy, and reasonableness of the settlement. *Manual for Complex Litigation (Fourth)* §§ 21.632–.634 (2004). This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the court to fulfill its role as the guardian of class members' interests. *See Newberg* § 11.25. Lead Plaintiff respectfully requests that the Court take the first step in this process and grant preliminary approval to the Settlement.

**B.      The Proposed Settlement Merits Preliminary Approval**

Preliminary approval is merely the prerequisite for disseminating notice to class members so they may decide whether to approve or reject the Settlement. Accordingly:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation (Third)* § 30.41 (1995).

**1.      The Proposed Settlement Recovery Is Substantively Fair**

In the Second Circuit, courts will examine the negotiating process leading to the settlement. *Wal-Mart,* 396 F.3d 96 at 116. They will also determine whether the settlement's terms are fair, reasonable, and adequate, using the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

**a)** **The Settlement Was Negotiated by Well-Informed Counsel With the Assistance of a Mediator and Thus Warrants a Presumption of Fairness**

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery."  *Spagnuoli v. Louie's Seafood Rest., LLC*, No. 13-CV-4907 (JMA) (ARL), 2018 U.S. Dist. LEXIS 221803, at *8-9 (E.D.N.Y. Sept. 27, 2018) (citations and internal quotation marks omitted). "The Court [also] gives weight to the parties' judgment that the settlement is fair and reasonable." *Id.* at *9; *Palacio v. E*TRADE Fin. Corp*., 2012 U.S. Dist. LEXIS 88019, at *8 (S.D.N.Y. June 22, 2012) (citing *Torres v. Gristede's Operating Corp*., Nos. 04 Civ. 3316, 08 Civ. 8531, 08 Civ. 9627, 2010 U.S. Dist. LEXIS 139144 (S.D.N.Y. Dec. 21, 2010); *Diaz v. E. Locating Serv. Inc*., No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010); *Clark v. Ecolab Inc.*, 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010)).

The Settlement was reached through arm's-length negotiation, which included an all-day mediation before a respected and experienced mediator.  In advance of that session, the parties exchanged, and provided to the mediator, detailed mediation statements and exhibits that addressed liability and damages issues.  During the mediation session, both sides had detailed discussions about the merits of Lead Plaintiff's claims and the defenses to those claims. The negotiations, though collegial, were adversarial.  Though Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports her claims, the negotiations were informed in part by the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals, the

10

uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, and the difficulties and delays inherent in such litigation.

In negotiating the Settlement, Lead Plaintiff had the benefit of attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Partner Michael Grunfeld) who are highly experienced in complex litigation and familiar with the legal and factual issues of the case. In Lead Counsel's view, the Settlement provides substantial benefits to the Class.

### b)      The Settlement is Within the Reasonable Range of Recovery

At the Settlement Hearing, in finally determining whether a settlement is fair, reasonable, and adequate, the Court will decide whether to approve the Settlement under the factors articulated in *Grinnell*: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; the range of reasonableness of the Settlement amount in light of (8) the best possible recovery; and (9) the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the circumstances. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018).For preliminary approval purposes, however, the Court need not decide these factors. Rather, if the Court finds that the Settlement is "within the range of possible approval" under *Grinnell*, it should then order that the Settlement Class receive notification of the Settlement, schedule the Settlement Hearing, and provide Settlement Class members an opportunity to be heard. *See Manual for Complex Litigation (Fourth)* § 40.42 (model preliminary approval order). The Settlement here satisfies the *Grinnell* test. The Court should therefore grant preliminary approval.

11

### 1)  *The Complexity, Expense, and Duration of the Litigation*

The Settlement provides the Settlement Class with substantial relief, without the delay and expense of trial and post-trial proceedings. Due to the inherent complexity of securities litigation, and particularly the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Exchange Act, as well as supervening case law developments, prosecution of securities class action litigation is inherently complex and lengthy.

