# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE UBIQUITI NETWORKS, INC. SECURITIES LITIGATION | Case No. 18-CV-01620 (VM) CLASS ACTION |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**STIPULATION OF SETTLEMENT**

{00352213;1 }

This Stipulation and Agreement of Settlement, dated as of December 2, 2019 (the "Stipulation") is entered into between (a) Lead Plaintiff Xiya Qian, on behalf of herself and the Settlement Class (defined below), and (b) defendant Ubiquiti Networks, Inc. (n/k/a Ubiquiti Inc.) ("Ubiquiti"), and defendants Robert Pera, Craig L. Foster, Mark Spragg, and Kevin Radigan (collectively, the "Individual Defendants"; and, together with Ubiquiti, the "Defendants"; and together with Lead Plaintiff, the "Settling Parties"), and embodies the terms and conditions of the settlement of the above-captioned action (the "Litigation").[1]  Subject to the approval of the Court and the terms and conditions expressly provided herein, the Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

## I.   THE LITIGATION

This is a federal securities class action on behalf of the Settlement Class.  For purposes of this Settlement only, the Settlement Class is defined in § 1.29 herein, and the Settling Parties intend that the provisions herein concerning certification of the Settlement Class shall have no effect whatsoever in the event that the Settlement does not become Final.

Beginning in February of 2018, three class action complaints were filed in the United States District Court for the Southern District of New York (the "Court").  The first, filed on February 21, 2018, was styled *Vanderheiden v. Ubiquiti Networks, Inc. et al*, No. 1:18-cv-01620. The second, filed on February 28, 2018, was styled *Qian v. Ubiquiti Networks, Inc. et al*, No. 1:18-cv-01841. The third, filed on March 13, 2018, was styled *Kho v. Ubiquiti Networks, Inc. et al*, No. 18-cv-02242.

---

[1] All capitalized terms not otherwise defined shall have the meanings ascribed to them in § V.1 herein.

By order dated October 24, 2018, the Court ordered that the cases be consolidated under the caption *In Re Ubiquiti Networks, Inc. Securities Litigation*, No. 1:18-cv-01620; appointed Xiya Qian as Lead Plaintiff for the consolidated action; and approved Lead Plaintiff's selection of Pomerantz LLP as Lead Counsel.

On December 24, 2018, Lead Plaintiff filed and served her Consolidated Amended Class Action Complaint (the "Complaint") alleging claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and also asserting claims against the Individual Defendants under Section 20(a) of the Exchange Act. Among other things, the Complaint alleged that Ubiquiti and the Individual Defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder, by making certain statements that Lead Plaintiff alleges were false and misleading. The specific statements that Lead Plaintiff identifies in the Complaint and alleges were false and misleading are, *inter alia*, statements regarding: (i) the purported size of the Company's user community; (ii) the Company's internal controls; (iii) the Company's publicly reported accounts receivable figures; (iv) the Company's purported "disruptive business model"; (v) the Company's forecasts for the second quarter of fiscal 2018; (vi) related-party transactions; and (vii) a Securities and Exchange Commission (the "SEC") investigation into the Company. The Complaint further alleged that the price of Ubiquiti's publicly-traded securities was artificially inflated during the Settlement Class Period as a result of Defendants' allegedly false and misleading statements, and declined when the truth was revealed.

On March 12, 2019, pursuant to Judge Marrero's Individual Rule II.B.1, the Settling Parties completed their Motion to Dismiss Pre-Motion Letters. On May 23, 2019, the Court held a telephonic hearing on the Settling Parties' Motion to Dismiss Pre Motion Letters. At the

hearing, the Court permitted Defendants to file an additional submission, which they did on June 7, 2019.

On October 7, 2019, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before experienced mediator Jed Melnick, Esq. In advance of that session, the Settling Parties exchanged detailed mediation statements and exhibits, which addressed the issues of both liability and damages, and provided those statements to Mr. Melnick. The session culminated in the Settling Parties reaching an agreement in principle to settle the Litigation for $15,000,000, which was memorialized in a memorandum of understanding executed on October 16, 2019.

