**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE UBIQUITI NETWORKS, INC. SECURITIES LITIGATION | No.  1:18-cv-01620 (VM) |
| | Class Action |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     PROCEDURAL HISTORY.............................................................................. 2

III.    THE SETTLEMENT ....................................................................................... 3

IV.     THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ...... 5

        A.      The Settlement Is Presumptively and Procedurally Fair........................................ 6

        B.      The Settlement Is Substantively Fair .................................................................. 9

                1.      Litigating Securities Claims Would be Long, Complex, and
                        Expensive ........................................................................................... 10

                2.      The Class Reaction Supports Final Approval ........................................... 12

                3.      Lead Plaintiff Had Sufficient Command of the Case's Merits
                        to Enter the Settlement......................................................................... 13

                4.      There Are Substantial Risks of Establishing Liability and Damages ....... 16

                5.      The Risks of Maintaining Class Action Status Through Trial................. 19

                6.      The Ability of Defendants to Withstand a Greater Judgment................. 20

                7.      The Settlement Amount is Within the Range of Reasonableness............ 20

V.      THE PLAN OF ALLOCATION SHOULD BE APPROVED ........................................ 23

VI.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED........................... 24

VII.    NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS........ 24

VIII.   CONCLUSION................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215, 1219, 1221-33 (10th Cir. 1996) .......................................................................12

*Backman v. Polaroid Corp.*,
  910 F.2d 10 (1st Cir. 1990) ...................................................................................................12

*Brown v. China Integrated Energy Inc.*,
  2014 U.S. Dist. LEXIS 117764 (C.D. Cal. Aug. 4, 2014) ......................................................20

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ...................................................................................................................5

*Castagna v. Madison Square Garden, L.P.*,
  No. 09-cv-10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7,
  2011) ......................................................................................................................................17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)............................................................................................. *passim*

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*
  954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013)............................................................................22

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ 7132 (CM), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9,
  2014) ........................................................................................................................................9

*Clark v. Ecolab Inc.*,
  No. 07 Civ 8623 (PAC), 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11,
  2010) ........................................................................................................................................6

*D'Amato v. Deutsche Bank*,
  236 F.3d 86 (2d Cir. 2001)....................................................................................................20

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).................................................................................................................18

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).................................................................................................................24

*Fleisher v. Phx. Life Ins. Co.*,
  No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) .......................6, 23

*George v. China Auto. Sys., Inc.*,
   11 Civ. 7533 (KBF), 2013 U.S. Dist. LEXIS 93698 (S.D.N.Y. July 3, 2013) .......................19

*Guevoura Fund Ltd. v. Sillerman*,
   No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18,
   2019) .........................................................................................................................................10, 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)..........................................................................................................10, 19, 20

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ..................................................................................................9

*Hubbard v. BankAtlantic Bancorp, Inc.*,
   688 F.3d 713 (11th Cir. 2012) ...................................................................................................17

*IBEW Local 90 Pension Fund v. Deutsche Bank AG*,
   11 Civ. 4209 (KBF), 2013 U.S. Dist. LEXIS 155136 (S.D.N.Y. Oct. 29, 2013)...................19

*In re Advanced Battery Techs. Sec. Litig.*,
   298 F.R.D. 171, 182-83 (S.D.N.Y. 2014) ................................................................................25

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................................10

*In re AOL Time Warner ERISA Litig.*,
   No. 02 Civ. 8853 (SWK), 2006 U.S. Dist. LEXIS 70474 (S.D.N.Y. Sept. 27,
   2006) ...........................................................................................................................................7

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006).......................................13, 14, 16, 20

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)........................................................................................14

*In re Bear Stearns Cos.*,
   909 F. Supp. 2d 259, (S.D.N.Y. Nov. 9, 2012)............................................................. *passim*

*In re China Sunergy Sec. Litig*,
   No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007 (S.D.N.Y. May 13,
   2011) .........................................................................................................................................22

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)........................................................................................8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27,
   2007) ...........................................................................................................................................6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-cv-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov.
  5, 2010) ................................................................................................................18, 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................9

*In re Gilat Satellite Networks, Ltd.*,
  No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19,
  2007) ...............................................................................................................10

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ..................................................16, 18

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
  142 F.R.D. 588 (S.D.N.Y. 1992) .....................................................................22

*In re iDreamSky Tech. Sec. Litig.*,
  No. 1:15-cv-2514 (JPO), 2018 U.S. Dist. LEXIS 232237 (S.D.N.Y. Apr. 6,
  2018) ...............................................................................................................16

*In re IMAX Secs. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) .....................................................................23

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26,
  2003) ...............................................................................................................12

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)..............................................................22

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  327 F.R.D. 483 (S.D.N.Y. 2018) .......................................................................9

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................9

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...........................................................................14

*In re Nissan Radiator*,
  2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013).................................14

*In re Paine Webber Ltd. P'ships Litig*,
  171 F.R.D. 104 (S.D.N.Y.), *aff'd*, 117 F.3d 721 (2d Cir. 1997)..........................6, 13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................17

iv

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016)...................................................................................7

*In re Platinum & Palladium Commodities Litig.*,
    No. 10cv3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014).................................5

*In re Priceline.com, Inc.*,
    2007 U.S. Dist. LEXIS 52538 (D. Conn. July 19, 2007)........................................................19

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ...................................................................................22

*In re Sony SXRD Rear Projection TV Class Action Litig.*,
    No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093 (S.D.N.Y. May 1,
    2008) .....................................................................................................................................14

*In re Sturm*,
    No. 3:09cv1293 (VLB), 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20,
    2012) ..............................................................................................................................12, 18

*In re Veeco Instruments Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *21 (S.D.N.Y.
    Nov. 7, 2007) ...............................................................................................................12, 14

*In re Visa Check/MasterMoney Antitrust Litig.*,
    297 F. Supp. 2d 503, 510, 526 (E.D.N.Y. 2003) .................................................................11

*Joel A. v. Giuliani*,
    218 F.3d 132 (2d Cir. 2000)..................................................................................................5

*Kho v. Ubiquiti Networks, Inc. et al*,
    No. 18-cv-02242 ....................................................................................................................2

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..............................................................................................14

