**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE UBIQUITI NETWORKS, INC.<br>SECURITIES LITIGATION | No.  1:18-cv-01620 (VM)<br><br>Class Action |
| THIS DOCUMENT RELATES TO: ALL CASES | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED
MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES,
AND COMPENSATORY AWARD TO LEAD PLAINTIFF**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................... 1

II.   THE SETTLEMENT CLASS'S POSITIVE REACTION TO THE REQUESTS ............. 3

III.  LEAD COUNSEL'S EFFORTS ON BEHALF OF THE CLASS .................................... 3

IV.   LEAD COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE ........................... 6

     A.    The *Goldberger* Factors Demonstrate That the Fee is Fair and Reasonable .......... 8

          1.    Lead Counsel Devoted Significant Time and Labor to Prosecute
               the Action ................................................................................................. 8

          2.    This High-Stakes Securities Litigation Was Complex and Risky .............. 8

          3.    The Quality of the Legal Representation Supports the Requested Fee .... 10

          4.    The Requested Fee in Relation to the Settlement is Fair and
               Reasonable ............................................................................................. 12

          5.    Strong Public Policy Considerations Support the Fee Requested Here.... 15

     B.    The Lodestar/Multiplier Cross-Check Also Supports the Fee Request ................ 16

V.    LEAD COUNSEL'S EXPENSES WERE REASONABLY AND
     NECESSARILY INCURRED IN THE PROSECUTION OF THIS ACTION .............. 19

VI.   LEAD PLAINTIFF'S COMPENSATORY AWARD SHOULD BE PERMITTED....... 21

VII.  CONCLUSION.................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455, 478 (2013) ....................................................................................2, 15

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ..................................................................................10

*Arbuthnot v. Pierson*,
  607 F. App'x 73 (2d Cir. 2015) ...................................................................................7

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ..................................................................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
  472 U.S. 299 (1985) ............................................................................................2, 15

*Becher v. Long Island Lighting Co.*,
  64 F. Supp. 2d 174 (E.D.N.Y. 1999) ........................................................................14

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
  603 F.2d 263 (2d Cir. 1979) ......................................................................................10

*Blum v. Stenson*,
  465 U.S. 886 (1984) (Brennan, J., concurring) ........................................................13

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ....................................................................................................6

*Campos v. Goode*,
  No. 10 Civ. 0224 (DF), 2011 WL 9530385 (S.D.N.Y. Mar. 4, 2011) ....................20

*City of Detroit v. Grinnell*,
  495 F.2d 448 (2d Cir. 1974) ......................................................................................18

*City of Providence v. Aéropostale, Inc.*,
  No. 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9,
  2014), *aff'd sub nom* ...................................................................................7, 9, 12, 13

*Clark v. Ecolab Inc.*,
  No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11,
  2010) ..........................................................................................................................13

*Collins v. Olin Corp.*,
No. 03-cv-945 (CFD), 2010 U.S. Dist. LEXIS 39862 (D. Conn. Apr. 21, 2010) ................................................................................................................14

*Davis v. J.P. Morgan Chase & Co.*,
827 F. Supp. 2d 172 (W.D.N.Y. 2011) ...............................................................18

*Elkin v. Walter Inv. Mgmt. Corp.*,
No. 17-cv-02025 (JCJ), 2018 WL 8951073 (E.D. Pa. Dec. 17, 2018) ............14, 21

*Fleisher v. Phx. Life Ins. Co.*,
No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ...............................................................................................................7, 17

*Fogarazzo v. Lehman Bros.*,
No. 03 Civ. 5194 (SAS), 2011 U.S. Dist. LEXIS 17747 (S.D.N.Y. Feb. 23, 2011) ................................................................................................................13

*Gierlinger v. Gleason*,
160 F.3d 858 (2d Cir. 1998)..............................................................................7, 17

*Goldberger v. Integrated Resources, Inc.*,
209 F.3d 43 (2d Cir. 2000)........................................................................ *passim*

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *26-27 (S.D.N.Y. Oct. 19, 2005) ...................................................................................16, 21, 22

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...........................................................................10

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529 (LMM), 2006 U.S. Dist. LEXIS 84621 (S.D.N.Y. Nov. 16, 2006), *aff'd*, 272 F. App'x 9 (2d Cir. 2008) ........................................................11

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012).................................................................20

*In re Blech Sec. Litig.*,
No. 94 Civ. 7696 (RWS), 2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Nov. 27, 2002) ................................................................................................................14

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)................................................................18, 21

*In re Corel Corp. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) ..................................................................14

*In re Deutsche Telekom AG Sec. Litig.*,
  No. 00-cv-9475 (NRB), 2005 U.S. Dist. LEXIS 45798 (S.D.N.Y. June 9,
  2005) ....................................................................................................................19

*In re E.W. Blanch Holdings, Inc. Sec. Litig.*,
  No. 01-258, 2003 U.S. Dist. LEXIS 26402 (D. Minn. June 16, 2003)...................................14

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005)...................................................................................18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015),
  *aff'd*, 674 F. App'x 37 (2d Cir. 2016)...................................................................................13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y.
  Nov. 5, 2010) .........................................................................................................................6

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .........................................................................................13

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................7, 20

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10,
  2005) ....................................................................................................................................14

*In re iDreamSky Tech. Sec. Litig.*,
  No. 1:15-cv-2514 (JPO), 2018 U.S. Dist. LEXIS 232237 (S.D.N.Y. Apr. 6,
  2018) ....................................................................................................................................14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)...................................................................................19

*In re Initial Public Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009)...................................................................................13

*In re Interpublic Sec. Litig.*,
  No. 02-cv-6527 (DLC), 2004 U.S. Dist. LEXIS 21429 (S.D.N.Y. Oct. 26,
  2004) ....................................................................................................................................19

