```
    k3r1ubic
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  In re Ubiquiti Networks, Inc.
   Securities Litigation
4                                              18 Civ. 1620 (VM)
5                                              Fairness Hearing
                                                (Via Teleconference)
6  ------------------------------x
                                                New York, N.Y.
7                                               March 27, 2020
                                                10:03 a.m.
8
   Before:
9
                     HON. VICTOR MARRERO,
10
                                         District Judge
11
                          APPEARANCES
12
   POMERANTZ LLP
13      Attorneys for Lead Plaintiff
   BY: JEREMY A. LIEBERMAN, ESQ.
14      MICHAEL GRUNFELD, ESQ.

15 SIMPSON THACHER & BARTLETT LLP
        Attorneys for Defendant
16 BY: PETER E. KAZANOFF, ESQ.
        JONATHAN T. MENITOVE, ESQ.
17
18
19
20
21
22
23
24
25

1            THE COURT:  Good morning.  This is Judge Marrero.

2            ALL COUNSEL:  Good morning, your Honor.

3            THE COURT:  Do I have the parties on the line?

4            MR. LIEBERMAN:  Yes, your Honor.  Good morning.

5    Jeremy Lieberman and Michael Grunfeld from Pomerantz LLP on

6    behalf of lead plaintiff.

7            MR. KAZANOFF:  And good morning, your Honor.  Peter

8    Kazanoff and Jon Menitove from Simpson Thacher on behalf of the

9    defendants.

10           THE COURT:  And we have a court reporter on the line?

11           THE REPORTER:  Yes, your Honor.  Good morning.  This

12   is Khris Sellin.

13           THE COURT:  Thank you all for making yourselves

14   available for this conference by this means under very, very

15   difficult and challenging circumstances.  I very much

16   appreciate the parties' cooperation in making it possible for

17   us to proceed by telephone with this conference.  I'm aware of

18   the enormous hardships and difficulties that the current crisis

19   is causing to everybody in the court, but with the kind of

20   cooperation and support that you've all provided us, we're able

21   by this means to enable the Court's work to continue; a little

22   bit hobbled, but nonetheless we're getting there.  Again, thank

23   you.

24           This proceeding was scheduled some time ago to be the

25   final approval of the case, the settlement that the parties had

negotiated in connection with the class action.  I have received and reviewed the documentations that the parties have provided indicating that they believe that settlement is fair and adequate to the class and why the Court should give final approval to the settlement.  So the proceeding was scheduled as a hearing on that motion.  I will then ask the plaintiffs, briefly, to indicate why they believe the settlement meets the various *Grinnell* factors under the Second Circuit's standard for approval of class settlements of this kind and the *Goldberger* factors of approval for attorney's fees in connection with a class action settlement.

Plaintiffs?

MR. LIEBERMAN:  Sure.  Good morning, your Honor.  And on behalf of plaintiffs, we'd like to thank the Court for its attention throughout the case and being able to move forward, again, under difficult circumstances for the Court as well.

THE COURT:  Let me ask -- sorry -- that when you speak, you identify yourself for the purposes of the reporter.

MR. LIEBERMAN:  Sure.  Jeremy Lieberman on behalf of lead plaintiffs.

THE COURT:  Go ahead.

MR. LIEBERMAN:  Sure.  So your Honor, just to really recap what's already been stated in extensive detail in the papers, we believe the $15 million settlement presented to the Court is an excellent result for the class and gives them

immediate relief to what would otherwise be very extensive and hard-fought proceedings with no real guarantee of any recovery. We estimate the damages to be in a range of 100 to 180 million. Quite a big range, but it does depend on various models used on damages, and really the midpoint of that range puts one at 11 percent here, which, according to the reports issued by Cornerstone and others, 11 percent settlement is well above the average in securities litigations and class actions in this circuit and throughout the nation.

The litigation was conducted in a manner that the parties were all well aware of the merits of the case. We filed an extensive amended complaint in this action. There was letter briefing before the Court regarding an anticipated motion to dismiss by defendants. Ultimately the Court indicated that it would likely deny the motion to dismiss, which helped precipitate mediation discussions with Jed Melnick of JAMS. Those discussions entailed significant briefing. There was a lot of briefing back and forth between the parties on a number of issues, particularly damages. There was a lot of discussion between plaintiffs and defendants as to the different damages models. Defendants were very adamant that our claimed damages here of 100 to 180 million was far too much and wasn't supportable. So we really got through a process that began in the fall of 2019, where we exchanged mediation briefs, had a mediation session, and ultimately were able to

1   resolve the case for 15 million.
2           A key metric or key benchmark to look at as to whether
3   or not the settlement is fair is whether or not there are any
4   objections.  Here, there's not one objection to this
5   settlement, even though 170,735 notices have gone out to class
6   members.  Not one class member has objected to the settlement.
7   There have been three exclusions to the settlement.  That's
8   quite also a low number in a case like this, as this Court
9   knows.  The exclusions amount to little more than several
10  hundred shares of these particular stocks, so ultimately the
11  clientele, as it were, speak to whether or not the settlement
12  is good, and there's very little objection.  There's zero
13  objection and there are few exclusions, which means that class
14  members want to participate in the settlement; they don't want
15  to do anything to harm it.
16          So that's --
17          THE COURT:  Mr. Lieberman?
18          MR. LIEBERMAN:  Sure.
19          THE COURT:  Let me pause there for a moment.  You
20  indicated that there were three exclusions.  Of course this is
21  a very minor point, but the supplemental declaration of
22  Mr. Ewashko indicated that there were five exclusions.  Is that
23  three that you just indicated now a later number or what?
