k3r1ubic

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    In re Ubiquiti Networks, Inc.
     Securities Litigation
4                                        18 Civ. 1620 (VM)

5                                        Fairness Hearing
                                         (Via Teleconference)
6    ------------------------------x
                                         New York, N.Y.
7                                        March 27, 2020
                                         10:03 a.m.
8
     Before:
9
                        HON. VICTOR MARRERO,
10
                                         District Judge
11
                              APPEARANCES
12
     POMERANTZ LLP
13        Attorneys for Lead Plaintiff
     BY:  JEREMY A. LIEBERMAN, ESQ.
14        MICHAEL GRUNFELD, ESQ.

15   SIMPSON THACHER & BARTLETT LLP
          Attorneys for Defendant
16   BY:  PETER E. KAZANOFF, ESQ.
          JONATHAN T. MENITOVE, ESQ.
17

18

19

20

21

22

23

24

25

k3r1ubic

1           THE COURT:  Good morning.  This is Judge Marrero.

2           ALL COUNSEL:  Good morning, your Honor.

3           THE COURT:  Do I have the parties on the line?

4           MR. LIEBERMAN:  Yes, your Honor.  Good morning.

5    Jeremy Lieberman and Michael Grunfeld from Pomerantz LLP on

6    behalf of lead plaintiff.

7           MR. KAZANOFF:  And good morning, your Honor.  Peter

8    Kazanoff and Jon Menitove from Simpson Thacher on behalf of the

9    defendants.

10          THE COURT:  And we have a court reporter on the line?

11          THE REPORTER:  Yes, your Honor.  Good morning.  This

12   is Khris Sellin.

13          THE COURT:  Thank you all for making yourselves

14   available for this conference by this means under very, very

15   difficult and challenging circumstances.  I very much

16   appreciate the parties' cooperation in making it possible for

17   us to proceed by telephone with this conference.  I'm aware of

18   the enormous hardships and difficulties that the current crisis

19   is causing to everybody in the court, but with the kind of

20   cooperation and support that you've all provided us, we're able

21   by this means to enable the Court's work to continue; a little

22   bit hobbled, but nonetheless we're getting there.  Again, thank

23   you.

24          This proceeding was scheduled some time ago to be the

25   final approval of the case, the settlement that the parties had

k3r1ubic

1    negotiated in connection with the class action.  I have

2    received and reviewed the documentations that the parties have

3    provided indicating that they believe that settlement is fair

4    and adequate to the class and why the Court should give final

5    approval to the settlement.  So the proceeding was scheduled as

6    a hearing on that motion.  I will then ask the plaintiffs,

7    briefly, to indicate why they believe the settlement meets the

8    various *Grinnell* factors under the Second Circuit's standard

9    for approval of class settlements of this kind and the

10   *Goldberger* factors of approval for attorney's fees in

11   connection with a class action settlement.

12           Plaintiffs?

13           MR. LIEBERMAN:  Sure.  Good morning, your Honor.  And

14   on behalf of plaintiffs, we'd like to thank the Court for its

15   attention throughout the case and being able to move forward,

16   again, under difficult circumstances for the Court as well.

17           THE COURT:  Let me ask -- sorry -- that when you

18   speak, you identify yourself for the purposes of the reporter.

19           MR. LIEBERMAN:  Sure.  Jeremy Lieberman on behalf of

20   lead plaintiffs.

21           THE COURT:  Go ahead.

22           MR. LIEBERMAN:  Sure.  So your Honor, just to really

23   recap what's already been stated in extensive detail in the

24   papers, we believe the $15 million settlement presented to the

25   Court is an excellent result for the class and gives them

k3r1ubic

immediate relief to what would otherwise be very extensive and
hard-fought proceedings with no real guarantee of any recovery.
We estimate the damages to be in a range of 100 to 180 million.
Quite a big range, but it does depend on various models used on
damages, and really the midpoint of that range puts one at
11 percent here, which, according to the reports issued by
Cornerstone and others, 11 percent settlement is well above the
average in securities litigations and class actions in this
circuit and throughout the nation.

        The litigation was conducted in a manner that the
parties were all well aware of the merits of the case.  We
filed an extensive amended complaint in this action.  There was
letter briefing before the Court regarding an anticipated
motion to dismiss by defendants.  Ultimately the Court
indicated that it would likely deny the motion to dismiss,
which helped precipitate mediation discussions with Jed Melnick
of JAMS.  Those discussions entailed significant briefing.
There was a lot of briefing back and forth between the parties
on a number of issues, particularly damages.  There was a lot
of discussion between plaintiffs and defendants as to the
different damages models.  Defendants were very adamant that
our claimed damages here of 100 to 180 million was far too much
and wasn't supportable.  So we really got through a process
that began in the fall of 2019, where we exchanged mediation
briefs, had a mediation session, and ultimately were able to

k3r1ubic

1   resolve the case for 15 million.

2           A key metric or key benchmark to look at as to whether

3   or not the settlement is fair is whether or not there are any

4   objections.  Here, there's not one objection to this

5   settlement, even though 170,735 notices have gone out to class

6   members.  Not one class member has objected to the settlement.

7   There have been three exclusions to the settlement.  That's

8   quite also a low number in a case like this, as this Court

9   knows.  The exclusions amount to little more than several

10  hundred shares of these particular stocks, so ultimately the

11  clientele, as it were, speak to whether or not the settlement

12  is good, and there's very little objection.  There's zero

13  objection and there are few exclusions, which means that class

14  members want to participate in the settlement; they don't want

15  to do anything to harm it.