If the parties did not agree to settle, they would have faced an expensive discovery process, briefing of class certification and summary judgment, and a trial with an uncertain outcome. Not only would *any* recovery be very uncertain, considering the near-certainty of appeals, it would inevitably be delayed by years. The jury would have had to determine numerous complex securities law issues and navigate battles of the experts regarding market efficiency, loss causation, and damages. Not only would *any* recovery be very uncertain, considering the near-certainty of appeals, it would inevitably be delayed by years.

In addition, during a trial, the jury would have had to determine: (i) whether Defendants made false and misleading statements; (ii) whether the alleged misrepresentations and omissions were material; (iii) whether Defendants acted with scienter; (iv) whether Lead Plaintiff's claims are timely; (v) whether Ubiquiti Securities traded in an efficient market, entitling Lead Plaintiff to a presumption of reliance; and (vi) the artificial inflation of Ubiquiti Securities and how much of the price declines on September 17, 2017, February 8, 2018, and February 20, 2018 resulted from the alleged corrective disclosures.

### 2)  *Stage of Proceedings and Amount of Discovery Completed*

The proceedings had sufficiently advanced to provide Lead Plaintiff with a thorough understanding of the strengths and weaknesses of her claims. Lead Plaintiff conducted an

exhaustive analysis of public documents, as well as confidential witness interviews and consultation with damages and accounting experts, prior to filing the Complaint. The parties then exchanged Motion to Dismiss Pre-Motion Letters, and participated in a Court hearing on those letters, in which they argued the strengths of their respective arguments. Thereafter, the parties entered mediation before an experienced mediator. During the mediation process, the parties retained experts and drafted extensive mediation statements, which illuminated the relative strengths and weaknesses of the parties' positions. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement, . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement." (Citations and internal quotation marks omitted.))

### 3) *The Risks of Establishing Liability & Damages*

Despite Lead Counsel's confidence, there are significant risks to proving liability, materiality, loss causation, and damages. Moreover, proving scienter, a notoriously difficult and risky element of securities fraud cases, was not certain. *See Id.*; *In re Sturm, Ruger, & Co. Sec. Litig.*, No. 3:09CV1293 VLB, 2012 U.S. Dist. LEXIS 116930, at *17 (D. Conn. Aug. 20, 2012). Defendants also raised statute of limitations arguments and contested the amount of potential damages, thereby posing additional challenges to Lead Plaintiff's and the Class's claims.

### 4) *The Risks of Maintaining the Class Action Through Trial*

In deciding Lead Plaintiff's motion for class certification, the Settlement Class would face the risk of arguments by Defendants regarding any potential factual dissimilarity of claims asserted by Lead Plaintiff and putative class members. If successful, the defense would mandate individual lawsuits, hoping to incur minimal amounts of damages accrued. Moreover, even if a

class were certified over Defendants' objection, it would face multiple risks in proving the class-wide nature of Defendants' securities laws violations at trial.

To be entitled to class certification, Lead Plaintiff must show that common issues predominate over individual ones. If not for Defendants' consent to certification of the Settlement Class, Lead Plaintiff would have had to meet her burden by showing that Ubiquiti Securities trade on an efficient market, entitling purchasers to the presumption of reliance on Defendants' materially false statements. Under *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258 (2014), Defendants would have been permitted to rebut the presumption by proving that there was no price impact. While it is not unusual for courts to certify securities class actions, it is by no means automatic. The law governing certification of securities class actions has been in constant flux, as evidenced by the *Halliburton* decision and the uncertainty it has created.  Thus, without a settlement, even assuming the evolving law does not change further, the Settlement Class risked that certification would not be granted. The law governing certification of securities class actions has been in constant flux, as recently evidenced by the *Halliburton* decision and the uncertainty it has created.