This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement among the Settling Parties.

## II.     LEAD PLAINTIFF'S CLAIMS AND THE BENEFITS OF THE SETTLEMENT

Lead Plaintiff believes that her claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. However, Lead Plaintiff and her counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Lead Plaintiff and her counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and her counsel also are mindful of the inherent problems of proof to prosecute, and of possible defenses to, the securities law violations asserted in the Litigation. Lead Plaintiff and her counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class. Based on their evaluation, Lead Plaintiff and her counsel have determined that the Settlement set forth in the Stipulation is in the best interests of Lead Plaintiff and the Settlement Class.

## III.   DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied, and continue to deny, that they have committed any act or omission giving rise to any liability or violation of the law. Specifically, Defendants have denied, and continue to deny, each and all of the claims and contentions alleged by Lead Plaintiff in the Litigation, along with all of the charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Litigation. Defendants further have denied, and continue to deny, that Lead Plaintiff suffered any damages or were harmed by the conduct alleged in the Litigation. Defendants have asserted, and continue to assert, that their conduct was at all times proper and in compliance with all applicable provisions of law. In addition, Defendants maintain that they have meritorious defenses to all of the claims alleged in the Litigation.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall constitute an admission or finding of any fault, liability, wrongdoing, or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted in the Litigation. Defendants are entering into this Stipulation solely to eliminate the burden and expense of further litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in the Stipulation.

## IV.   DUE DILIGENCE

The Settling Parties have conferred in good faith and agreed on an appropriate set of documents to be produced to Lead Counsel, as reasonably necessary for Lead Counsel to confirm and determine in good faith that the Settlement is fair, reasonable, and adequate to the Settlement Class (the "Confirmatory Discovery"). Ubiquiti produced the mutually-agreed set of documents to Lead Counsel on a confidential basis. Lead Counsel is in the process of reviewing

4

such Confirmatory Discovery, and will complete that process prior to filing its Motion in Support of Final Approval of the Settlement.

Lead Counsel shall treat all documents produced as part of the Confirmatory Discovery as confidential and confirms its compliance with the terms of the Agreement Governing Confirmatory Discovery made between Pomerantz LLP and Ubiquiti as of October 29, 2019.

## V.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

Now, therefore, it is hereby stipulated and agreed by and among Lead Plaintiff (for herself and on behalf of the Settlement Class Members) and Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Litigation and Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows:

**1.      Definitions**

As used in the Stipulation and its Exhibits, the following terms shall have the meanings specified below.  Terms used in the singular shall be deemed to include the plural and vice versa.

1.1    "Authorized Claimant" means any Settlement Class Member whose claim for recovery is allowed pursuant to the terms of the Stipulation.

1.2    "Claims Administrator" means JND Legal Administration.

1.3    "Court" means the United States District Court for the Southern District of New York.

1.4    "Defendants" means Ubiquiti and the Individual Defendants.

1.5    "Defendants' Claims" means any and all claims, demands, rights, causes of action, and liabilities, whether based in law or equity, arising under federal, state, local, statutory or common law or any other law, rule or regulation including both known and Unknown Claims,

that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants, including under Rule 11 of the Federal Rules of Civil Procedure or for any other fees or cost shifting, which arise out of or related in any way to the institution, prosecution, or settlement of the Litigation. Defendants' Claims do not include claims to enforce this Stipulation or any order of the Court in the Litigation.

1.6    "Effective Date" or the date upon which this Settlement becomes "effective," means three (3) business days after the date by which all of the events and conditions specified in ¶ 8.1 herein have been met and have occurred.

1.7    "Escrow Accounts" mean, collectively, the Notice Administration Fund and the Settlement Fund, described in ¶ 2.1 herein.

1.8    "Escrow Agent" means Huntington National Bank.

1.9    "Fee and Expense Application" means the application(s) for an award of attorneys' fees and expenses to Lead Plaintiff's counsel described in ¶ 7.1 herein.

1.10    "Fee and Expense Award" means the award of attorneys' fees and expenses to Lead Plaintiff's counsel described in ¶ 6.2 herein.