*Lyons v. Marrud, Inc.*,
    No. 66 Civ. 415., 1972 U.S. Dist. LEXIS 13401, at *5 (S.D.N.Y. June 6,
    1972) ......................................................................................................................................7

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................................16, 17

*Menkes v. Stolt-Nielsen S.A.*,
    No. 3:03CV00409 (DJS), 2011 U.S. Dist. LEXIS 7066 (D. Conn. Jan. 25,
    2011) ......................................................................................................................................18

*P. Van Hove BVBA v. Universal Travel Grp.*,
  No. 11-cv-2164, 2017 U.S. Dist. LEXIS 97909 (D.N.J. June 26, 2017)................................16

*Pantelyat v. Bank of Am., N.A.*,
  No. 16-cv-8964 (AJN), 2019 U.S. Dist. LEXIS 15714 (S.D.N.Y. Jan. 31,
  2019) .........................................................................................................................14, 18

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
  645 F. Supp. 2d 210 (S.D.N.Y. 2009).................................................................................18

*Qian v. Ubiquiti Networks, Inc. et al*,
  No. 1:18-cv-01841 ...............................................................................................................2

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .........................................................................................12

*Schuler v. Meds. Co.*,
  No. 14-1149 (CCC), 2016 U.S. Dist. LEXIS 82344 (D.N.J. June 23, 2016) ..................16, 22

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331 (CM), 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21,
  2014) ...................................................................................................................................10

*Steginsky v. Xcelera, Inc.*,
  No. 3:12-cv-188 (SRU), 2015 U.S. Dist. LEXIS 28733 (D. Conn. Mar. 10,
  2015) ...................................................................................................................................19

*Stinson v. City of N.Y.*,
  256 F. Supp. 3d 283 (S.D.N.Y. 2017).................................................................................5

*Taft v. Ackermans*,
  2007 U.S. Dist. LEXIS 9144, at *21-22 (S.D.N.Y. Jan. 31, 2007) ......................................23

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .......................................................................................6, 9

*van Oss v. N.Y. State*,
  No. 10 Civ. 7524 (SAS), 2012 U.S. Dist. LEXIS 91684 (S.D.N.Y. June 26,
  2012) ...................................................................................................................................14

*Vanderheiden v. Ubiquiti Networks, Inc. et al*,
  No. 1:18-cv-01620 ...............................................................................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................ *passim*

*Youngers v. Virtus Inv. Partners Inc.*,
  No. 15cv8262, 2017 U.S. Dist. LEXIS 73555 (S.D.N.Y. May 15, 2017)..............................19

## I.   INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"),[1] Lead Plaintiff Xiya Qian ("Lead Plaintiff"), individually and on behalf of all Settlement Class Members, presents for the Court's final approval a fifteen million United States dollars ($15,000,000) cash settlement resolving all claims in the above-captioned action ("Action") against Defendants, as set forth in the Stipulation of Settlement, dated December 2, 2019 (Docket ("Dkt.") No. 39-1) ("Stipulation").

The $15 million cash Settlement is a superb result for the Class and substantively fair under the factors articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  Lead Plaintiff estimates that the proposed Settlement provides the Settlement Class with approximately 11% of likely recoverable damages[2]—well above median settlements for similar securities class actions.[3]  The Settlement's merit is further demonstrated by the fact that, to date, no potential Settlement Class Members have objected to the Settlement.  Further, the Settlement is entitled to a presumption of fairness because it resulted from arm's-length negotiations between highly experienced counsel and an all-day mediation session before an experienced mediator.

The Settlement consisted of approximately two years of hotly contested litigation, wherein Lead Counsel: (a) conducted lengthy investigations reviewing and analyzing publicly available information regarding Defendants, including SEC filings, news articles, analyst reports, press releases, share-price movements, earnings calls, and analyst presentations; (b) carefully drafted a detailed Consolidated Amended Class Action Complaint (the "Complaint"); (c) consulted with a damages expert to evaluate recoverable losses; (d) consulted with an accounting expert regarding

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings set forth in the Stipulation.

[2] This estimate is based on a calculation of damages performed by Lead Plaintiff's damages consultant.  By not opposing this motion, Defendants are not expressing agreement with Lead Plaintiff's damage calculation.

[3] *See infra* Section IV.B.7.

accounting issues raised in the Complaint; (e) consulted with an investigator; (f) thoroughly researched the securities laws and intricacies of Ubiquiti Networks, Inc.'s (n/k/a Ubiquiti Inc.) ("Ubiquiti") business and online community; (g) engaged in letter briefing and a phone hearing with the Court related to Defendants' proposed motion to dismiss the Complaint; (h) drafted and exchanged extensive mediation statements; (i) participated in an all-day mediation session before mediator Jed D. Melnick of JAMS; (j) successfully negotiated the $15 million Settlement; (k) conducted confirmatory discovery assessing the Settlement's fairness, reasonableness, and adequacy; and (l) actively supported the Settlement, including by reaching the terms of the Stipulation with Defendants, seeking the Court's approval, and overseeing the settlement-administration process.

Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

## II.   PROCEDURAL HISTORY

Beginning in February 2018, three class action complaints were filed in the United States District Court for the Southern District of New York.[4]  On October 24, 2018, the Court entered an order consolidating these cases under the caption *In re Ubiquiti Networks, Inc. Securities Litigation*, No. 1:18-cv-01620; appointed Xiya Qian as Lead Plaintiff for the consolidated action; and approved Lead Plaintiff's selection of Pomerantz LLP  as Lead Counsel. (Dkt. No. 25.)

On December 24, 2018, Lead Plaintiff filed and served the Complaint alleging claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against the Individual Defendants under

---

[4] The first, filed on February 21, 2018, was styled *Vanderheiden v. Ubiquiti Networks, Inc. et al*, No. 1:18-cv-01620.  The second, filed on February 28, 2018, was styled *Qian v. Ubiquiti Networks, Inc. et al*, No. 1:18-cv-01841.  The third, filed on March 13, 2018, was styled *Kho v. Ubiquiti Networks, Inc. et al*, No. 18-cv-02242.