*In re JDS Uniphase Corp. Securities Litigation*,
  No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ..........................10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953 (S.D.N.Y. Dec. 23,
  2009) ....................................................................................................................................22

*In re Med. X-Ray Film Antitrust Litig.*,
    CV-93-5904, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998)...................................14

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ...............................................................................9

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) .............................................................................19

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ............................................................ *passim*

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-cv-02237 (JSR), 2008 U.S. Dist. LEXIS 122149 (S.D.N.Y. Nov. 24,
    2008) ...........................................................................................................................22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................................18

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016), *aff'd in part, vacated in part on other
    grounds,* 862 F.3d 250 (2d Cir. 2017) ......................................................................4

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................................................................14

*In re Sturm, Ruger, & Co. Sec. Litig.*,
    No. 3:09cv1293 (VLB), 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20,
    2012) .....................................................................................................................9, 12

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................18

*In re Top Tankers, Inc. Sec. Litig.*,
    No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106 (S.D.N.Y. July 31,
    2008) ...........................................................................................................................22

*In re Ubiquiti Networks, Inc. Securities Litigation*,
    No. 1:18-cv-01620-VM (S.D.N.Y.)..............................................................................1

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ............................................................................16

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
    No. 03-CV-8284 (RWS) (S.D.N.Y. Dec. 6, 2006) (Lieberman Decl., Ex. 3) ........13

*In re Veeco Instruments Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *11 (S.D.N.Y.
Nov. 7, 2007) ..............................................................................................................7

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ......................................................................6

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)..................10

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005).........................................................6, 16, 18

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005).....................................................................22

*Khait v. Whirlpool Corp.*,
No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) .......14

*Kurzweil v. Philip Morris Cos.*,
No. 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378 (S.D.N.Y. Nov. 24,
1999) ........................................................................................................................19

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748 (2d Cir. 1998)......................................................................................7

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................. *passim*

*McKenzie Constr., Inc. v. Maynard*,
758 F.2d 97 (3d Cir. 1985).....................................................................................10

*Missouri v. Jenkins*,
491 U.S. 274 (1989)................................................................................................12

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
No. 06 Civ 4270 (PAC), 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31,
2009) ........................................................................................................................13

*P. Van Hove BVBA v. Universal Travel Grp., Inc.*,
No. 11-cv-2164, 2017 U.S. Dist. LEXIS 97909 (D.N.J. June 26, 2017)................14

*Park v. Thomson Corp.*,
No. 05 Civ. 2931 (WHP), 2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. Oct. 22,
2008) ........................................................................................................................22

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997) .........................................................................19

vi

*Savoie v. Merchs. Bank*,
  166 F.3d 456 (2d Cir. 1999).................................................................................7

*Schuler v. Meds. Co.*,
  No. 14-1149 (CCC), 2016 U.S. Dist. LEXIS 82344 (D.N.J. June 23, 2016) ...................14, 18

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 Civ. 8331 (CM), 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 21,
  2014) .................................................................................................19

*Silverberg v. People's Bank*,
  23 F. App'x 46 (2d Cir. 2001) .....................................................................14

*Silverstein v. AllianceBernstein LP*,
  No. 09-CV-5904 (JPO), 2013 U.S. Dist. LEXIS 179734 (S.D.N.Y. Dec. 20,
  2013) .................................................................................................12

*Stefaniak v. HSBC Bank USA, N.A.*,
  No. 05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, at *9-10 (W.D.N.Y. June
  28, 2008) ...........................................................................................14

*Taft v. Ackermans*,
  No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *21-22 (S.D.N.Y.
  Jan. 31, 2007) .....................................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).............................................................................2, 15

*Wal-Mart Stores, Inc v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)................................................................6, 7, 15, 19

# I.    INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure,[1] Lead Plaintiff Xiya Qian ("Lead Plaintiff"), individually and on behalf of all Settlement Class Members, presents for the Court's approval requests for (i) legal fees amounting to 33.33% of the Settlement Amount of fifteen million U.S. dollars ($15,000,000) (or five million U.S. dollars ($5,000,000)), plus interest, (ii) reimbursement of $91,267.89 in out-of-pocket litigation expenses, and (iii) an award to Lead Plaintiff of five thousand U.S. dollars ($5,000).

The factors articulated in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47, 50 (2d Cir. 2000), support the award of attorneys' fees amounting to 33.33%, *i.e.*, one-third, of the Settlement Amount because this award is fair and reasonable.  The result of Lead Counsel's efforts —under Lead Plaintiff's supervision—speaks for itself: despite facing a formidable legal defense, Lead Counsel secured a $15 million gross recovery for the Settlement Class, which, compared to the damages range formulated by Lead Plaintiff's damages expert, represents an excellent result, returning approximately 11% of estimated damages.  The requested fee award is fair compensation for these exceptional efforts and is well-within the range of fees awarded by courts within the Second Circuit and this District.[2]

As described more fully below, Lead Counsel's diligence and substantial efforts during the approximately two years that the above-captioned action ("Action") has been pending generated a total lodestar value of $1,614,817.25, the 3.10 multiplier of which, if the Court were to award the requested fees, is consistent with—if not lower than—those awarded in courts throughout the

---

[1] Unless otherwise indicated, all capitalized terms herein have the meanings set forth in the Stipulation of Settlement, dated December 2, 2019 (Docket ("Dkt.") No. 39-1) ("Stipulation"). "Dkt. No." references herein are to the *In re Ubiquiti Networks, Inc. Securities Litigation*, No. 1:18-cv-01620-VM (S.D.N.Y.), docket.
[2] *See infra* Section IV.A.4.

country.  The complexity and risks of this high-stakes securities-fraud class action, which Lead Counsel undertook on a contingency-fee basis, also amply support the requested fee.