24          MR. LIEBERMAN:  When we filed the initial final
25  approval papers, there were three exclusions.  Mr. Grunfeld, my

k3r1ubic

1  partner, is on the phone with me.  He might know better if it's
2  five or three.  Michael, is it five?
3            MR. GRUNFELD:  Yeah, that's right.  The Court is
4  correct that it was five total with the final papers.
5            MR. LIEBERMAN:  I apologize, your Honor.  When we
6  filed the initial papers, there were only three exclusions, and
7  then apparently two more have now been filed.  But --
8            THE COURT:  Thank you.
9            MR. LIEBERMAN:  Yeah.  Ultimately the level of shares
10 represented by all the exclusions, all five of them, are no
11 more than several hundred.
12           So that's as far as the settlement goes.
13           As far as the attorney's fees are concerned, we're
14 requesting the fee of 1/3, which, again, is really consistent
15 with fees that are awarded.  At this level of settlement,
16 15 million, it's very typical and very standard, and we believe
17 the *Goldberger* factors do warrant such an award.  The
18 settlement is a very good one for the class that we've been
19 able to achieve.  We've been working thus far on a fully
20 contingent fee basis.  As we mentioned in our briefing, the
21 *Facebook* case, which was a $26 million settlement, had a 1/3
22 fee award; and the *El Paso* litigation had a $15 million
23 settlement and had a 1/3 fee award, as well as several others
24 mentioned in our briefs as well had a similar level.
25           The requested fee here of 5 million would provide us

with -- our lodestar in the case was 1.614 million, a fee with a multiplier of 3.10, and that's, again, well within the norm of this circuit. I refer the Court to the *WorldCom* litigation, where there was a 4.0 multiplier, and the *Payment Card Industry Litigation* litigation, which was a 3.41 multiplier. So again, the requested 3.10 multiplier is well within the standard of this circuit.

We also are asking for $91,267.89 in fees and expenses, and that's in out-of-pocket expenses that are laid out by our firm, dealing primarily with expert reports, investigators, and other costs and matters that were necessary to litigate this action. Again, relatively small amounts in a case of this size, and well within the norm of this circuit.

The award that we're seeking for lead plaintiff is $5,000 compensatory award. Again, we think lead plaintiff here did a substantial amount of work in overseeing the case, in overseeing the litigation. We put her name out there as the plaintiff and as someone, you know, who could have been a class member, and so we do think some compensatory award of $5,000 is appropriate and, again, has been accepted by courts in the Second Circuit as an appropriate award.

So in all, as we've set forth in the papers and as I tried to summarize here, we do think the settlement meets all the *Grinnell* factors before this Court and then the fees requested, attorney's fees, meet the *Goldberger* factors, and we

1   would request that the Court grant those.

2   　　　　　THE COURT:  All right.  I thank you.

3   　　　　　Any further word from anyone who wishes to address

4   this issue?  Defendants have anything to record?

5   　　　　　MR. KAZANOFF:  Your Honor, Peter Kazanoff from Simpson

6   Thacher.  We don't have anything to add other than to thank the

7   Court, the Court's staff, including the clerk and the reporter,

8   for making themselves available for this teleconference.

9   　　　　　THE COURT:  All right.  I thank you.

10  　　　　　Is there anyone from the public who wishes to speak?

11  This proceeding is a public proceeding.  We've made

12  arrangements for there to be access to the press should anyone

13  wish to listen in on the proceeding or any member of the public

14  who may have gotten notice and wished to address the issues.

15  　　　　　Hearing none, I am therefore closing the hearing.

16  　　　　　On the basis of the Court's review of the parties'

17  various submissions in support of the motion for final approval

18  of the settlement, I am persuaded that the proposed settlement

19  satisfies the *Grinnell* factors in that the amount of the

20  settlement of $15 million is fair and reasonable and adequate

21  for the class.  The issues involved here raised some very

22  difficult substantive questions that the Court considered when

23  the parties engaged in premotion conference letters relating to

24  prospective motions to dismiss.  Those were difficult issues.

25  Although not fully litigated on point, the Court views them as

k3r1ubic

1  having raised difficult questions of law that would have taken
2  a substantial amount of time, effort, and resources to resolve
3  ultimately.
4         The fact that there are no objections and there are
5  only five exclusions indicates a view that the literally tens
6  or hundreds of thousands of shareholders view this settlement
7  as fair, adequate, and reasonable to them.
8         So on the basis of all of the *Grinnell* factors, the
9  Court believes that the settlement should receive final
10 approval.
11        And similarly, the Court is persuaded that the
12 proposed attorney's fee of 1/3 is fair and adequate and
13 reasonable to the class, given similar awards of attorney's
14 fees in these types of class actions in this court, so the
15 Court will grant the application for attorney's fees and
16 reimbursement of $91,267.89 in expenses, plus interest.  And I
17 will grant approval for lead plaintiff's request for an award
18 of $5,000.
19        I thank you all again.  The Court will issue a final
20 order today giving the final approval.
21        Have a good day and a good weekend.
22        ALL COUNSEL:  Thank you very much.
23        THE COURT:  Stay safe and healthy during the crisis,
24 and thank you again for everything.
25        ALL COUNSEL:  Thank you, your Honor.

                              o0o