16          So that's --

17          THE COURT:  Mr. Lieberman?

18          MR. LIEBERMAN:  Sure.

19          THE COURT:  Let me pause there for a moment.  You

20  indicated that there were three exclusions.  Of course this is

21  a very minor point, but the supplemental declaration of

22  Mr. Ewashko indicated that there were five exclusions.  Is that

23  three that you just indicated now a later number or what?

24          MR. LIEBERMAN:  When we filed the initial final

25  approval papers, there were three exclusions.  Mr. Grunfeld, my

k3r1ubic

1    partner, is on the phone with me.  He might know better if it's

2    five or three.  Michael, is it five?

3         MR. GRUNFELD:  Yeah, that's right.  The Court is

4    correct that it was five total with the final papers.

5         MR. LIEBERMAN:  I apologize, your Honor.  When we

6    filed the initial papers, there were only three exclusions, and

7    then apparently two more have now been filed.  But --

8         THE COURT:  Thank you.

9         MR. LIEBERMAN:  Yeah.  Ultimately the level of shares

10   represented by all the exclusions, all five of them, are no

11   more than several hundred.

12         So that's as far as the settlement goes.

13         As far as the attorney's fees are concerned, we're

14   requesting the fee of 1/3, which, again, is really consistent

15   with fees that are awarded.  At this level of settlement,

16   15 million, it's very typical and very standard, and we believe

17   the *Goldberger* factors do warrant such an award.  The

18   settlement is a very good one for the class that we've been

19   able to achieve.  We've been working thus far on a fully

20   contingent fee basis.  As we mentioned in our briefing, the

21   *Facebook* case, which was a $26 million settlement, had a 1/3

22   fee award; and the *El Paso* litigation had a $15 million

23   settlement and had a 1/3 fee award, as well as several others

24   mentioned in our briefs as well had a similar level.

25         The requested fee here of 5 million would provide us

k3r1ubic

1    with -- our lodestar in the case was 1.614 million, a fee with

2    a multiplier of 3.10, and that's, again, well within the norm

3    of this circuit.  I refer the Court to the *WorldCom* litigation,

4    where there was a 4.0 multiplier, and the *Payment Card Industry*

5    *Litigation* litigation, which was a 3.41 multiplier.  So again,

6    the requested 3.10 multiplier is well within the standard of

7    this circuit.

8         We also are asking for $91,267.89 in fees and

9    expenses, and that's in out-of-pocket expenses that are laid

10    out by our firm, dealing primarily with expert reports,

11    investigators, and other costs and matters that were necessary

12    to litigate this action.  Again, relatively small amounts in a

13    case of this size, and well within the norm of this circuit.

14         The award that we're seeking for lead plaintiff is

15    $5,000 compensatory award.  Again, we think lead plaintiff here

16    did a substantial amount of work in overseeing the case, in

17    overseeing the litigation.  We put her name out there as the

18    plaintiff and as someone, you know, who could have been a class

19    member, and so we do think some compensatory award of $5,000 is

20    appropriate and, again, has been accepted by courts in the

21    Second Circuit as an appropriate award.

22         So in all, as we've set forth in the papers and as I

23    tried to summarize here, we do think the settlement meets all

24    the *Grinnell* factors before this Court and then the fees

25    requested, attorney's fees, meet the *Goldberger* factors, and we

k3r1ubic

 1    would request that the Court grant those.

 2              THE COURT:  All right.  I thank you.

 3              Any further word from anyone who wishes to address

 4    this issue?  Defendants have anything to record?

 5              MR. KAZANOFF:  Your Honor, Peter Kazanoff from Simpson

 6    Thacher.  We don't have anything to add other than to thank the

 7    Court, the Court's staff, including the clerk and the reporter,

 8    for making themselves available for this teleconference.

 9              THE COURT:  All right.  I thank you.

10              Is there anyone from the public who wishes to speak?

11    This proceeding is a public proceeding.  We've made

12    arrangements for there to be access to the press should anyone

13    wish to listen in on the proceeding or any member of the public

14    who may have gotten notice and wished to address the issues.

15              Hearing none, I am therefore closing the hearing.

16              On the basis of the Court's review of the parties'

17    various submissions in support of the motion for final approval

18    of the settlement, I am persuaded that the proposed settlement

19    satisfies the *Grinnell* factors in that the amount of the

20    settlement of $15 million is fair and reasonable and adequate

21    for the class.  The issues involved here raised some very

22    difficult substantive questions that the Court considered when

23    the parties engaged in premotion conference letters relating to

24    prospective motions to dismiss.  Those were difficult issues.

25    Although not fully litigated on point, the Court views them as

k3r1ubic

1    having raised difficult questions of law that would have taken

2    a substantial amount of time, effort, and resources to resolve

3    ultimately.

4              The fact that there are no objections and there are

5    only five exclusions indicates a view that the literally tens

6    or hundreds of thousands of shareholders view this settlement

7    as fair, adequate, and reasonable to them.

8              So on the basis of all of the *Grinnell* factors, the

9    Court believes that the settlement should receive final

10   approval.

11             And similarly, the Court is persuaded that the

12   proposed attorney's fee of 1/3 is fair and adequate and

13   reasonable to the class, given similar awards of attorney's

14   fees in these types of class actions in this court, so the

15   Court will grant the application for attorney's fees and

16   reimbursement of $91,267.89 in expenses, plus interest.  And I

17   will grant approval for lead plaintiff's request for an award

18   of $5,000.

19             I thank you all again.  The Court will issue a final

20   order today giving the final approval.

21             Have a good day and a good weekend.

22             ALL COUNSEL:  Thank you very much.

23             THE COURT:  Stay safe and healthy during the crisis,

24   and thank you again for everything.

25             ALL COUNSEL:  Thank you, your Honor.
                                o0o