### 5) *Reasonableness of the Settlement*

The Settlement provides for a recovery of $15,000,000. Lead Plaintiff's consultation with her expert indicated that, based on the allegations in the Complaint, class-wide damages using different models ranged from approximately $184 million to $100 million, but were likely closer to the midpoint of that range. The Settlement represents an excellent result, returning approximately 11% of estimated damages based on that analysis. Moreover, the appropriate damages model was highly contested by the Parties to a greater degree than is often the case in securities class actions. The Settlement represents a much higher percentage of Defendants' damages estimate, which was substantially lower than Lead Plaintiff's estimate.  As such, the

settlement falls well above the range that courts commonly approve.  *See*, *e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies showing that the average securities class action settlement since 1995 has resulted in a recovery of 5.5% to 6.2% of estimated losses); *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31, 2015) (granting preliminary approval where plaintiffs stood to recover 5.5% of their estimated losses); *In re Zynga Sec. Litig.*, No. 12-cv-04007-JSC, 2015 U.S. Dist. LEXIS 145728, at *40-41 (N.D. Cal. Oct. 27, 2015) (granting preliminary approval of settlement that equated to 10% of estimated losses because it "remain[ed] above the typical recovery in securities litigation"); *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) at 35 (Fig. 27), 36 (Fig. 28) (showing the median settlement value for securities class actions in 2018 was just 2.6% of estimated damages and the median value for cases from 1996 through 2018 with a similar range of estimated damages was only 3.1%).[3]

## IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.   The Settlement Class Meets the Requirements of Rules 23(a) and 23(b)(3)

In granting preliminary settlement approval, the Court should certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The proposed Settlement Class, which has been stipulated to by the parties, consists of: "all persons or entities that purchased or otherwise acquired Ubiquiti Securities between May

---

[3]*See* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_ 012819_Final.pdf.

9, 2013 and February 19, 2018, both dates inclusive, and were injured thereby."[4]  Excluded from the Settlement Class are Defendants, the present and former officers and directors of Ubiquiti and any subsidiary thereof, the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons, and any entity in which any such excluded person has or had a controlling interest during the Settlement Class Period. Also excluded from the Settlement Class are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes.  *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 243 (2d Cir. 2012); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  Before granting preliminary approval of a class action settlement, the Court should determine that the proposed Settlement Class is a proper class for settlement purposes.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation (Fourth)* § 21.632.  To certify a class, the Court must determine whether four threshold requirements of Federal Rule 23(a) are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *Amchem*, 521 U.S. at 613-14.  Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3).  *Id.* In certifying the Settlement Class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial."  *Id.* at 620; *see also* Fed. R. Civ. P. 23(b)(3)(D).  Here, the proposed Settlement Class meets all of the requirements of Rule 23(a) and satisfies the requirements of Rule 23(b)(3).

---

[4] Ubiquiti Securities mean Ubiquiti Common Stock, Ubiquiti Call Options, and Ubiquiti Put Options.  Ubiquiti's Common Stock trades on the NASDAQ under the ticker symbol "UBNT."

### 1.   The Settlement Class Satisfies the Requirements of Rule 23(a)

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ.

P. 23(a)(1).  "Joinder is generally presumed to be impracticable when a putative class exceeds 40

members." *In re Advanced Battery Techs., Inc. Sec. Litig.,* 298 F.R.D. 171, 181 (S.D.N.Y. 2014)

(citing *Marisol A. v. Guiliani*, 126 F.3d 372 (2d Cir. 1997)).  Impracticable does not mean

impossible, but only that the difficulty or inconvenience of joining all members of the class

makes use of the class action mechanism appropriate. *Central States Se. & Sw. Areas Health &*

*Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007).

"While a precise quantification of the class is not required, some evidence or a reasonable

estimate of the number of class members must be provided." *Bourlas v. Davis Law Assocs.*, 237

F.R.D. 345, 350-51 (E.D.N.Y. 2006) (internal quotations and alterations omitted). In making this

determination, "the court may make some common sense assumptions and rely on reasonable

inferences." *Id.* at 351 (internal quotations omitted). Consequently, "[i]n securities fraud class

actions relating to publicly owned and nationally listed corporations, the numerosity requirement

may be satisfied by a showing that a large number of shares were outstanding and traded during

the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  With

more than 77.6 million shares of Ubiquiti common stock outstanding at the end of the Settlement

Class Period and an average daily trading volume in the U.S. of 740,298 shares during the

Settlement Class Period, individual joinder is impracticable and the numerosity requirement is

clearly satisfied.