1.11    "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit B attached hereto, shall occur: (i) the expiration of the time to file any motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) without any such motion having been filed; (ii) the expiration of the time to appeal from the Judgment without any such appeal having been filed; and (iii) if a motion to alter or amend is filed or if an appeal is filed, immediately after the determination of that motion or appeal so that the Judgment is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time,

voluntary dismissal of appeal, or otherwise, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other writ that may be filed in connection with the approval or disapproval of this Settlement, but shall not include any appeal which concerns only the issue of Lead Plaintiff's counsel's attorneys' fees and expenses, payments to Lead Plaintiff for her expenses, the Plan of Allocation of the Settlement Fund, or the procedures for determining Authorized Claimants' recognized claims.

1.12   "Individual Defendants" mean Robert Pera, Craig L. Foster, Mark Spragg, and Kevin Radigan.

1.13   "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.14   "Lead Counsel" means the law firm of Pomerantz LLP or its successor.

1.15   "Lead Plaintiff" means Xiya Qian.

1.16   "Litigation" means the action captioned *In re Ubiquiti Networks, Inc. Securities Litigation*, Docket No. 1:18-cv-01620-VM (S.D.N.Y.).

1.17   "Net Settlement Fund" means the net settlement fund described in ¶ 6.2 herein.

1.18   "Notice" means the notice described in ¶ 4.1 herein.

1.19   "Notice Administration Fund" means an interest bearing escrow account established by the Claims Administrator to receive funds pursuant to ¶ 2.1.

1.20   "Notice and Administration Expenses" mean the costs and expenses described in ¶ 2.8 herein.

1.21   "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their respective spouses, heirs, beneficiaries, executors, administrators, predecessors, successors, representatives, or assignees.

1.22   "Plan of Allocation" means a plan or formula of allocation of the Net Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants. Any Plan of Allocation is not part of the Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.23   "Preliminary Approval Order" means the order described in ¶4.1 herein.

1.24   "Related Parties" means Ubiquiti's current or former parents, subsidiaries, predecessors, successors, divisions, joint ventures and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, contractors, auditors, principals, agents, managing agents, employees, attorneys, accountants, investment bankers, underwriters, insurers or reinsurers in their capacities as such, as well as each of the immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns of the Individual Defendants and other individuals referred to in this paragraph.

1.25   "Released Claims" means any and all claims, demands, rights, causes of action and liabilities, of every nature and description whatsoever, whether based in law or equity, arising under federal, state, local, statutory or common law, or any other law, rule or regulation, including both known claims and Unknown Claims, that have been or could have been asserted

8

in any forum by any of the Settlement Class Members, or the successors or assigns of any of them, in any capacity, against any of the Released Persons, arising out of, based upon or related in any way to the purchase, acquisition, sale, or ownership of Ubiquiti Securities during the Settlement Class Period, including without limitation any claims related to the allegations, transactions, facts, events, matters, occurrences, acts, representations or omissions involved, set forth, referred to, or that could have been asserted in the Litigation, and any claims for negligence, gross negligence, breach of duty of candor, fraud, or negligent misrepresentation. Released Claims do not include claims to enforce this Stipulation. For the avoidance of doubt, the Settlement does not release the claims raised in *Gericke v. Pera, et al.,* No. 2019-0188-SG (Del. Ch.) and *Franchi v. Pera, et al.,* No. 18-cv-01255 (Cal. Super. Ct., San Mateo County). Further, the Settlement does not release claims, demands, rights, or causes of action and liabilities: (a) between or among Defendants; or (b) between Defendants and their insurers.

1.26    "Released Persons" means each and all of Defendants and each and all of their Related Parties.

1.27    "Settlement" means the settlement of the Litigation as set forth in this Stipulation.

1.28    "Settlement Amount" means Fifteen Million United States Dollars (US$15,000,000.00) in cash to be paid to the Escrow Agent pursuant to ¶ 2.1 of this Stipulation.