Section 20(a) of the Exchange Act.  (Dkt. No. 26.)  Among other things, the Complaint alleged that Defendants violated Section 10(b) of the Exchange Act by making certain false and misleading statements related to, *inter alia*: (i) the size of Ubiquiti's user community; (ii) Ubiquiti's internal controls; (iii) Ubiquiti's publicly reported accounts receivable figures; (iv) Ubiquiti's "disruptive business model"; (v) Ubiquiti's second quarter of fiscal 2018 forecasts; (vi) related-party transactions; and (vii) a U.S. Securities and Exchange Commission ("SEC") investigation.  The Complaint alleged that Ubiquiti's publicly traded securities prices were artificially inflated during the Settlement Class Period because of Defendants' allegedly false and misleading statements, which declined when the truth was revealed.

On March 12, 2019, pursuant to Judge Marrero's Individual Rule II.B.1, the parties completed their Motion to Dismiss Pre-Motion Letters.  (Dkt. Nos. 32-34.)  On May 23, 2019, the Court held a telephonic hearing on Defendants' proposed Motion to Dismiss.  At the hearing, the Court indicated that it was not inclined to dismiss the Complaint in its entirety and agreed to Defendants' request to submit an additional letter on the topics discussed.  On June 7, 2019, Defendants filed a letter based on Court's May 23, 2019 Order.  (Dkt. No. 36.)  On August 1, 2019, before the Court determined whether it was necessary for Lead Plaintiff to respond to that letter, the Settling Parties informed the Court that they were planning to mediate.  (Declaration of Jeremy A. Lieberman in Support of Lead Plaintiff's (1) Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and (2) Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff ("Lieberman Decl.") ¶ 26).

## III.   THE SETTLEMENT

In early 2019, the Settling Parties began discussing a potential resolution of the Action. Those initial talks did not lead to an agreement and the Settling Parties continued actively litigating

the Action.  The Settling Parties then reopened settlement discussions in mid-2019.  On October

7, 2019, they participated in a full-day mediation with the assistance of Jed D. Melnick of JAMS.

Prior to that session, the Settling Parties exchanged detailed mediation statements and exhibits,

addressing issues of liability and damages.  The session culminated in an agreement in principle

to settle the Litigation for $15 million, which was memorialized in a memorandum of

understanding (the "MOU") executed on October 16, 2019.  Pursuant to the MOU, the Settling

Parties agreed to a process of informal discovery intended to allow Lead Counsel to conduct due

diligence and confirm in good faith that the proposed Settlement is fair, reasonable, and adequate.

(*See id.* ¶¶ 27-29).

On December 2, 2019, Lead Plaintiff filed a motion for preliminary approval of settlement

("Preliminary Approval Motion") and accompanying documents.  (Dkt. Nos. 37-39.)  The Court

issued an Order Preliminarily Approving Settlement and Providing for Notice on December 11,

2019  ("Preliminary Approval Order," Dkt. No. 40).  The Court scheduled the Settlement Hearing

for final approval of the Settlement, attorney's fees and expenses, Lead Plaintiff's compensatory

award, and to hear any objections by Settlement Class Members, for March 27, 2020, at 10:00 a.m.

*Id.*  Ubiquiti and/or Defendants' insurers have paid $15 million into an escrow account for the

Settlement Class's benefit, $250 thousand of which is earmarked for Notice and Administration

Expenses.  (Lieberman Decl. ¶ 32).   The court-approved claims administrator, JND Legal

Administration ("JND"), mailed a total of 170,735 Notices of Proposed Settlement of Class Action

("Notice") and Proof of Claim and Release Forms ("Proof of Claim") (collectively, the "Notice

Packet") to potential Class Members, brokers and nominee holders.  (*See* Lieberman Decl., Ex. 1

(Declaration of Jack Ewashko Regarding: (A) Mailing of the Notice Packet; (B) Publication of the

Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date

("Ewashko Decl.")) ¶¶ 1-12).  The Summary Notice of Pendency and Proposed Settlement of Class

Action and Final Approval Hearing ("Summary Notice") was published on January 6 and 10, 2020.

*Id.* ¶ 13 and Ex. B.  As of the time of this filing on February 14, 2020, not a single Settlement Class

Member has transmitted an objection to the Settlement.  *Id.* ¶ 17.  The deadline to file an objection

is March 6, 2020.  (Preliminary Approval Order ¶ 18.)  To date, only three requests for exclusion

have been received.  (Ewashko Decl. ¶ 16.)  The deadline to submit a request for exclusion is

March 6, 2020.  (Preliminary Approval Order ¶ 15.)

## IV.   THE PROPOSED SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

"A court may approve a class action settlement if it is 'fair, adequate, and reasonable, and

not a product of collusion.'"  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir.

2005) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  "To determine whether a

settlement is fair, reasonable, and adequate, the Second Circuit instructs district courts to examine

'the negotiating process leading up to the settlement, i.e., procedural fairness, as well as the

settlement's substantive terms, i.e., substantive fairness.'"  *Stinson v. City of N.Y.*, 256 F. Supp. 3d

283, 288 (S.D.N.Y. 2017) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d

Cir. 2009)); *see also In re Platinum & Palladium Commodities Litig.*, No. 10cv3617, 2014 U.S.

Dist. LEXIS 96457, at *35-36 (S.D.N.Y. July 15, 2014) (same).  Courts consider "both the

settlement's terms and the negotiating process leading to settlement."  *Wal-Mart Stores*, 396 F.3d

at 116.  The Second Circuit has repeatedly noted the "strong judicial policy in favor of settlements,

particularly in the class action context."  *Id.*[5]  Moreover, the Supreme Court has cautioned that in

evaluating a proposed class-action settlement, courts should "not decide the merits of the case or

resolve unsettled legal questions."  *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981).  This

---

[5] All internal citations and quotations are omitted herein, unless stated otherwise.

is particularly important in complex class actions where substantial resources are conserved by avoiding the time, cost, and rigor of prolonged litigation.  *See* 4 William Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 13.44 (5th ed. 2014).  The Settlement here is fair, adequate, reasonable, and not a product of collusion.