The $91,267.89 in expenses incurred were reasonable and necessary to prosecute the Action.  Significantly, this amount is substantially *lower* than the $275,000.00 figure that was reported to Settlement Class Members in the mailed Notice of Proposed Settlement of Class Action and Proof of Claim and Release Form (the "Notice Packet") as the potential amount of expenses.

In addition, the attentiveness, active involvement, and care with which Lead Plaintiff performed her duties, the tasks that she performed, the manner in which she monitored the Action, and her oversight of the settlement process all justify the relatively modest request of a $5,000.00 compensatory award to her for her time and service to the Settlement Class.

The services of Lead Plaintiff and Lead Counsel exemplify the considerations that the Supreme Court has articulated in emphasizing the strong policy for encouraging private securities-fraud class actions.  *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).  The strong policy supporting private enforcement of securities laws through fair and reasonable fee awards, such as that requested here, has also been emphasized by courts in this District.  *See, e.g.*, *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) ("Courts have recognized the importance that fair and reasonable fee awards have in encouraging private attorneys to prosecute class actions on a contingent basis pursuant to the federal securities laws on behalf of those who otherwise could not afford to prosecute.").[3]

The fairness and reasonableness of Lead Plaintiff's and Lead Counsel's requests, to date,

---

[3] All internal citations and quotations are omitted herein, unless stated otherwise.

is supported by the fact that *zero* objections and only three requests for exclusion have been received from potential Settlement Class Members, despite that 170,735 Notices have been mailed to Settlement Class Members.

In light of all these considerations, particularly the favorable reaction of the Settlement Class, Lead Plaintiff respectfully submits that these requests should be approved.

## II.    THE SETTLEMENT CLASS'S POSITIVE REACTION TO THE REQUESTS

The Claims Administrator published the Summary Notice of Pendency and Proposed Settlement of Class Action and Final Approval Hearing ("Summary Notice") in the national edition of *Investor's Business Daily* on January 6, 2020, and once over the *GlobeNewswire* on January 10, 2020, and mailed 170,735 Notices worldwide.  (*See* Declaration of Jeremy A. Lieberman in Support of Lead Plaintiff's (1) Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and (2) Unopposed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff ("Lieberman Decl."), Ex. 1 (Declaration of Jack Ewashko Regarding: (A) Mailing of the Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date ("Ewashko Decl.")) ¶¶ 12-13 and Ex. B.)  Notably, the mailed Notice stated that Lead Counsel could seek up to 33.33% of the Settlement fund, up to $275,000.00 in litigation expenses (substantially more than is actually being sought), and up to $7,500.00 as an incentive award to Lead Plaintiff (also more than Lead Plaintiff seeks).  (*See id.*, Ex. A (Notice Packet) at 2.)  Despite these robust notice efforts, to date, *zero* Settlement Class Members have objected and only three have requested exclusion.  (*Id.*  ¶¶ 16-17.)

## III.    LEAD COUNSEL'S EFFORTS ON BEHALF OF THE CLASS

Lead Counsel, Pomerantz LLP ("Pomerantz," the "Firm," or "Lead Counsel"), Pomerantz is a nationally-recognized class-action firm with extensive experience litigating and negotiating

settlements as lead or co-Counsel in complex securities class actions.  (*See* Lieberman Decl., ¶ 80, Ex. 2, ¶ 7, Ex. C).  Pomerantz has been appointed lead or co-lead counsel in many complex securities class actions and has recovered substantial sums for clients and class members.  *Id.* Pomerantz has prosecuted hundreds of such cases to successful resolution in its 80-year history and obtained billions of dollars in compensation for class members.  *Id.*  Courts routinely acknowledge Pomerantz's securities litigation strengths.  *See, e.g.*, *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016) ("[O]n the basis not only of [the Firm's] prior experience but also the Court's observation of its advocacy over the many months since it was appointed lead counsel, the Court concludes that Pomerantz, the proposed class counsel, is qualified, experienced and able to conduct the litigation."), *aff'd in part, vacated in part on other grounds,* 862 F.3d 250 (2d Cir. 2017).

As Lead Counsel, Pomerantz was responsible for the conduct and oversight of this Action, which it zealously prosecuted on behalf of Lead Plaintiff and the Settlement Class.[4]  *See* Lieberman Decl., ¶ 79.  Pomerantz led all aspects of strategic analysis and case investigation, including, *inter alia*, its:

a.  Preparing briefing in connection with the motion for appointment of lead plaintiff;

b.  Retaining and working with investigators to locate and interview numerous confidential witnesses, who were former employees of Ubiquiti with knowledge of the events relevant to the allegations in the Complaint;

c.  Reviewing and analyzing Ubiquiti's Settlement Class Period and pre- and post-Settlement Class Period SEC filings, annual reports, press releases, quarterly earnings calls, investment conference transcripts, and other public statements;

d.  Thoroughly researching the securities laws and intricacies of Ubiquiti's business and online community;

---

[4] Lead Plaintiff incorporates by reference the fuller background statement provided in Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds, filed contemporaneously herewith ("Final Approval Brief").