The proposed Settlement Class also meets the commonality requirement of Rule 23(a).

Commonality is "applied permissively by courts in the context of securities fraud litigation, and

minor variations in the class members' positions will not suffice to defeat certification." *In re*

*Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015) (collecting

cases). The requirement is met if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Securities fraud class actions are "essentially course of conduct cases because the nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action." *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) (internal quotations omitted).

Lead Plaintiff also meets Rule 23(a)'s typicality requirement. A plaintiff's claim is typical if it arises from "the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Like all other Settlement Class Members, Lead Plaintiff directly relied on, or is entitled to a presumption of reliance as to, Defendants' alleged false and misleading statements that violated the Exchange Act. There are no facts concerning Lead Plaintiff that render her atypical as compared to other Settlement Class Members.

Lastly, Rule 23(a) requires that the class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry focuses "on uncovering 'conflicts of interest between named parties and the class they seek to represent.'" *Flag Telecom*, 574 F.3d at 35 (quoting *Amchem*, 521 U.S. at 625). Lead Plaintiff adequately represents the Settlement Class as she has no individual interests or claims that are antagonistic to the Settlement Class and has zealously represented the Settlement Class's interests to date, including by monitoring the pleadings and authorizing Lead Counsel's mediation and settlement efforts.

## 2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Finally, the proposed Settlement Class meets the requirements of Rule 23(b)(3). Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a

class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008). This inquiry "tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation." *Id.* (internal quotations omitted). There are questions of law and fact common to the Settlement Class that predominate over any individual questions, specifically whether Defendants' alleged actions, which were centralized and uniform, violated federal securities laws, and whether those violations were knowing or reckless. These common issues predominate over individual ones.

"Together with predominance, the superiority requirement ensures that the class will be certified only when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Advanced Battery Techs.*, 298 F.R.D. at 182 (S.D.N.Y. 2014) (citations and internal quotation marks omitted). Class treatment is often deemed superior in "negative value" cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually. *Id.*

A class action is also superior to other methods available for the fair and efficient adjudication of this controversy. Members of the Settlement Class are not likely to prosecute, and many do not have an interest or means to prosecute, an individual case against Ubiquiti, a corporation that, along with its executives, is represented by a top-tier, well-staffed law firm

expert in the field of securities litigation. In addition, concerns for efficiency and economy support resolving the issues in one suit before this Court now.

**B.      Nationwide Class Certification is Appropriate for Settlement Purposes**

It is appropriate to settle the claims of all Settlement Class Members in one action because their claims are all subject to the terms of a single federal statute, 15 U.S.C. § 78, *et seq*.

**C.      The Court Should Appoint Lead Counsel as Counsel for the Settlement Class**

A court that certifies a class must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g). Rule 23(g) states that the adequacy of Lead Plaintiff's counsel is determined by four factors: (1) the work counsel has done in identifying or investigating potential claims; (2) counsel's experience in handling class actions; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).  Lead Counsel Pomerantz has extensive experience and a stellar reputation in class actions and securities litigation.  *See* Lieberman Decl., Ex. 2.  Pomerantz has been appointed as lead or co-lead counsel in many complex securities class actions, and has recovered substantial amounts of money for clients and class members.  Lead Counsel will continue to commit adequate resources to ensure that the Settlement Class is properly represented in this Action as Class Counsel.

**V.      THE COURT SHOULD APPROVE THE PROPOSED FORM
AND METHOD OF CLASS NOTICE**

**A.      Notice by Direct Mail and Publication is Appropriate**

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  *See Manual for Complex Litigation (Fourth)*  § 21.312. To satisfy due process, this notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity" to object. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "'The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314). In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication and a press release, (b) mailing long-form notice to all individual shareholders who can be found, and (c) publishing notice on a website. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

The proposed Notice, which the claims administrator would send to Settlement Class Members by first class mail, is attached as Exhibit A-1 to the Stipulation. It describes in plain English the terms of the Settlement, the considerations that led Lead Counsel to conclude that the Settlement is fair and adequate, the maximum attorneys' fees and expenses that may be sought, the procedure to object to the Settlement, and the date and place of the Settlement Hearing.