1.29    "Settlement Class" means all persons or entities that purchased or otherwise acquired Ubiquiti Securities during the Settlement Class Period. The Settlement Class shall exclude Defendants, the present and former officers and directors of Ubiquiti and any subsidiary thereof, the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons, and any entity in which any such excluded person has or had a controlling interest during the Settlement Class Period. Also excluded from the Settlement Class

are all putative members of the Settlement Class who exclude themselves by filing a valid and timely request for exclusion.

1.30    "Settlement Class Member" means any Person who falls within the definition of the Settlement Class as set forth in ¶ 1.29 above.

1.31    "Settlement Class Period" means the period between May 9, 2013 and February 19, 2018, both dates inclusive.

1.32    "Settlement Fund" means an interest-bearing escrow account established by the Escrow Agent to receive the amounts of funds payable by ¶ 2.1.

1.33    "Settlement Hearing" means the hearing required by Federal Rule of Civil Procedure 23(e), at which time the Settling Parties will request that the Court approve the fairness, reasonableness, and adequacy of the proposed Settlement embodied by this Stipulation and enter the Judgment. Lead Counsel will also request that the Court approve the Plan of Allocation and the Fee and Expense Application.

1.34    "Settling Parties" means, collectively, each of Defendants and Lead Plaintiff on behalf of herself and each of the Settlement Class Members.

1.35    "Supplemental Agreement" means the supplemental agreement between the Settling Parties described in ¶ 8.4 herein.

1.36    "Taxes" means any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority and arising with respect to income earned by the Settlement Fund as described in ¶ 2.9.

1.37    "Tax Expenses" means expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents

including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs relating to filing (or failing to file) the returns described in ¶ 2.9 herein.

1.38    "Ubiquiti" means Ubiquiti Networks, Inc. or Ubiquiti Inc.

1.39    "Ubiquiti Call Options" means call options on Ubiquiti Common Stock.

1.40    "Ubiquiti Common Stock" means the common stock of Ubiquiti.

1.41    "Ubiquiti Put Options" means put options on Ubiquiti Common Stock.

1.42    "Ubiquiti Securities" means Ubiquiti Common Stock, Ubiquiti Call Options, and Ubiquiti Put Options.

1.43    "Unknown Claims" means (i) any Released Claims which Lead Plaintiff or any Settlement Class Member do not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Settlement or seek exclusion from the Settlement Class; and (ii) any Defendants' Claims that any Defendant does not know or suspect to exist in his, her or its favor at the time of the release of Lead Plaintiff and Lead Counsel, which, if known by him, her or it might have affected his, her or its settlement with and release of Lead Plaintiff and Lead Counsel, or might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Released Claims and Defendants' Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiff and Defendants shall expressly waive, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by California Civil Code §1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of**

11

**executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Lead Plaintiff and Defendants shall expressly waive, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. Lead Plaintiff, Defendants and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims or Defendants' Claims, but Lead Plaintiff shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, and Defendants shall expressly, fully, finally, and forever settle and release any and all Defendants' Claims, in each case known or unknown, suspected or unsuspected, contingent or non-contingent, disclosed or undisclosed, matured or unmatured, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Settling Parties acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which these releases are a part.

2. **The Settlement**

    a. **The Settlement Amount**

2.1    On or before fifteen (15) business days after the later of: (i) entry of the Preliminary Approval Order, as defined in ¶ 4.1 herein, and (ii) provision to Defendants of all information necessary to effectuate a transfer of funds, Ubiquiti and/or Defendants' insurers shall cause to be paid the Settlement Amount into the interest bearing Settlement Fund escrow account controlled by the Escrow Agent. The Escrow Agent shall cause $250,000 from the Settlement Amount to be deposited into the interest bearing Notice Administration Fund escrow account controlled by the Escrow Agent.

2.2    Ubiquiti and/or Defendants' insurers shall pay the Settlement Amount on behalf of all Defendants. Such amount is paid as consideration for full and complete settlement of all Released Claims. In the event that the entire Settlement Amount is not funded when due, Lead Plaintiff shall have the right to terminate the Settlement.