### A.     The Settlement Is Presumptively and Procedurally Fair

 "So long as the integrity of the arm's-length negotiation process is preserved . . . *a strong initial presumption of fairness attaches to the proposed settlement*."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918, at *31 (S.D.N.Y. July 27, 2007) (emphasis in original); *Thompson v. Metro. Life Ins. Co*., 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (same); *In re Paine Webber Ltd. P'ships Litig*, 171 F.R.D. 104, 125 (S.D.N.Y.) (same), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Additionally, "[i]n appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is entitled to great weight." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *30; *Fleisher v. Phx. Life Ins. Co*., No. 11-cv-8405, 2015 U.S. Dist. LEXIS 121574, at *17 (S.D.N.Y. Sept. 9, 2015) (finding courts should give "proper deference to the private consensual decision of the parties" and "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation"); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036, at *18 (S.D.N.Y. May 11, 2010) (holding that "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel").

The Settlement was reached through arm's-length negotiation, which included initial settlement discussions that were not successful, followed by an all-day mediation before a respected and experienced mediator.  (Lieberman Decl. ¶¶ 6, 27-28.)  Prior to that session, the parties exchanged, and provided to the mediator, detailed mediation statements and exhibits that

addressed liability and damages. *Id.* ¶ 28. During the mediation session, both sides debated the merits of Lead Plaintiff's claims and the defenses to those claims. *Id.* The negotiations, though collegial, were adversarial. *Id.* Though Lead Plaintiff believes that the claims asserted in the Action have merit, and that the evidence developed to date supports her claims, the negotiations were informed in part by the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals, the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, and the difficulties and delays inherent in such litigation. *See id.* ¶¶ 33-40. The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator supports the conclusion that the Settlement is fair and free of collusion. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 235 (2d Cir. 2016) (finding a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion"); *In re AOL Time Warner ERISA Litig.*, No. 02 Civ. 8853 (SWK), 2006 U.S. Dist. LEXIS 70474, at *16 (S.D.N.Y. Sept. 27, 2006) (same).

Further, in negotiating the Settlement, Lead Plaintiff benefitted from attorneys (including Pomerantz's Managing Partner Jeremy A. Lieberman and Partner Michael Grunfeld) who are highly experienced in complex class litigation and familiar with the case's legal and factual issues. *See* Lieberman Decl., Ex. 2 (Ex. C) (Pomerantz Resume); *Lyons v. Marrud, Inc.*, No. 66 Civ. 415., 1972 U.S. Dist. LEXIS 13401, at *5 (S.D.N.Y. June 6, 1972) ("Experienced and competent counsel have assessed these problems and the probability of success on the merits . . . . The parties' decision regarding the respective merits of their positions has an important bearing on this case."). The efforts of Class Counsel, who are highly experienced in the area of complex securities fraud litigation, secured a Settlement that provides substantial benefits to the Settlement Class ($15

7

million in cash), especially considering the expense, risks, difficulties, delays, and uncertainties of continued litigation, trial, and post-trial proceedings.

The Settling Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to their agreement to settle.   Lead Counsel (a) conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Ubiquiti's SEC filings and investor calls, and public reports and information concerning Ubiquiti; interviews with confidential witnesses who were former Ubiquiti employees with relevant information; and consultation with damages and accounting experts; (b) thoroughly researched the securities laws as well as the intricacies of Ubiquiti's business and online community; (c) drafted the Complaint; (d) engaged in letter briefing and a phone hearing with the Court related to Defendants' proposed motion to dismiss the Complaint; (e) drafted and exchanged extensive mediation statements; (f) participated in an all-day mediation session before mediator Jed D. Melnick of JAMS; (g) engaged in negotiations regarding the terms of the proposed Settlement; and (h) engaged in confirmatory discovery, in order to assess the fairness, reasonableness and adequacy of the Settlement.   (*See* Lieberman Decl. ¶ 79.)

The Settlement does not provide preferential treatment to Lead Plaintiff or any other Settlement Class Members.   The proposed Plan of Allocation, which is set forth on pages 11-16 of the Notice, and was developed by Lead Plaintiff's damages expert in consultation with Counsel, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Proofs of Claim.   (Lieberman Decl. ¶¶ 60-73.)   The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims.   *Id.*   Similar plans have repeatedly been approved by courts in this District.   *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re*

*Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

For all these reasons, a strong initial presumption of fairness deservedly attaches to the Settlement, which resulted from a thorough arm's-length process. *See City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, at *11 (S.D.N.Y. May 9, 2014) (finding settlement is presumptively fair when reached by experienced counsel and assisted by a mediator); *In re Bear Stearns Cos. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (approving settlement where parties engaged in arm's length negotiations and mediation); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding settlement entitled to presumption of fairness where there was arms-length negotiation facilitated by a mediator); *Thompson*, 216 F.R.D. at 61.

**B.      The Settlement Is Substantively Fair**

Courts in the Second Circuit consider the nine factors enumerated in *Grinnell*, 495 F.2d at 454 (the "*Grinnell* factors"), to evaluate the substantive fairness of a settlement. *See Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 22-24 (2d Cir. 2013) (citing *Wal-Mart Stores*, 396 F.3d at 117-19). The *Grinnell* factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the circumstances. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 327 F.R.D. 483, 493 (S.D.N.Y. 2018); *see also Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at *10 (same). Further,

a court's function in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or try the case by resolving issues intentionally left unresolved.  *See Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 U.S. Dist. LEXIS 37872, at *22 (S.D.N.Y. Mar. 21, 2014).  On balance, the *Grinnell* factors support approval of the Settlement.

### 1.    Litigating Securities Claims Would be Long, Complex, and Expensive

The Settlement provides substantial and certain relief without the delay and expense of motion practice, discovery, class certification, trial, and post-trial proceedings.  Because of the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(f)(7) ("PSLRA"), amendments to the Exchange Act, and supervening case law developments, such as the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014), prosecution of securities class actions is inherently complex and lengthy.  *See Guevoura Fund Ltd. v. Sillerman*, No. 1:15-cv-07192-CM, 2019 U.S. Dist. LEXIS 218116, at *15, 20 (S.D.N.Y. Dec. 18, 2019) ("Securities class actions are notoriously complex[.]"); *Bear Stearns*, 909 F. Supp. 2d at 266 ("[S]ecurities class actions are notably difficult and notoriously uncertain[.]"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) (finding "most securities fraud cases[] are complex and challenging as regards both liability and damages" even when defendants "have admitted" errors); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2007 U.S. Dist. LEXIS 29062, at *36 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

If the parties did not agree to settle, they would have faced an expensive discovery process, class certification and summary judgment briefing, and the risks of trial.  A jury would have to determine numerous complex securities law issues and navigate battles of the experts regarding merits issues, market efficiency, loss causation, and damages.  For example, a jury would have to

determine: (i) whether Defendants made false or misleading statements or omissions; (ii) whether the alleged misrepresentations and omissions were material; (iii) whether Defendants acted with scienter; (iv) whether Lead Plaintiff's claims are timely; (v) whether Ubiquiti Securities traded in an efficient market, entitling Lead Plaintiff to a presumption of reliance; and (vi) the artificial inflation of Ubiquiti Securities and how much of the price declines on the corrective disclosure dates alleged in the Complaint resulted from Defendants' alleged misstatements. *Any* recovery would be very uncertain and, because of the near certainty of appeals, inevitably delayed by years.