e.  Conducting all work with a damages expert, including retaining and consulting with the expert and analyzing and exchanging write-ups at various phases of the litigation and during the mediation and settlement process;

f.  Consulting with an accounting expert to analyze issues with respect to the accounting practices raised in the Complaint;

g.  Preparing the detailed Complaint, including drafting such complaint and performing all legal and factual analysis, and expert consultation;

h.  Preparing letter briefing in opposition to Defendants' proposed Motion to Dismiss the Complaint, which raised and evaluated numerous complex issues specific to the Action, and preparing for and participating in the telephonic hearing before the Court on these letters;

i.  Overseeing and conducting all mediation and settlement efforts, including, without limitation, drafting a mediation statement, participating in an all-day mediation session before mediator Jed D. Melnick of JAMS, making all presentations to the mediator, negotiating the settlement with counsel for Defendants, including the provision of informal discovery intended to allow Lead Counsel to confirm that the Settlement is fair, reasonable, and adequate, and drafting and revising all settlement-related documents and court papers;

j.  Engaging in confirmatory discovery to ensure that the Settlement is fair, reasonable, and adequate, including the review and analysis of 15,766 pages of documents produced by Ubiquiti, as well as other available evidence related to important issues that arose as the Action progressed, and the preparation of substantive memoranda on specific subject matters;

k.  Obtaining competing bids for claims-administration work related to the Settlement before selecting a competitive bidder to serve as Claims Administrator, and worked with the Claims Administrator to effectuate notice and oversee the administration process;

l.  Securing the services of the Escrow Agent;

m.  Preparing the motion papers and related documents necessary to obtain preliminary approval of the Settlement and provide notice of the Settlement to Settlement Class Members; and

n.  Preparing the motion papers and related documents necessary to obtain final approval of the Settlement.

*Id.*

Lead Counsel will also participate in the final-approval hearing on the Settlement and will continue to oversee administration of the Settlement.

## IV.    LEAD COUNSEL'S FEE REQUEST IS FAIR AND REASONABLE

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  "The rationale . . . is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47.  In addition to providing just compensation, awards of fair attorneys' fees from a common fund encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future misconduct of a similar nature.  *See, e.g.*, *id.* at 51 ("There is also commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest"); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702, at *68 (S.D.N.Y. Nov. 5, 2010) (finding fee awards "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore "discourage future misconduct of a similar nature").

The Second Circuit approves two ways to determine a fair and reasonable attorney's fee in common fund cases: the "percentage-of-recovery" and "lodestar/multiplier" methods.  *Wal-Mart*, 396 F.3d at 121; *Goldberger*, 209 F.3d at 50.  Under the percentage-of-recovery approach, which

is preferred in this District,[5] the Court sets some percentage of the gross recovery as a fee.  *See In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *11 (S.D.N.Y. Nov. 7, 2007).  The Second Circuit has explained that "[t]he trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121.  Under the lodestar method, a court first determines the lodestar (number of hours spent multiplied by appropriate current hourly rates), and then, if warranted, upwardly adjusts that number (awards a multiplier) to account for several factors, including the risks assumed by the lawyers and the extent of their success.  *See Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  Current hourly rates in place at the time of the fee application are used "within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *60-61 and n.14 (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)).

In *Goldberger*, the Second Circuit identified factors for courts to consider in evaluating fee requests, including the (1) time and labor expended by counsel; (2) magnitude, complexity, and risks of the litigation; (3) quality of representation; (4) requested fee in relation to the settlement; and (5) public policy considerations.  209 F.3d at 50.  An analysis of these factors demonstrates

---

[5] *See, e.g.*, *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 469 (S.D.N.Y. 2004) ("[I]n this District the great weight of authority supports basing common-fund awards on a percentage of the gross recovery."); *Fleisher v. Phx. Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 U.S. Dist. LEXIS 121574, at *49-50 (S.D.N.Y. Sept. 9, 2015) (collecting cases); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, at *32-33 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Moreover, the plain language of the Private Securities Litigation Reform Act of 1995 ("PSLRA") states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class.  *See* 15 U.S.C. § 78u-4(a)(6); 15 U.S.C. § 77z-1(a)(6).

that the fee request here is both reasonable and fair.  Through Lead Counsel's diligence and substantial efforts during the approximately two years that this Action has been pending, under Lead Plaintiff's supervision, the Settlement Class obtained a substantial recovery.  Lead Counsel thus respectfully requests that the Court grant its request for a 33.33% fee, which is fair and reasonable under both the percentage-of-recovery and lodestar/multiplier methods.  Lead Counsel intends to share part of any attorneys' fees awarded by the Court with other counsel in accordance with their level of contribution to the initiation, prosecution, and resolution of the Action, as provided for in Paragraph 7.2 of the Stipulation.

> **A.** **The *Goldberger* Factors Demonstrate That the Fee is Fair and Reasonable**
>
> > **1.** **Lead Counsel Devoted Significant Time and Labor to Prosecute the Action**

As discussed in greater detail in § IV.B., *infra*, Lead Counsel devoted significant time and labor to prosecute the Action, performing the multitude of tasks outlined in § III., *supra*.  As of the date of the filing of this motion, and excluding all work done in support of the fee application, Lead Counsel reasonably expended 3,166.85 total hours in prosecuting this Action, with nearly all of that total expended personally by Lead Counsel, for a total lodestar value of $1,614,817.25 at current billing rates normally charged for comparable litigation work.  (*See* Lieberman Decl., Ex. 2, ¶ 4, Ex. A (Lodestar Report)).

> > **2.** **This High-Stakes Securities Litigation Was Complex and Risky**

In the Second Circuit, "the risk of success" is "perhaps the foremost factor to be considered in determining" a reasonable award.  *Goldberger*, 209 F.3d at 54.  "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010).  Courts have repeatedly recognized that "[s]ecurities class actions such as this are notably difficult and

notoriously uncertain." *Flag*, 2010 U.S. Dist. LEXIS 119702, at \*78; *see also Maley*, 186 F. Supp. 2d at 372 (finding "[a] securities case such as this one, by its very nature, is a complex animal" because, *inter alia*, "plaintiffs faced substantial factual and legal hurdles in establishing their core allegations" and "faced issues on causation and damages"); *In re Sturm, Ruger, & Co. Sec. Litig.*, No. 3:09cv1293 (VLB), 2012 U.S. Dist. LEXIS 116930, at \*33-34 (D. Conn. Aug. 20, 2012) ("Had this case proceeded to trial, additional discovery and motion practice including motion of summary judgment would have doubtless prolonged and delayed the resolution of this case. . . .  Plaintiffs face substantial factual and legal hurdles to establish that Defendants made material misstatements and omissions[.]").  "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the [PLSRA]," *MetLife*, 689 F. Supp. 2d at 361, and by their nature, are complex and difficult, *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 173 (S.D.N.Y. 2007).