With the Court's permission, the Claims Administrator will commence mailing the Notice to Settlement Class Members identified by Ubiquiti's transfer agent and will also post the Notice on the internet within 21 days of Court approval, and mail the Notice to shareholders identified in requests to nominees as soon thereafter as addresses are received. The Summary Notice, set forth in Exhibit A-3 to the Stipulation, will be published once in the national edition of *Investor's Business Daily* and once over the *GlobeNewswire* within 14 days thereafter.

Neither Rule 23 nor due process requires receipt of actual notice by all Settlement Class Members; rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others. *Newberg* § 8.04; *Torres v. Toback, Bernstein &*

*Reiss LLP*, No. CV-11-1368 (NGG) (VVP), 2014 U.S. Dist. LEXIS 36925, at *38 (E.D.N.Y. Mar. 14, 2014) (approving mailed notice to last known addresses).

### B.    The Proposed Notice Adequately Informs Settlement Class Members of Their Rights in This Litigation

In an action proceeding under Rule 23(b)(3), the notice must inform each class member, *inter alia*, "that the court will exclude from the class any member who requests exclusion," and "the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B).    Here, the proposed Notice, Exhibit A-1 to the Stipulation, clearly and accurately discloses the information material to a Settlement Class Member's decision whether to accept, object to, or opt out of the Settlement.   The proposed Notice provides information on, *inter alia:* the proposed Settlement Class; the terms and provisions of the Stipulation, including the Settlement Amount; the relief to the Settlement Class and the releases to Defendants that the Settlement will provide; the maximum amount of any award of attorney's fees and reimbursement of expenses to Lead Counsel and of any compensatory award to Lead Plaintiff; the date, time, and place of the final approval hearing; and the procedures and deadlines for opting out of the Settlement or submitting comments or objections.

The Notice also satisfies the PSLRA, 15 U.S.C. § 78u-4(a)(7), and provides:

- a cover page summarizing the information contained in the Notice;

- a statement of the Settlement Class Members' recovery before deduction of Court-approved fees and expenses and costs of notice and claims administration, while making clear that the Plan of Allocation will cause the actual amount recovered by any specific member to vary greatly across the Settlement Class;

- the general terms of the Settlement;

- a statement of the potential outcome of the case;

- a statement of attorney's fees or costs sought;

- information on how to contact the Claims Administrator and/or Lead Counsel (including names, addresses, telephone numbers, and websites); and

- a discussion of the reasons for the proposed Settlement, including the factors Lead Plaintiff and Defendants considered in reaching the proposed Settlement.

Thus, the proposed Notice to be sent to the Settlement Class provides all of the information required by the PSLRA. The Court should approve the proposed form of Notice and direct that notice be given to the Class.

## VI.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposes the following schedule of events in connection with the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing. | At least 100 days after the Court preliminarily approves the Settlement. (Preliminary Approval Order ¶ 5) |
| Mailing of Notice and Proof of Claim and Release. | No later than 21 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶ 8(a)) (the "Notice Date") |
| Publication of Summary Notice. | No later than 14 calendar days after the Notice Date (Preliminary Approval Order ¶ 8(b)) |
| Filing deadline for requests for exclusion. | Postmarked no later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 15) |
| Date for Lead Plaintiff to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than 35 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22) |
| Filing deadline for objections. | No later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 18) |
| Date for Lead Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | Seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 22.) |
| Date for Claims to be Filed | No later than 7 calendar days after the Settlement Hearing. (Preliminary Approval Order ¶ 13) |

## CONCLUSION

For the forgoing reasons, Lead Plaintiff respectfully requests that the Court grant the requested relief.

Dated: December 2, 2019

**POMERANTZ LLP**

/s/ *Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (917) 463-1044
Email: jalieberman@pomlaw.com
   mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiff Xiya Qian and the Proposed Settlement Class*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Additional Counsel*