2.3    Other than the obligation of Ubiquiti to cause to be paid the Settlement Amount into the Settlement Fund, Defendants shall have no obligation to make any other payment into the Settlement Fund pursuant to this Stipulation.

    b. **The Escrow Agent**

2.4    The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶ 2.1 herein in United States Agency or Treasury Securities or other instruments backed by the Full Faith & Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund in accordance with the investment guidelines set forth in this paragraph shall be borne by the Settlement Fund, and the Released Persons shall

have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.5     The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of counsel for Defendants. Notwithstanding the foregoing, Lead Counsel or the Escrow Agent may immediately pay from the Escrow Accounts the Notice and Administration Expenses and Tax Expenses up to $250,000 without further order of the Court. In the event that the Settlement is not consummated or terminated, money reasonably paid or incurred for this purpose, including any related fees, shall not be repaid or returned.

2.6     Subject to further order(s) and/or directions as may be made by the Court, or as provided in the Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of the Stipulation.  The Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or for any transaction executed by the Escrow Agent.

2.7     All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned pursuant to the Stipulation and/or further order(s) of the Court.

2.8     The Notice Administration Fund shall be used by the Escrow Agent to pay the reasonable fees and expenses incurred by, and the reasonable fees charged by, the Claims Administrator upon presentation of customary invoices therefor, which invoices have been approved by Lead Counsel, including, without limitation: the cost of identifying and locating members of the Settlement Class; mailing Notice and Proof of Claim forms and publishing the

Publication Notice (such amounts shall include, without limitation, the actual costs of publication in national newswires, printing and mailing the Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting Settlement Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund (as defined below) to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims ("Notice and Administration Costs"). Any residual monies held in the Notice Administration Fund upon the completion of notice administration for the Settlement shall be transferred to the Settlement Fund. The Released Persons shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility for or liability whatsoever for any claims with respect thereto. Notwithstanding the foregoing, Ubiquiti shall be responsible for providing to Lead Counsel and/or the Claims Administrator pertinent transfer records within ten (10) calendar days after the entry of Preliminary Approval Order for purposes of mailing notice to the Settlement Class.

### c.   Taxes

2.9    (a)    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.9, including the "relation-back election" (as defined in Treas. Reg. §1.468B- 1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the

15

necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶ 2.9(a) herein) shall be consistent with this ¶ 2.9 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.9(c) herein.

(c)     All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 2.9 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 2.9) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no responsibility or liability whatsoever for Taxes or Tax Expenses. The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall

be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses. The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.9.

**d.      Termination of the Settlement**

2.10    In the event that the Stipulation is not approved, the Stipulation is terminated or canceled, or the Effective Date, as defined in ¶ 8.1 herein, otherwise fails for any reason to occur, the Escrow Accounts less Notice and Administration Expenses or Taxes or Tax Expenses paid, incurred, or due and owing in connection with the Settlement provided for herein, shall be refunded pursuant to written instructions from counsel for Defendants in accordance with ¶ 8.4 herein.

**3.      Class Certification**

3.1    For the sole purpose of the Settlement and for no other purpose, the Settling Parties stipulate, agree, and consent to: (i) certification of the Litigation as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of the Settlement Class; (ii) appointment of Lead Plaintiff as class representative; and (iii) appointment of Lead Counsel as class counsel for the Settlement Class pursuant to Fed. R. Civ. P. 23(g). Following execution of this Stipulation, Lead Plaintiff, with the consent of Defendants, shall apply to the Court for entry of the Preliminary

Approval Order in the form attached as Exhibit A hereto, which will certify the Litigation to proceed as a class action for settlement purposes only and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

   3.2 Nothing in this Stipulation shall serve in any fashion, either directly or indirectly, as evidence of or support for certification of a class other than for settlement purposes, and the Settling Parties intend that the provisions herein concerning certification of the Settlement Class shall have no effect whatsoever in the event the Settlement and Judgment do not become Final. Defendants expressly reserve the right to contest class certification in the event the Settlement is terminated or the Effective Date does not occur for any other reason.