In addition, the scope of merits discovery would be very large given the length of the Class Period and the severity of the allegations in the Complaint. The parties would have had to incur substantial costs and engage in prolonged litigation through summary judgment, trial, and likely appeals. Discovery costs (including document production and hosting fees) would be significant. Lead Counsel would anticipate, given the complexities, reviewing at least hundreds of thousands of pages of documents, if not more, and taking many depositions. In addition to merits discovery, the parties would have to engage in expert discovery on questions of class certification, reliance, loss causation, damages, and merits issues. The parties would present dueling experts and incur substantial costs (including for expert reports and testimony regarding market efficiency, price impact, damages, and merits topics).

Even assuming a favorable trial outcome, Defendants would likely appeal, further delaying any benefit to the Settlement Class. Moreover, even if a larger judgment were recoverable at trial, courts recognize that the delay occasioned by trial, post-trial, and appellate processes greatly reduces the value of any award. *See In re Visa Check/MasterMoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510, 526 (E.D.N.Y. 2003) (approving settlement where action "would have taken many more years to finally resolve" and "exhaust all avenues of review"), *aff'd sub nom. Wal-Mart*, 396

11

F.3d 96.  Moreover, even very large judgments recovered after lengthy litigation and trial can be completely lost on appeal or as a result of a post-trial judgment as a matter of law.  *See, e.g.*, *Backman v. Polaroid Corp.*, 910 F.2d 10, 11-18 (1st Cir. 1990) (reversing plaintiffs' multi-million dollar judgment after 11 years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1219, 1221-33 (10th Cir. 1996) (overturning, on the basis of 1994 Supreme Court opinion, jury verdict rendered at trial in 1988 for case filed in 1973); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1443-49 (11th Cir. 1997) (reversing $81.3 million jury verdict after nearly 7 years of litigation).

Thus, continued litigation presented great risk and uncertainty.  Conversely, the Settlement provides a gross recovery certain of $15 million in cash, less the attorneys' fees, litigation expenses, administration costs, and Lead Plaintiff's award that the Court may approve.  The substantial and certain Settlement reached in this Action, compared to the significant complexity, delay, expense, and uncertainty of attempting to litigate to trial, weighs heavily in favor of the Settlement.  *In re Sturm*, No. 3:09cv1293 (VLB), 2012 U.S. Dist. LEXIS 116930, at *13-14 (D. Conn. Aug. 20, 2012) (finding complexity, expense, and duration of litigation supported settlement approval in securities-fraud class action); *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 U.S. Dist. LEXIS 17090, at *10-11 (S.D.N.Y. Sept. 26, 2003) (same).

### 2.      The Class Reaction Supports Final Approval

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy[.]"  *Bear Stearns*, 909 F. Supp. 2d at 266; *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *21 (S.D.N.Y. Nov. 7, 2007) (same); *see also Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at *15-16 (finding the Settlement Class's reaction to the Settlement is a significant factor for the court to weigh when considering its adequacy).  When there are no objectors, as is the case here, the

12

court can view this as indicative of the adequacy of the settlement.  *See Wal-Mart*, 396 F.3d at

118; *Guevoura*, 2019 U.S. Dist. LEXIS 218116, at *21 ("[T]he absence of objectors may itself be

taken as evidencing the fairness of a settlement." (quoting *Paine Webber*, 171 F.R.D. at 126)); *In

re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 U.S. Dist. LEXIS 17588, at *36 (S.D.N.Y.

Apr. 6, 2006) (finding that the "small number of objections . . . strongly favor the Settlement").

        The Settlement Class is overwhelmingly in favor of the Settlement.  Summary Notice was

published on January 6 and 10, 2020, and 170,735 Notice Packets have been mailed to potential

Class Members, brokers and nominee holders.  (Ewashko Decl., ¶¶ 2-13, Ex. B.)  The Notice

contains a description of the Action, the Settlement, and information about Settlement Class

Members' right to participate in the Settlement by submitting Proofs of Claim; to object to the

Settlement, the Plan of Allocation, and/or the Fee and Expense Application; or to request exclusion

from the Settlement Class.  *Id.*, Ex. A (Notice Packet).  As of the time of this filing, not a single

Settlement Class Member has objected to the Settlement, and only three potential Settlement Class

Members have requested exclusion from the Settlement Class.  (Lieberman Decl. ¶ 59.)

        The Settlement Class's favorable reaction supports approving the Settlement.  *See

Guevoura*, 2019 U.S. Dist. LEXIS 218116, at *21 (holding that "[t]he absence of negative

feedback from Class Members . . . strongly supports approval of the Settlement"); *Bear Stearns*,

909 F. Supp. 2d at 267 (holding that the low rate of exclusion and objection "weighs strongly in

favor of approval"); *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *36 (same).