As discussed more fully in Sections IV.B.1. and IV.B.4. of Lead Plaintiff's Final Approval Brief, this securities-fraud class action fits the bill of complexity and risk regularly recognized by courts.  This factor supports the fairness and reasonableness of the fee.  *See Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at \*46 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request."); *Sturm*, 2012 U.S. Dist. LEXIS 116930, at \*34-35 (finding that litigation risk supported approval of attorneys' fees because attorneys took on securities class action on a contingent basis and there were risks for establishing liability and proving damages, such as challenges to falsity, materiality, and scienter).

In short, Lead Counsel made a substantial outlay of both time and money, all while facing the very real risk of recovering nothing.[6]

### 3.    The Quality of the Legal Representation Supports the Requested Fee

The result achieved and the quality of the services provided are important factors to be considered in determining the amount of reasonable attorneys' fees. *See Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745, 748 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). "[T]he quality of representation is best measured by results, and . . . such results may be calculated by comparing the extent of possible recovery with the amount of actual verdict or settlement." *Goldberger*, 209 F.3d at 55. "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 101-02 (3d Cir. 1985).

Despite substantial hurdles, including letter briefing on Defendants' anticipated motion to dismiss the Amended Complaint, Lead Counsel obtained a $15 million gross recovery for the Settlement Class.  Compared to the damages range formulated by Lead Plaintiff's damages consultant, this represents a very favorable result, returning approximately 11% of Lead Plaintiff's estimated damages.  Lieberman Decl. ¶¶ 46-50.  According to preeminent studies of securities-

---

[6] Despite a chance of later success against Defendants' near-certain motions for summary judgment, and in opposition to class certification, substantial risks would still persist, given that many securities cases have been lost at trial, on post-trial motions, or on appeal.  For example, in *In re JDS Uniphase Corp. Securities Litigation*, the jury issued a verdict in favor of defendants after five years of litigation. No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).  In *Hubbard v. BankAtlantic Bancorp, Inc.*, the jury issued a verdict on liability in favor of plaintiffs, but the Eleventh Circuit affirmed judgment as a matter of law against the plaintiffs for lack of proof of loss causation. 688 F.3d 713 (11th Cir. 2012).  In *Backman v. Polaroid Corp.*, the class won a $38 million jury verdict, and a motion for judgment *n.o.v.* was denied; however, on appeal, the judgment was reversed and the case dismissed, inflicting a total loss after ten years of active litigation. 910 F.2d 10 (1st Cir. 1990); *see also Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

fraud class-action settlements, this recovery is well above the median recovery. *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review* (NERA Jan. 29, 2019) ("NERA Report"), at 35 (Fig. 27), 36 (Fig. 28) (showing the median settlement value in securities class actions in 2018 was just 2.6% of estimated damages, and for cases between 1996-2018 with NERA-defined investor losses between $100-199 million was only 3.1%);[7] Cornerstone Research, *Securities Class Action Settlements – 2018 Review and Analysis* (2019) ("Cornerstone Report"), at 6 (Fig. 5) (showing that between 2009-2017, the median settlement in securities class actions with simplified tiered damages ranging between $75-149 million and $150-249 million was approximately 5% and 4%, respectively; the median settlement in 2018 for these ranges was approximately 4.9% and 9.4%, respectively; between 2009-2017, the median settlement was approximately 5.1% of simplified tiered damages for all securities class actions; and, in 2018, the median settlement was approximately 6% for all securities class actions); *see also* Final Approval Brief , Section IV.7.[8]

Additionally, the quality of Lead Counsel's performance is further evidenced by the fact that the Settlement was secured in the face of formidable opposing counsel, the defense firm Simpson Thacher & Bartlett LLP, which staffed this case with top-flight legal talent at all levels. *See, e.g.*, *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2006 U.S. Dist. LEXIS 84621, at *15 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd,* 272

---

[7] *See* https://www.nera.com/content/dam/nera/publications/2019/PUB_Year_End_Trends_ 012819_Final.pdf.
[8] *See* https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis.pdf.

F. App'x 9 (2d Cir. 2008); *Flag*, 2010 U.S. Dist. LEXIS 119702, at *83; *Warner Commc'ns*, 618 F. Supp. at 749.

Ultimately, Lead Counsel's skillful and diligent efforts investigating the claims in the Amended Complaint and pursuing those claims throughout the litigation process enabled Lead Plaintiff to obtain a settlement of this size and supports the requested fee.  *See Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at *47-49 (finding quality of firm specializing in complex litigation and securities class actions, which secured a substantial, immediate cash recovery in the face of formidable opposing counsel in a challenging case supported the requested fee); *Sturm*, 2012 U.S. Dist. LEXIS 116930, at *35-36 (finding that quality of representation and size of the settlement, 3.5% of plaintiff's maximum estimate of provable damages, supported approval of the fee).

The positive reaction by Settlement Class Members confirms the quality of Lead Counsel's representation.  Not a single potential Settlement Class Member has objected to the Settlement or the request for an award of attorney's fees or reimbursement of expenses, and only three individuals have requested exclusion.  Ewashko Decl. ¶¶ 16-17; *see also Silverstein v. AllianceBernstein LP*, No. 09-CV-5904 (JPO), 2013 U.S. Dist. LEXIS 179734, at *25 (S.D.N.Y. Dec. 20, 2013) ("No Class Member objected to Class Counsel's request for 33 1/3% of the fund, which also provides support for Class Counsel's fee request.").  That such a positive reaction followed the mailing of 170,735 Notices constitutes powerful support for the requested awards.