   **4.**  **Preliminary Approval Order and Settlement Hearing**

   4.1 Promptly after execution of the Stipulation, Lead Plaintiff shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order ("Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in the Stipulation, certification of the Settlement Class for settlement purposes, and approval of the mailing of a settlement notice ("Notice") and publication of a summary notice, substantially in the forms of Exhibits A-1 and A-3 attached hereto.  The Notice shall include the general terms of the Settlement set forth in the Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶ 7.1 herein, and the date of the Settlement Hearing, as defined below.

   4.2 Lead Counsel shall request that after notice is given, the Court hold a hearing ("Settlement Hearing") and finally approve the Settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the

proposed Plan of Allocation, the Fee and Expense Application, and Lead Plaintiff's request for payment of time and for expenses, if any.

### 5.    Releases

5.1    Upon the Effective Date, Lead Plaintiff shall, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Persons, whether or not such Settlement Class Member executes and delivers a Proof of Claim and Release or shares in the Settlement Fund. Claims to enforce the terms of this Stipulation or any order of the Court in the Litigation are not released.

5.2    The Proof of Claim and Release to be executed by Settlement Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 attached hereto.

5.3    Upon the Effective Date, all Settlement Class Members, and anyone claiming through or on behalf of any of them, (a) will be permanently and forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute, in any capacity, any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum, or any other forum, asserting the Released Claims against any of the Released Persons; and (b) shall be deemed to permanently covenant to refrain from instituting, commencing or prosecuting, in any capacity, any and all Released Claims against any of the Released Persons.

5.4    Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Lead Plaintiff and Lead Counsel from all Defendants' Claims. Claims to enforce the terms of this Stipulation or any order of the Court in the Litigation are not released.

6. **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

6.1     The Claims Administrator, subject to such supervision and direction of the Court as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants.

6.2     The Settlement Fund shall be applied as follows:

(a)     To pay all the Notice and Administration Expenses described in ¶ 2.8 herein;

(b)     To pay the Taxes and Tax Expenses described in ¶ 2.9;

(c)     To pay attorneys' fees and expenses of counsel for Lead Plaintiff ("Fee and Expense Award"), and to pay Lead Plaintiff for her time and expenses, if and to the extent allowed by the Court; and

(d)     After the Effective Date, to distribute the balance of the Settlement Fund ("Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

6.3     After the Effective Date, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a)     Each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release.

(b)     All Proofs of Claim and Releases must be submitted within seven (7) days after the date of the Settlement Hearing or such other time as may be set by the Court. Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth herein, but shall in all other respects be subject to and bound by the provisions of the Stipulation and the Settlement, including the terms of the Judgment and the releases provided for therein and herein, and will be barred and enjoined from bringing any action against the Released Persons concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion (but not an obligation) to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby. Lead Counsel shall have no liability for not accepting late-submitted claims.

6.4     Persons who otherwise would be Settlement Class Members but desire to be excluded from the Settlement shall be required to provide a written statement that the Person wishes to be excluded from the Settlement Class for receipt by the Claims Administrator no later than twenty one (21) days prior to the Settlement Hearing or such other time as may be set by the Court. Unless otherwise ordered by the Court, any Person who is a Settlement Class Member and who does not submit a timely and valid request for exclusion from the Settlement Class shall be bound by this Stipulation. Copies of all requests for exclusion received, and copies of all written revocations of requests for exclusion received, shall be sent to counsel for Defendants and to Lead Counsel within a reasonable time of receipt by the Claims Administrator and in any event not less than fourteen (14) calendar days prior to the Settlement Hearing.

6.5    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants in an equitable and economic fashion.

6.6    Except for Ubiquiti's obligation to cause the Settlement Amount to be paid into the Settlement Fund as set forth herein, Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of Settlement Class claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claim of any kind against Defendants, their Related Parties, or counsel for Defendants with respect to the matters set forth in ¶¶ 6.1-6.8 herein; and the Settlement Class Members, Lead Plaintiff, and Lead Plaintiff's counsel, including Lead Counsel, release Defendants, and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment or distribution of the Settlement Fund.