        **3.      Lead Plaintiff Had Sufficient Command of the Case's Merits to Enter
                the Settlement**

        "There is no precise formula for what constitutes sufficient evidence to enable the court to

analyze intelligently the contested questions of fact.  It is clear that the court need not possess

evidence to decide the merits of the issue, because the compromise is proposed in order to avoid

further litigation . . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45 (4th ed. 2002). As a result, courts regularly approve settlements where, as here, Lead Counsel has "engaged in sufficient investigation of the facts," even without formal discovery. *Am. Bank*, 127 F. Supp. 2d at 425-26; *see also Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN), 2019 U.S. Dist. LEXIS 15714, at *20-21 (S.D.N.Y. Jan. 31, 2019) (approving final settlement where case "settled swiftly"); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (finding formal discovery unnecessary where the parties "engaged in sufficient investigation of the facts"); *van Oss v. N.Y. State*, No. 10 Civ. 7524 (SAS), 2012 U.S. Dist. LEXIS 91684, at *4 (S.D.N.Y. June 26, 2012) (holding that "although there has been no formal discovery, plaintiffs' counsel has done an adequate factual investigation").[6]

For this reason, courts have commended class counsel for recognizing when—as is the case here—a prompt resolution is in the best interest of the class. *See, e.g.*, *In re Sony SXRD Rear Projection TV Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 U.S. Dist. LEXIS 36093, at *19-21 (S.D.N.Y. May 1, 2008); *Veeco*, 2007 U.S. Dist. LEXIS 85629, at *22-23 ("[T]he parties need not have engaged in full discovery."); *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *36-37 ("Courts have approved settlements at all stages of the proceedings. The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case[.]").

The proceedings here had sufficiently advanced to provide Lead Plaintiff with a thorough

---

[6] *See also In re Nissan Radiator*, 2013 U.S. Dist. LEXIS 116720, at *13-14 (S.D.N.Y. May 30, 2013) (noting that "although settlement was reached before extensive merits discovery, plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (class counsel's investigation and research, absent extensive discovery, supported approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (holding "formal discovery is not [] necessary" where the parties have "sufficient information to make an informed decision").

understanding of the strengths and weaknesses of her claims. Lead Plaintiff, through Lead Counsel, conducted an exhaustive analysis of public documents, as well as confidential witness interviews and consultation with damages and accounting experts, prior to filing the Complaint. The parties then exchanged Motion to Dismiss Pre-Motion Letters, and participated in a Court hearing on those letters, in which they argued the strengths of their respective arguments. Thereafter, the parties entered mediation before an experienced mediator.  During the mediation process, the parties retained experts and drafted extensive mediation statements, which illuminated the relative strengths and weaknesses of the parties' positions.

The parties also agreed to a process of informal discovery intended to allow Lead Counsel to conduct due diligence and confirm in good faith that the proposed Settlement is fair, reasonable, and adequate. To that end, the parties negotiated and agreed on the scope of Defendants' confirmatory discovery.  On October 30, 2019, Ubiquiti produced 15,766 pages of documents to Lead Plaintiff on a confidential basis for confirmatory discovery.  This was the document production that Ubiquiti made in response to the SEC's February 2018 requests that are referenced in the Complaint and was therefore a targeted set of documents that are highly relevant to Lead Plaintiff's allegations.  As part of its document review, Lead Counsel prepared a detailed review template to be implemented by a team of attorney reviewers staffed by Lead Counsel.  This team reviewed and analyzed the documents in a carefully organized process, including the drafting of substantive memoranda of key factual issues in the litigation.  The confirmatory discovery team also researched and analyzed other available information that is relevant to the allegations in the Complaint as those issues have developed over the course of the Action. The review team coordinated its review via frequent team meetings led by the team leader and one-on-one follow-up discussions of their findings and work product.  (*See* Lieberman Decl. ¶¶ 29, 41-45).

For these reasons, and those detailed in Section IV.A., *supra*, even absent formal discovery, the parties and counsel possessed sufficient information on the merits of the claims to enter the Settlement. Courts regularly grant final approval of class action settlements when the litigation is at the motion-to-dismiss stage and where formal discovery has not commenced because of the PSLRA stay. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370, 374 (S.D.N.Y. 2002) (granting final approval of settlement while motions to dismiss were pending); *In re iDreamSky Tech. Sec. Litig.*, No. 1:15-cv-2514 (JPO), 2018 U.S. Dist. LEXIS 232237, at *7 (S.D.N.Y. Apr. 6, 2018) (granting final approval prior to formal discovery); *P. Van Hove BVBA v. Universal Travel Grp.*, No. 11-cv-2164, 2017 U.S. Dist. LEXIS 97909, at *3-8 (D.N.J. June 26, 2017) (granting final approval while motion to dismiss was pending); *Schuler v. Meds. Co.*, No. 14-1149 (CCC), 2016 U.S. Dist. LEXIS 82344, at *3-4, *33-34 (D.N.J. June 23, 2016) (same).

This Action was even further developed than in the common scenario where a motion to dismiss is pending, because the Court informed the parties, based on their Pre-Motion to Dismiss Letters, that it was not inclined to dismiss the Complaint. That guidance from the Court informed Lead Plaintiff's settlement position. (Lieberman Decl. ¶ 26).

### 4.    There Are Substantial Risks of Establishing Liability and Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *39 (same). In other words, "[i]n assessing the Settlement, the

Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, at *17 (S.D.N.Y. June 7, 2011) (quoting *Maley*, 186 F. Supp. 2d at 364). Courts "approve settlements where plaintiffs would have faced significant legal and factual obstacles." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 37 (E.D.N.Y. 2019).

Here, despite Lead Counsel's confidence, there are significant risks to proving liability, loss causation, and damages. And even if Lead Plaintiff prevails at trial, a jury verdict could be undone because of these potential difficulties. *See, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (affirming district court's grant of judgment as a matter of law against plaintiff for failure to prove loss causation after jury verdict partially in favor of plaintiff).

If the Settlement were not finally approved, Lead Plaintiff would have to defend against a potential motion to dismiss, which is subject to the heightened risk from the application of both Rule 9(b) and the PSLRA. Even though the Court indicated that it is not inclined to grant Defendants' proposed motion to dismiss in its entirety, Lead Plaintiff would still need to defend against Defendants' planned motion in order to ensure that the full set of claims in the Complaint can proceed. If Lead Plaintiff was successful in doing so, she would then have to survive summary judgment and establish falsity, materiality, scienter, and the timeliness of her claims to a jury's satisfaction. In particular, Lead Plaintiff would need to prove the materiality of Defendants' misstatement of the number of users in its Ubiquiti Community and the falsity of Defendants' other alleged misstatements—including statements concerning Ubiquiti's "disruptive business model," internal controls, accounting practices, and financial forecasts for the FrontRow camera—that Defendants argued in their Pre-Motion Letters were not false or were mere puffery. (Dkt. No 32).