### 4. The Requested Fee in Relation to the Settlement is Fair and Reasonable

In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).  If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range

of 30% to 40% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903* (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).  On a percentage basis, the compensation requested here—33.33%, or one-third—is within the range of percentage fee awards within the Second Circuit.

Indeed, courts within this District have routinely awarded legal fees amounting to approximately one-third of settlement funds.  *See, e.g.*, *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 U.S. Dist. LEXIS 152668, at *29-30 (S.D.N.Y. Nov. 9, 2015) (awarding 33% of $26.5 million settlement), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *Aéropostale*, 2014 U.S. Dist. LEXIS 64517, at *60 (awarding 33% of $15 million settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164-65 (S.D.N.Y. 2011) (approving 33% fee); *Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 U.S. Dist. LEXIS 17747, at *2, 9-13 (S.D.N.Y. Feb. 23, 2011) (awarding one-third of $6.75 million settlement); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036, at *27-29, 31 (S.D.N.Y. May 11, 2010) (awarding fees of one-third of $6 million settlement); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding plaintiffs' counsel one-third of the settlement fund of over $510 million); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899, at *16-17 (S.D.N.Y. Mar. 31, 2009) (collecting cases awarding one-third of settlement and finding "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"); Order Awarding Attorneys' Fees & Reimbursement of Expenses at 2, *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 03-CV-8284 (RWS) (S.D.N.Y. Dec. 6, 2006) (Lieberman Decl., Ex. 3) (awarding 33.3% of $8 million settlement); *Maley*, 186 F. Supp. 2d at 370-74 (awarding 33 1/3% of

13

settlement fund valued at over $11.5 million); *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2002 U.S. Dist. LEXIS 23170, at *3-6 (S.D.N.Y. Nov. 27, 2002) (awarding one third of $2,795,000 settlement fund).[9]

Moreover, courts regularly award similar fees where such a favorable settlement is reached at the motion-to-dismiss stage. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 370 (awarding 33.3% of $11.5 million where settlement was reached while motions to dismiss were pending); *In re iDreamSky Tech. Sec. Litig.*, No. 1:15-cv-2514 (JPO), 2018 U.S. Dist. LEXIS 232237, at *7 (S.D.N.Y. Apr. 6, 2018) (awarding one-third of $4.15 million following decision on motion to dismiss, but prior to formal discovery); *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-cv-2164, 2017 U.S. Dist. LEXIS 97909, at *3-8 (D.N.J. June 26, 2017) (awarding one-third of $4.5 million settlement while motion to dismiss was pending); *Schuler v. Meds. Co.*, No. 14-1149 (CCC), 2016 U.S. Dist. LEXIS 82344, at *3-4, 25-29 (D.N.J. June 23, 2016) (awarding 33% of $4.25 million settlement while motion to dismiss was pending); *Elkin v. Walter Inv. Mgmt. Corp.*, No. 17-cv-

---

[9] The same is true in other courts. *See, e.g.*, *Silverberg v. People's Bank*, 23 F. App'x 46, 48 (2d Cir. 2001) (affirming award of attorneys' fees and expenses of nearly one-third of settlement fund); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *22 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding one-third fee of $7.8 million, which was "well within the range accepted by courts in this circuit"); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, at *9-10 (W.D.N.Y. June 28, 2008) (awarding 33% of fund, finding it "typical in class action settlements in the Second Circuit"); *Collins v. Olin Corp.*, No. 03-cv-945 (CFD), 2010 U.S. Dist. LEXIS 39862, at *24 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT (RCx), 2005 U.S. Dist. LEXIS 13555, at *63 (C.D. Cal. June 10, 2005) (awarding 33.3% of $27.78 million settlement); *In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (awarding 33.3% of $7 million settlement); *In re E.W. Blanch Holdings, Inc. Sec. Litig.*, No. 01-258 (JNE/JGL), 2003 U.S. Dist. LEXIS 26402, at *10 (D. Minn. June 16, 2003) (awarding 33.3% of $20 million settlement); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (noting that in a study of 289 settlements ranging from less than $1 million to $50 million, "the median [fee] turns out to be one-third"); *In re Med. X-Ray Film Antitrust Litig.*, CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *20 (E.D.N.Y. Aug. 7, 1998) (awarding 33 1/3 % of a roughly $40 million settlement fund as "well within the range accepted by courts in this circuit").

02025 (JCJ), 2018 WL 8951073, at *1 (E.D. Pa. Dec. 17, 2018) (awarding one-third of $2,950,000 settlement while motion to dismiss was pending); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *4, 27-33 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.2 million settlement while motion to dismiss was pending).

This approach gives Lead Plaintiff and Lead Counsel a "powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart*, 396 F.3d at 121.  Lead Plaintiff achieved even more success here than in cases where motions to dismiss are pending, because the Court indicated based on the parties' Motion to Dismiss Pre-Motion Letters that it was not inclined to dismiss the Amended Complaint.  That guidance from the Court informed Lead Plaintiff's settlement position.  (Lieberman Decl. ¶ 26).  In addition, Lead Counsel has conducted confirmatory discovery to ensure that the settlement is fair, reasonable, and adequate.  (*See* Final Approval Brief, Section IV.3).

### 5.    Strong Public Policy Considerations Support the Fee Requested Here

"Congress, the Executive Branch, and [the Supreme] Court . . . have recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission."  *Amgen*, 568 U.S. at 478 (quoting *Tellabs*, 551 U.S. at 313); *see also Bateman*, 472 U.S. at 310 (emphasizing that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").  The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits.  *See*

*Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).[10]

Courts in this District recognize the strong public policy in favor of attorneys' fee awards in order to encourage securities-fraud class actions.  For example, as the court in *Hicks v. Morgan Stanley & Co.* explained:

> Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices. Such actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class. Due to the dispersed, and relatively small, losses among a large pool of investors, the class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual investors to take the time and effort to initiate the action. To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a private attorney general is vital to the continued enforcement and effectiveness of the Securities Acts.