6.7    No Person shall have any claim against Defendants, or their Related Parties, counsel for Defendants, Lead Plaintiff's counsel, including, Lead Counsel, the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

6.8     It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth therein.  Defendants will take no position with respect to such proposed Plan of Allocation or such plan as may be approved by the Court.

**7.     Lead Plaintiff's Counsel's Attorneys' Fees and Expenses**

7.1     Lead Counsel may submit an application or applications ("Fee and Expense Application") to the Court for distributions from the Settlement Fund for: (i) an award of attorneys' fees; plus (ii) expenses or charges in connection with prosecuting the Litigation; plus (iii) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Lead Plaintiff may also submit an application for an award for her time and expenses in connection with the prosecution of the Litigation. Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

7.2     The attorneys' fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses, notwithstanding the existence of any objections thereto or potential for appeal therefrom. Lead Counsel may thereafter allocate the attorneys' fees among Lead Plaintiff's other counsel, if any, in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

7.3     In the event that the Effective Date fails for any reason to occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel, and such other Lead Plaintiff's counsel who have received any portion of the Fee and Expense Award, shall, within fifteen (15) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, be severally and jointly obligated to refund to the Settlement Fund such fees and expenses previously paid to them from the Settlement Fund, plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal, modification, cancellation or termination. Each such Lead Plaintiff's counsel's law firm receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that the law firm and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph. For the avoidance of doubt, pursuant to ¶2.5 of this Stipulation, Lead Counsel, and any other Lead Plaintiff's counsel, shall not be required to refund any money reasonably paid or incurred in connection with Notice and Administration Expenses and Tax Expenses.

7.4     The procedure for and the allowance or disallowance by the Court of any applications by any Lead Plaintiff's counsel for attorneys' fees and expenses, or the time and expenses of Lead Plaintiff, to be paid out of the Settlement Fund, are not part of the Settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order or proceeding relating to the Fee and Expense Application, or Lead

Plaintiff's time and expense application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement of the Litigation set forth therein.

7.5     Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund.  Defendants and their Related Parties shall have no responsibility for any payment of attorneys' fees and/or expenses to Lead Counsel, Lead Plaintiff's other counsel, Lead Plaintiff, or any other counsel or Person who receives payment from the Settlement Fund.

7.6     Defendants and their Related Parties shall have no responsibility or liability whatsoever for the allocation among Lead Counsel, Lead Plaintiff's other counsel, or any other counsel or Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

**8.       Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

8.1     The Effective Date of the Stipulation shall be conditioned on the occurrence of all the following events:

(a)     The Court has entered the Preliminary Approval Order, as required by ¶ 4.1 herein;

(b)     The Settlement Amount has been deposited into the Escrow Accounts;

(c)     Ubiquiti has not exercised its option to terminate the Stipulation pursuant to ¶ 8.3 herein;

(d)     Defendants have not exercised their option to terminate the Stipulation pursuant to ¶ 8.4 herein;

(e)     The Court has entered the Judgment, or a judgment substantially in the form of Exhibit B attached hereto; and

25

(f)     The Judgment has become Final, as defined in ¶ 1.11 herein.

8.2     Upon the Effective Date, any and all remaining interest or right of Defendants or Defendants' insurers in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶ 8.1 herein are not met, then the Stipulation shall be canceled and terminated subject to ¶ 8.4 herein, unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Settlement.

8.3     Ubiquiti shall have the right to terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in a confidential supplemental agreement ("Supplemental Agreement") between the Settling Parties. The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein, to the extent necessary, or as otherwise provided in the Supplemental Agreement), unless and until the Court otherwise directs or a dispute arises between the Settling Parties concerning its interpretation or application. If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Settling Parties will undertake to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal.