Moreover, proving scienter for all of these alleged misstatements is notoriously difficult and uncertain.  *See Am. Bank*, 127 F. Supp. 2d at 425-26; *Sturm*, 2012 U.S. Dist. LEXIS 116930, at *17.  Defendants made clear that they would strongly contest this issue.  (Dkt. No. 36).

Furthermore, to establish damages, Lead Plaintiff must prove both (i) "transaction causation" under the fraud-on-the-market theory, which requires that "the price of a publicly traded share reflects a material misrepresentation," and (ii) "loss causation," which requires "a causal connection between the material misrepresentation and the loss."  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42, 345-46 (2005).  Establishing loss-causation is a "complicated and uncertain process, typically involving conflicting expert opinion[s]."  *Glob. Crossing*, 225 F.R.D. at 459; *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 228-29, 242 (S.D.N.Y. 2009).  The inevitable "battle of the experts" alone poses significant risk, especially in a jury deliberation.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *54 (S.D.N.Y. Nov. 5, 2010).  Also, even assuming Lead Plaintiff could prove loss causation, Defendants contested the total amount that proposed Class Members were actually harmed by.  (Lieberman Decl. ¶ 49).  This argument posed another risk to the amount of damages that Lead Plaintiff could recover on behalf of the proposed Class.

These daunting risks of establishing liability and damages favor final approval.  *See, e.g.*, *Pantelyat*, 2019 U.S. Dist. LEXIS 15714, at *21 (finding "[i]mpediments standing between the class and recovery includ[ing] the previously filed motion to dismiss; a possible motion for summary judgment; a class certification briefing process; and appeal of class certification" weighed in favor of settlement); *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409 (DJS), 2011 U.S. Dist. LEXIS 7066, at *11-12 (D. Conn. Jan. 25, 2011) (settlement supported by the fact that plaintiffs would be challenged on existence of disclosure duty, scienter, loss causation, and extent

of damages); *In re Priceline.com, Inc.*, 2007 U.S. Dist. LEXIS 52538, at *10-11 (D. Conn. July 19, 2007) (holding risks of proving liability supported settlement).

   **5.     The Risks of Maintaining Class Action Status Through Trial**

   While certification of securities class actions remains the norm, it is by no means automatic.  *See, e.g.*, *Youngers v. Virtus Inv. Partners Inc.*, No. 15cv8262, 2017 U.S. Dist. LEXIS 73555, at *8 (S.D.N.Y. May 15, 2017) (denying motion for certification of a class alleging securities fraud "because individual issues of reliance will predominate"); *Steginsky v. Xcelera, Inc.*, No. 3:12-cv-188 (SRU), 2015 U.S. Dist. LEXIS 28733, at *31 (D. Conn. Mar. 10, 2015) (denying motion for certification of a class alleging securities fraud on standing grounds); *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, 11 Civ. 4209 (KBF), 2013 U.S. Dist. LEXIS 155136, at *71-72 (S.D.N.Y. Oct. 29, 2013) (denying motion for class certification of class of U.S. purchasers because "individualized questions as to the named plaintiffs threaten to predominate"); *George v. China Auto. Sys., Inc.*, 11 Civ. 7533 (KBF), 2013 U.S. Dist. LEXIS 93698 (S.D.N.Y. July 3, 2013) (denying motion for class certification in putative securities class action).

   To attain class certification, Lead Plaintiff must show that common issues predominate over individual ones.  If not for Defendants' consent to certification of the Settlement Class, Lead Plaintiff would have to meet her burden by showing that Ubiquiti's securities traded in an efficient market, entitling purchasers to the presumption of reliance on Defendants' materially false statements.  Under *Halliburton*, 573 U.S. 258, Defendants are permitted to rebut the presumption of reliance by proving the absence of price impact from the alleged misstatements, thereby defeating class certification.  The law governing certification of securities class actions has been in constant flux, as evidenced by the *Halliburton* decision and the uncertainty it has created.  Thus, without a settlement, even assuming the evolving law does not change further, the Settlement Class

risked that certification would not be granted.  *See Brown v. China Integrated Energy Inc.*, 2014 U.S. Dist. LEXIS 117764, at *9-11, *25-28 (C.D. Cal. Aug. 4, 2014) (denying class certification under *Halliburton* where plaintiffs failed to invoke "fraud-on-the-market" theory of reliance).

### 6. The Ability of Defendants to Withstand a Greater Judgment

Even if a judgment were a burden that Ubiquiti could bear, "the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair." *AOL Time Warner*, 2006 U.S. Dist. LEXIS 17588, at *42 (citing *D'Amato*, 236 F.3d at 86).  The Court must weigh this factor "in conjunction with all of the *Grinnell* factors; most notably the risk of the class prevailing and the reasonableness of the settlement fund." *Id.* at *42.  Thus, the Settlement of $15 million in cash plainly represents a fair compromise between the parties, and it should be finally approved.

### 7. The Settlement Amount is Within the Range of Reasonableness

Courts typically analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at 463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Flag*, 2010 U.S. Dist. LEXIS 119702, at *57.  A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269.  Instead, the Second Circuit has held that "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

The Settlement provides for a recovery of $15 million in cash, before fees and expenses.  This is an immediate benefit to the Settlement Class and is well within the range of reasonableness,

particularly in light of the possible recovery and the substantial risks presented by the Action. Lead Plaintiff's consultation with her expert indicated that, based on the Complaint's allegations, class-wide damages ranged from approximately $184 - $100 million, and were likely closest to the midpoint of that range.[7]   Using Lead Plaintiff's estimate, the Settlement returns approximately 11% of estimated damages based on that analysis.  Moreover, the proper damages model was highly contested by the parties to a greater degree than is usually the case in securities class actions. The Settlement therefore could represent an even higher percentage of total possible damages than it does under Lead Plaintiff's estimate.   (Lieberman Decl. ¶¶ 46-49).

This recovery is also very favorable to the Class because it is well above the median settlement for similar securities class actions. *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019), at 35 (Fig. 27), 36 (Fig. 28) (showing the median settlement value in securities class actions in 2018 was just 2.6% of estimated damages, and for cases from 1996 to 2018 with NERA-defined losses from $100-199 million was only 3.1%);[8] Cornerstone Research, *Securities Class Action Settlements – 2018 Review and Analysis* (2019), at 6 (Fig. 5) (showing that from 2009 to 2017, the median settlement in securities class actions with simplified tiered damages ranging from $75-149 million and $150-249 million was approximately 5% and 4% of total damages, respectively; median in 2018 for these ranges was approximately 4.9% and 9.4%; from 2009 to 2017 the median was 5.1%, and in 2018 the median was 6%, for all securities class actions).[9]

---

[7] By not opposing this motion, Defendants are not expressing agreement with Lead Plaintiff's damage calculation.