No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *26-27 (S.D.N.Y. Oct. 19, 2005); *see also WorldCom*, 388 F. Supp. 2d at 359 ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").  This factor therefore also weighs in favor of the Settlement.

### B.      The Lodestar/Multiplier Cross-Check Also Supports the Fee Request

To arrive at the lodestar, hours expended are multiplied by each attorney's respective

---

[10] *See also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance.  A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Warner Commc'ns*, 618 F. Supp. at 750-51 (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance").

hourly rate, as long as the rate is reasonable.  *See Savoie*, 166 F.3d at 460.  It is well-settled that the use of an attorney's current rate in place at the time of the fee application is proper, since such rates compensate for inflation, the loss of use of funds, and the delay in receiving payment.  *See, e.g.*, *Fleisher*, 2015 U.S. Dist. LEXIS 121574, at *60-61; *Gierlinger*, 160 F.3d at 882; *LeBlanc-Sternberg*, 143 F.3d at 764; *Jenkins*, 491 U.S. at 283-84.

    As detailed in Section III above, Lead Counsel expended significant time and resources to prosecute this Action to the point of Settlement.  As of February 13, 2020, Lead Counsel have altogether reasonably expended 3,166.85 total hours in prosecuting this Action—excluding hours spent preparing this fee application—for a total lodestar of $1,614,817.25 at current billing rates normally charged for comparable litigation work.[11]  (*See* Lieberman Decl., Ex. 2, ¶ 4, Ex. A (Lodestar Summary)).  These lodestar figures are based on hourly records created and maintained in the records of the Firm in the ordinary course of business, which upon the Court's request, can be submitted for *in camera* review (so as to protect confidentiality, privilege, or work product protection).

    Lead Counsel respectfully requests an upward adjustment of the above-reported aggregate lodestar through a reasonable 3.10 multiplier, which is calculated by dividing the requested fee of $5,000,000.00 (33.33% of $15,000,000.00) by the lodestar value of $1,614,817.25.  Lead Counsel worked on a wholly contingent-fee basis and has not received any compensation or reimbursements for its large expenditures of attorney and paralegal time or its significant cash outlays since this litigation began approximately two years ago.  As the Second Circuit has recognized, the risk of no compensation to lawyers who work on a contingency-fee arrangement

---

[11] Excludes work on motion seeking attorneys' fees, reimbursement of expenses, and awards to Plaintiffs.

is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, 209 F.3d 43; *see also MetLife*, 689 F. Supp. 2d at 361-62 (finding that the significant litigation risks supported the fee request, and stating that "[f]rom the outset, these actions were difficult, with no assurance that counsel would see any compensation for the time and resources they expended on behalf of the classes").

Equal or higher multipliers are often awarded in securities-fraud class actions or similar complex litigations in this Circuit. *See, e.g.*, *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding multiplier of 5.2 where "Defendants withdrew their motion to dismiss as the parties began to engage in mediation"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 448 (E.D.N.Y. 2014) (multiplier of 3.41 for $544.8 million in fees); *Maley*, 186 F. Supp. 2d at 370-71 (awarding multiplier of 4.65 and one-third of $11.5 million settlement while motions to dismiss were pending); *Schuler*, 2016 U.S. Dist. LEXIS 82344, at *30-31 (awarding 33% of $4.25 million settlement, representing a 3.57 multiplier, where settlement was reached while motion to dismiss was pending); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (awarding multiplier of 3.47 before any formal discovery); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (noting that multiplier of 5.3 was "not atypical for similar fee-award cases"); *WorldCom*, 388 F. Supp. 2d at 354-59 (multiplier of 4.0); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including

this Court.").[12]  The 3.10 multiplier requested here is eminently reasonable because it is at the *lower* end of the "multipliers of between 3 and 4.5 [that] have become common."  *Wal-Mart*, 396 F.3d at 123 (affirming multiplier of 3.5 as reasonable).

## V.   LEAD COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY INCURRED IN THE PROSECUTION OF THIS ACTION

Lead Counsel also requests the reimbursement of $91,267.89 in expenses reasonably and necessarily incurred while prosecuting this Action.  (*See* Lieberman Decl., Ex. 2, ¶ 5, Ex. B (Expenses Summary)); *see also In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 143 (S.D.N.Y. 2008) ("Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (finding courts may compensate class counsel for reasonable out-of-pocket expenses necessary for the representation of the class); *Flag*, 2010 U.S. Dist. LEXIS 119702, at *86 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

Lead Counsel's supporting declarations attest to the accuracy of these expenses.  (*See* Lieberman Decl., Ex. 2, ¶ 5, Ex. B (Expenses Summary)).  Because the expenses were incurred with no guarantee of recovery, counsel had a strong incentive to keep them at a reasonable level, and they did so.  Counsel made a concerted effort to avoid unnecessary expenditures and economized wherever possible.  The largest expenditures arose out of the professional services

---

[12] *See also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM), 2014 U.S. Dist. LEXIS 37872, at *84-85 (S.D.N.Y. Mar. 21, 2014) (multiplier of 3.05); *In re Deutsche Telekom AG Sec. Litig.*, No. 00-cv-9475 (NRB), 2005 U.S. Dist. LEXIS 45798, at *13-14 (S.D.N.Y. June 9, 2005) (multiplier of 3.96); *In re Interpublic Sec. Litig.*, No. 02-cv-6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *36-37 (S.D.N.Y. Oct. 26, 2004) (multiplier of 3.96); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *Kurzweil v. Philip Morris Cos.*, No. 94 Civ. 2373 (MBM), 1999 U.S. Dist. LEXIS 18378, at *7-8 (S.D.N.Y. Nov. 24, 1999) (noting that multipliers between 3 and 4.5 are common in federal securities cases).