8.4     In the event that the Stipulation is terminated or canceled pursuant to ¶ 8.1, or the Effective Date otherwise fails for any reason to occur, then:

(a)     Within fifteen (15) calendar days after written notification of such event is sent by counsel for Defendants or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest), less any expenses which have either been disbursed pursuant to ¶¶ 2.8 or 2.9 herein, or are chargeable to the Settlement Fund pursuant to ¶¶ 2.8 or 2.9 herein,

shall be refunded by the Escrow Agent to Ubiquiti pursuant to written instructions from Defendants' counsel. The Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds to Ubiquiti, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written instructions from Defendants' counsel;

(b)     Neither Lead Plaintiff nor any of her counsel shall have any obligation to repay any amounts disbursed pursuant to ¶¶ 2.8 or 2.9 herein, and any expenses already incurred pursuant to ¶¶ 2.8 or 2.9 herein, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶ 2.10 and 8.4(a) herein;

(c)     The Settling Parties shall revert to their respective pre-mediation positions in the Litigation; and

(d)     The terms and provisions of the Stipulation, with the exception of this ¶ 8.4(d) and ¶¶ 1.1-1.43, 2.8-2.10, 7.3, 9.3, and 9.6 herein, shall have no further force and effect with respect to the Settling Parties and shall not be enforceable, or used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc.* No order of the Court, or modification or reversal on appeal of any order of the Court, concerning the Plan of Allocation, or the amount of any attorneys' fees, expenses, and interest awarded by the Court to any of Lead Plaintiff's counsel or Lead Plaintiff, shall operate to terminate or cancel this Stipulation or constitute grounds for cancellation or termination of this Stipulation.

### 9.    Miscellaneous Provisions

9.1    The Settling Parties: (i) acknowledge that it is their intent to consummate this Stipulation; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. Lead Plaintiff and Defendants agree that all Settling Parties and their respective counsel have complied with Federal Rule of Civil Procedure 11. The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made by any of the Settling Parties in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.3    Neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants or their respective Related Parties; (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of Defendants or their respective Related Parties in any

28

civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (iii) is or may be deemed to be or may be used as an admission, or evidence, that any claim asserted by Lead Plaintiff was not valid in any civil, criminal, or administrative proceeding in any court, administrative agency or other tribunal or (iv) is or may be deemed to be or may be used as an admission of, or evidence of, the appropriateness of treating the Litigation as a class action for any other purpose than the Settlement. Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.4     Defendants shall provide notice under the provisions of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, as appropriate, at their own expense.

9.5     Except as otherwise provided for herein, all agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

9.6     All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.7     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.8     The Stipulation, the Exhibits attached hereto, and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto. No representations, warranties or inducements have been made to any party concerning the Stipulation, its Exhibits, or the

Supplemental Agreement other than the representations, warranties, and covenants contained and memorialized in such documents.

9.9     Except as otherwise provided for herein, each Settling Party shall bear his, her or its own costs.

9.10     Lead Counsel, on behalf of the Settlement Class, are expressly authorized by Lead Plaintiff to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which they deem appropriate.

9.11     Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto warrants that such Person has the full authority to do so.

9.12     The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or e-mail shall be deemed originals.

9.13     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

9.14     The waiver by one party of any breach in this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

9.15    The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties hereto.

9.16    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation and matters related to the Settlement.

9.17    Pending approval of the Court of the Stipulation and its Exhibits, other than by agreement of the Settling Parties, all proceedings in this Litigation shall be stayed and Lead Plaintiff and all Settlement Class Members shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

9.18    The Settling Parties agree that, other than disclosures required by law, any public comments from the Settling Parties regarding this resolution will not substantially deviate from words to the effect that the Settling Parties have reached a mutually acceptable resolution by way of a mediated settlement.

9.19    This Stipulation, the Exhibits attached hereto, and the Supplemental Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the Settling Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice-of-law principles.

9.20   This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties, and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the Settling Parties hereto have caused the Stipulation

to be executed by their duly authorized attorneys, dated December 2, 2019.

By: _____

**POMERANTZ LLP**
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiff Xiya Qian and the Class*

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Additional Counsel*

33

By: _____

SIMPSON THACHER & BARTLETT **LLP**
Peter E. Kazanoff
Nicholas S. Goldin
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
pkazanoff@stblaw.com

*Counsel for Defendants Ubiquiti Networks,*
*Inc., (n/k/a Ubiquiti Inc.), Robert Pera, Craig L.*
*Foster, Mark Spragg, and Kevin Radigan*

34