[8] *See* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_012819_Final.pdf.

[9] *See* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis.pdf.

Courts regularly approve securities class action settlements where the settlement amount is as—or even less—substantial as the 11% of total estimated damages that Lead Plaintiff has achieved here.  *See, e.g., Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at \*27 (approving settlement with "recovery in the range of approximately 9.2% to 21% of estimated damages"); *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 954 F. Supp. 2d 276, 280 (S.D.N.Y. 2013) (approving settlement for 10% of plaintiff's estimated damages); *In re China Sunergy Sec. Litig*, No. 07 Civ. 7895 (DAB), 2011 U.S. Dist. LEXIS 53007, at \*15 (S.D.N.Y. May 13, 2011) (finding "average settlement amounts in securities fraud class actions . . . over the past decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483 n.130 (S.D.N.Y. 2009) (citing law review article finding "the ratio of securities class action settlements to investors' economic losses has ranged over recent years between two and three percent"); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 590-91 (S.D.N.Y. 1992) (approving settlement of "a bit more than 48 cents per share" out of potential recovery of $30 per share); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (citing studies that show the average securities-fraud class action settlement since 1995 yielded recovery between 5.5%  to 6.2% of estimated losses); *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.").

Settlements in and below this range are particularly appropriate at the motion to dismiss stage when defendants rely on their arguments for dismissal.  *See, e.g., Universal Travel*, 2017 U.S. Dist. LEXIS 97909, at \*3-8 (granting final approval of settlement while motion to dismiss was pending for 10% of estimated damages); *Schuler*, 2016 U.S. Dist. LEXIS 82344, at \*23-24 (granting final approval of settlement while motion to dismiss was pending for 4% of estimated

recoverable damages); *Taft*, 2007 U.S. Dist. LEXIS 9144, at *21-22 (granting final approval while motion to dismiss was pending and rejecting an objection that the settlement constituted only a small fraction of the total decline in value).  Lead Plaintiff and the Settlement Class here also had the benefit of the Court's indication prior to the mediation that the Court was not inclined to grant Defendants' proposed motion to dismiss.  (Lieberman Decl. ¶¶ 24, 26).

## V.   THE PLAN OF ALLOCATION SHOULD BE APPROVED

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate. When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. Such a reasonable plan may consider the relative strength and values of different categories of claims."  *In re IMAX Secs. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012) (alteration and citations omitted).  Pro-rata distributions are regularly "determined to be fair, adequate, and reasonable."  *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *42 (collecting cases).

The proposed Plan of Allocation, developed by Counsel in consultation with a damages expert, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Proof of Claim.  (Lieberman Decl. ¶¶ 60-73.)  A recognized-loss amount will be calculated for each purchase or acquisition of Ubiquiti Securities during the Settlement Class Period listed on the Proof of Claim and for which adequate documentation is provided.  *Id.*  The Net Settlement Fund is allocated to the Ubiquiti Securities that the Settlement covers based on the proportionate trading volume for these securities during the Settlement Class Period.  *Id.*  In addition, the calculation of Recognized Loss amounts is based on the difference between the amount of estimated alleged artificial inflation in Ubiquiti Securities on the purchase date and the amount of estimated alleged artificial inflation on the sale date.  *Id.* The sum of the recognized-loss amounts for all of a Claimant's purchases during the Settlement

Class Period is the Claimant's Recognized Claim. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the size of their Recognized Claims. *Id.*

Counsel submits that the Plan of Allocation fairly and rationally allocates the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Ubiquiti Securities attributable to the conduct alleged. Moreover, the Plan of Allocation is set forth in the Notice, and to date no objections to the Plan of Allocation have been received from any Settlement Class Members. *Id.* ¶ 73.

Accordingly, for all of the reasons set forth herein, the Plan of Allocation is fair and reasonable and should be granted final approval for the purpose of administering the Settlement.

## VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Preliminary Approval Order certified the Settlement Class for settlement purposes under Rules 23(a) and (b)(3). *See* Preliminary Approval Order ¶¶ 1-3. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval (Dkt. No. 38), Lead Plaintiff respectfully requests that the Court affirm its certification in the Preliminary Approval Order of the Settlement Class under Rules 23(a) and (b)(3).

## VII.   NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). Notice must be the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §§ 77z-1(a)(7), 78u-4(a)(7), including (i) an explanation of the Action and

claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the Parties' reasons for proposing the Settlement; (vi) the fees and expenses sought by Counsel, administrative costs, and the award to Lead Plaintiff; (vii) the rights of Settlement Class Members, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Settlement Class Member to examine the Court records; (x) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (xi) a statement of the binding effect of a judgment on Settlement Class Members.  (Lieberman Decl. ¶ 57).

The Notice program was carried out by JND, a third-party claims administrator nationally recognized for notice and claims administration, under the supervision of Lead Counsel.  (Ewashko Decl. ¶¶ 1-12.)  In accordance with the Court's order, as of February 12, 2020, JND distributed 170,735 Notice Packets to potential Settlement Class Members, brokers, and nominee holders.  *Id.* ¶ 12.  The Summary Notice was published once in the national edition of *Investor's Business Daily* on January 6, 2020 and once over the *GlobeNewswire* on January 10, 2020.  *Id.* ¶ 13, Ex. B.  The Notice and Stipulation are also available on JND's website. *Id.* ¶ 15. This combination of first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in appropriate, widely circulated publications, and posted on the Internet, was "the best notice . . . practicable under the circumstances."  Rule 23(c)(2)(B); *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 182-83 (S.D.N.Y. 2014).

## VIII.   CONCLUSION

Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and enter the proposed Final Judgment and Order of Dismissal with Prejudice.

Dated:  February 14, 2020

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (917) 463-1044
Email: jalieberman@pomlaw.com
      mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiff Xiya Qian and*
*the Settlement Class*

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 14, 2020, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