rendered by experts, investigators, and mediators, without whom this case would not have been pursued and resolved.  These expenses were reasonable and necessary to Lead Plaintiff's success in achieving the Settlement.  *See, e.g.*, *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 n. 8 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel); *Campos v. Goode*, No. 10 Civ. 0224 (DF), 2011 WL 9530385, at *8 (S.D.N.Y. Mar. 4, 2011) (reimbursing mediation fee); *MetLife*, 689 F. Supp. 2d at 364 (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses"); *Glob. Crossing*, 225 F.R.D. at 468 (holding expenses were "properly chargeable to the Settlement fund" because they "include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – [which] are the type for which 'the paying, arms' length market' reimburses attorneys").

Notably, the requested expenses reimbursement is substantially ***lower*** than the expense figure of $275,000.00 that was described in the Notice.  *See* Ewashko Decl., Ex. A (Notice Packet), at 2, which generated ***zero*** objections and only three requests for exclusion, despite 170,735 Notices having been mailed.  The Settlement Class has spoken, and it deemed an even higher amount of expenses than the figure currently sought to be reasonable under the circumstances.

The expenses incurred in the prosecution of this Action do not include the expenses of the Claims Administrator incurred for work done in providing Court-ordered Notice of the Settlement and administering the claims process.  As set forth in the Stipulation, and pursuant to Paragraph 9 of the Preliminary Approval Order, those costs are being paid, after review and approval by Lead Counsel, from the Notice Administration Fund.

20

## VI.    LEAD PLAINTIFF'S COMPENSATORY AWARD SHOULD BE PERMITTED

The PSLRA permits plaintiffs to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class . . ."  15 U.S.C. § 78u-4(a)(4); *see also Hicks*, 2005 U.S. Dist. LEXIS 24890, at *30 ("Courts in [the Second] Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages[.]").  Congress, in fact, intended to grant courts discretion to grant awards in appropriate cases.  *See* H.R. Rep. No. 104-369, at 6 (1995) (Conf. Rep.) ("[L]ead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and [the committee] grants the courts discretion to award fees accordingly."); S. Rep. No. 104-98, at 10 (1995) ("[T]he Committee grants courts discretion to award the lead plaintiff reimbursement for reasonable costs and expenses (including lost wages) directly relating to representation of the class.").

Lead Plaintiff's declaration, filed concurrently with this brief, as confirmed by the declaration of Lead Counsel, attests to the attentiveness, active involvement, and care with which Lead Plaintiff performed her duties, the tasks that she performed, the manner in which she monitored the Action, her oversight of the settlement process, and her time expended performing these roles.  (Lieberman Decl., Ex. 4 (Declaration of Xiya Qian in Support of Lead Plaintiff's Unopposed Motions for (I) Final Approval of Class Action Settlement and Plan of Allocation of Settlement Proceeds and (II) Award of Attorneys' Fees, Reimbursement of Expenses, and Compensatory Award to Lead Plaintiff), ¶¶ 4, 6).   Lead Counsel therefore respectfully submits that the relatively modest request of a $5,000 award to Lead Plaintiff to compensate her for her time and service to the Settlement Class is reasonable, especially when compared to the lead plaintiffs' awards routinely granted by courts. *See Elkin*, 2018 WL 8951073, at *2 (awarding lead plaintiff $10,000 in case that settled while motion to dismiss was pending); *Colgate-Palmolive*, 36

F. Supp. 3d at 354 (awarding six plaintiffs $5,000 each, for total plaintiff award of $30,000, while motion to dismiss was pending); *Park v. Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 U.S. Dist. LEXIS 84551, at *18-19 (S.D.N.Y. Oct. 22, 2008) (awarding $5,000); *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-02237 (JSR), 2008 U.S. Dist. LEXIS 122149, at *7 (S.D.N.Y. Nov. 24, 2008) (awarding $7,303.08 for reasonable costs and expenses directly relating to the representation of the class); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 collectively to eight lead plaintiffs for services rendered to the class).

A lead plaintiff's "reasonable costs and expenses incurred in managing [the] litigation and representing the Class"—as requested by Lead Plaintiff here—results from "precisely the types of activit[y] that support[s]" compensatory awards to class representatives. *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 U.S. Dist. LEXIS 120953, at *6-7 n.1, 61-62 (S.D.N.Y. Dec. 23, 2009) (awarding over $200,000 to lead plaintiffs). Lead Plaintiff's requested award is also appropriate in light of its relationship to "the amounts recovered by absent class members under the settlement." *Metlife*, 689 F. Supp. 2d at 370; *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761 (CM), 2008 U.S. Dist. LEXIS 58106, at *3-4, 57 (S.D.N.Y. July 31, 2008) ($3,000 award from $1.2 million settlement); *Hicks*, 2005 U.S. Dist. LEXIS 24890, at *30-31 ($7,500 award from $10 million settlement).

## VII.   CONCLUSION

For all the reasons described above, Lead Plaintiff and Lead Counsel respectfully request that the Court: (a) award attorneys' fees in the amount of 33.33% of the gross Settlement fund, *i.e.*, $5,000,000, plus interest; (b) approve reimbursement of $91,267.89 in aggregate expenses; and (c) grant an award to Lead Plaintiff in the amount of $5,000.

Dated:  February 14, 2020

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
Michael Grunfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (917) 463-1044
Email: jalieberman@pomlaw.com
      mgrunfeld@pomlaw.com

*Lead Counsel for Lead Plaintiff Xiya Qian and
the Settlement Class*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

*Additional Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

.

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman