# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE UBIQUITI NETWORKS, INC. SECURITIES LITIGATION | Case No. 18-CV-01620 (VM) |

## DECLARATION OF LUIGGY SEGURA
### IN SUPPORT OF LEAD PLAINTIFF'S
### <u>MOTION FOR APPROVAL OF DISTRIBUTION PLAN</u>

I, LUIGGY SEGURA, declare and state as follows:

1.      I am a Director at JND Legal Administration ("JND").  I am over 21 years of age and am not a party to this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently thereto.

2.      JND was retained by Lead Counsel to serve as the Claims Administrator in connection with the Settlement of the above-captioned action (the "Litigation").[1]  Pursuant to paragraph 8 of the Court's Order Preliminarily Approving Settlement and Providing for Notice, dated December 11, 2019 the (ECF No. 40, the "Preliminary Approval Order"), JND was appointed to act as the Claims Administrator in connection with the proposed settlement of the Action.  On March 27, 2020, the Court entered the Final Judgment Approving Class Action Settlement and Order of Dismissal With Prejudice (ECF No. 492, the "Final Approval Order"), granting final approval of the Settlement reached in the Action.  Pursuant to the Settlement, $15,000,000 in cash was deposited into escrow for the Settlement Class' benefit.  The Effective Date of the Settlement has occurred, and the Net Settlement Fund may be distributed to Authorized Claimants pursuant to Order of this Court.  *See* Stipulation, ¶¶ 8.1.

3.      As Claims Administrator, JND has, among other things: (i) mailed the Notice of Proposed Settlement of Class Action (the "Notice") and the Proof of Claim and Release form (the "Proof of Claim Form" or "Claim Form" and, together with the Notice, the "Notice Packet") to potential Settlement Class Members and brokers and other nominees; (ii) created and continues to maintain a toll-free helpline for inquiries during the course of the administration; (iii) designed, implemented, and launched a case-specific website which became operational on December 26, 2019, and includes the claim-filing deadlines and copies of the Stipulation, Preliminary Approval Order, Proof of Claim Form, and Notice; (iv) published the Summary Notice; (v) provided, upon request, additional copies of the Notice Packet to potential Settlement Class Members, brokers, and other nominees; (vi) received and processed Proof of Claim Forms submitted in connection with the

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed in the Stipulation of Settlement dated December 2, 2019 (Dkt. No. 39-1) ("Stipulation").

DECLARATION OF LUIGGY SEGURA

Settlement; (vii) reviewed submitted Proof of Claim Forms for accuracy and completeness and to ensure that they were supported by sufficient documentary evidence; (viii) provided notice to Claimants whose claims were deficient or rejected; (ix) worked with Claimants to help fix their Claims; and (x) calculated Claimants' recognized loss ("Recognized Loss"), both on an individual and a Settlement-Class-wide basis, pursuant to the Court-approved Plan of Allocation set forth in the Notice.

4.     JND has completed processing all Proof of Claims ("Claims") received through July 15, 2020, in accordance with the terms of the Stipulation and the Court-approved Plan of Allocation set forth in the Notice, and hereby submits its administrative determinations accepting and rejecting the Claims in preparation for a distribution of the Net Settlement Fund to Authorized Claimants. JND also presents this declaration in support of Lead Plaintiffs' Motion for Approval of Distribution Plan.

## I.     DISSEMINATION OF NOTICE

5.     As more fully described in the Declaration of Jack Ewashko Regarding (A) Mailing of the Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date, dated February 13, 2020 (ECF No. 45-1, the "Initial Mailing Declaration") and Supplemental Declaration of Jack Ewashko Regarding (A) Mailing of Notice Packet; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections to Date, dated March 20, 2020 (ECF No. 47-3, the "Supplemental Mailing Declaration."), as of March 19, 2020, JND had mailed 195,132 Notice Packets to potential Settlement Class Members and their nominees.  Supplemental Mailing Declaration. ¶ 2; *see also* Initial Mailing Declaration. ¶¶ 2-12.

6.     JND     established     and     continues     to     maintain     a     website (www.UbiquitiNetworksSecuritiesLitigation.com) and a toll-free telephone helpline (1-844-924-0858) to assist potential Settlement Class Members.  The Settlement website (which provides access to important documents relevant to the Settlement) and the telephone helpline enable Settlement Class Members to obtain information about the Settlement.  In connection with establishing and

DECLARATION OF LUIGGY SEGURA

maintaining the Settlement Website and toll-free telephone hotline, JND, among other things, formulated a system to ensure that proper responses were provided to all telephone and electronic inquiries.  That work included training telephone agents to respond to inquiries specific to the Settlement; developing a series of common questions and the answers thereto, known as Frequently Asked Questions, or "FAQs"; loading key documents onto the Settlement Website; and programming the Settlement Website to permit the viewing and downloading of those documents.

7.      In accordance with Paragraph 8(b) of the Preliminary Approval Order, on January 6, 2020, JND caused the Summary Notice to be released via *Investor Business Daily* and on January 10, 2020, via *Globe Newswire*.  Initial Mailing Declaration. ¶ 13.

## II.      PROCEDURES FOLLOWED IN PROCESSING CLAIMS

8.      Under the terms of the Preliminary Approval Order and as set forth in the Notice, each Settlement Class Member who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to JND a properly executed Claim Form postmarked or submitted online no later than April 3, 2020, together with adequate supporting documentation for the transactions and holdings reported in the Claim.  Through July 15, 2020, JND has received and fully processed 62,545 Claims (the "Presented Claims").

9.      In preparation for receiving and processing Claims, JND: (i) conferred with Lead Counsel to define the guidelines for processing Claims; (ii) created a unique database to store Claim details, images of Claims, and supporting documentation (the "Settlement Database"); (iii) trained staff in the specifics of the Settlement so that Claims would be properly processed; (iv) formulated a system so that telephone and email inquiries would be properly responded to; (v) developed various computer programs and screens for entry of Settlement Class Members' identifying information and their transactional information; and (vi) developed a proprietary "calculation module" that would calculate Recognized Claims pursuant to the Court-approved Plan of Allocation of the Net Settlement Fund stated in the Notice.

DECLARATION OF LUIGGY SEGURA

10.     Settlement Class Members seeking to share in the Net Settlement Fund were directed in the Notice to submit their Claims to a post office box address specifically designated for the Settlement.  Any correspondence received at the post office box was reviewed and, when necessary, appropriate responses were provided to the senders.

## III.   PROCESSING CLAIMS

### A.     Paper and Online Claims

11.     Of the 62,545 Presented Claims, 3,123 are paper Claims and 907 were "online" Claims received through the online filing component of the settlement website.  Once received, the paper Claims were opened and prepared for scanning.  This process included unfolding documents, removing staples, copying nonconforming-sized documents, and sorting documents.  This manual task of preparing the paper Claims is very laborious and time-intensive.  Once prepared, paper Claims were scanned into the Settlement Database together with all submitted documentation.

12.     Each Claim was assigned a unique Claim number.  Once scanned, the information from each Claim (including the Claimant's name, address, account number/information from his, her, or its supporting documentation, and the Claimant's purchase/acquisition transactions, sale transactions, and holdings listed on the Claim) was entered into the Settlement Database.  Once entered into the Settlement Database, Claims were reviewed to verify that all required information had been provided.  The documentation provided by the Claimant in support of his, her, or its Claim was reviewed for authenticity and compared to the information provided in the Claim to verify the Claimant's identity and the purchase/acquisition transactions, sale transactions, and holdings listed on the Claim.  Some Claimants provided hundreds of pages of supporting documentation.

13.     To process the transactions detailed in the Claims, JND utilized internal messages to identify and classify deficiency or ineligibility conditions existing within those Claims.  Appropriate messages were assigned to the Claims as they were processed.  For example, where a Claim was submitted by a Claimant who did not have any eligible transactions in Ubiquiti securities during the Settlement Class Period (*e.g.*, the Claimant purchased Ubiquiti securities only after the Settlement Class Period), that Claim would receive a "Claim-level" message that denoted ineligibility.  Similar

DECLARATION OF LUIGGY SEGURA

Claim-level ineligible messages were used to denote other ineligible conditions, such as duplicate Claims. These messages would indicate to JND that the Claimant was not eligible to receive any payment from the Net Settlement Fund with respect to that Claim unless the deficiency was cured in its entirety. Examples of Claim-level messages are as follows:

- Inadequate Documentation Submitted for Entire Claim
- No Supporting Documentation Submitted for Entire Claim
- No Purchase Transaction in the Settlement Class Period

14. Because a Claim may be deficient only in part, but otherwise acceptable, JND utilized messages that were applied only to specific transactions within a Claim. For example, if a Claimant submitted a Claim with supporting documentation for all but one purchase transaction, that one transaction would receive a "transaction-level" message. The message indicated that although the transaction was deficient, the Claim was otherwise eligible for payment if other transactions in the Claim calculated to a Recognized Claim according to the Court-approved Plan of Allocation. Thus, even if the transaction-level deficiency was never cured, the Claim could still be partially accepted. Examples of transaction-level messages are as follows:

- No Supporting Documentation for Specific Transaction/Position
- Inadequate Documentation for Specific Transaction/Position
- Illegible Documentation for Specific Transaction/Position

**B.    Electronic Claims**

15. Of the 62,545 Presented Claims, 58,515 were filed electronically ("Electronic Claims" or "E-Claims"). Electronic Claims filers ("Electronic Claim Filers" or "E-Claim Filers") are typically banks, brokers, nominees and other-third party filers, who file claims on behalf of numerous claimants. Because E-Claim Filers typically submit a high volume (hundreds or thousands) of transactions during the Settlement Class Period on behalf of the beneficial owners, JND provides E-Claim Filers with the opportunity to mail a computer disc or electronically submit a file containing all the transactions – rather than provide reams of paper requiring data entry – so that JND can upload all transactions to the Settlement Database.

DECLARATION OF LUIGGY SEGURA

16.     JND maintains an electronic filing operations team (the "Electronic Filing Team") to coordinate and supervise the receipt and handling of all Electronic Claims.  In this case, the Electronic Filing Team reviewed and analyzed each electronic file to ensure that it was formatted in accordance with JND's required format and to identify any potential data issues or inconsistencies within the file.  If any issues or inconsistencies arose, JND notified the filer.  If the electronic file was deemed to be in an acceptable format, it was then loaded to the Settlement Database.

17.     Once each electronic file was loaded, the Electronic Claims were coded with messages to denote any deficient or ineligible conditions that existed within them.  These messages are similar to those applied to paper Claims.  In lieu of manually applying messages, the Electronic Filing Team performed programmatic reviews on Electronic Claims to identify deficient and ineligible conditions (such as, but not limited to, price out-of-range issues, out-of-balance conditions, transactions outside the Settlement Class Period, etc.).  The output was thoroughly verified and confirmed as accurate.

18.     The review process also included message coding any Electronic Claims that were not accompanied by a signed Proof of Claim Form, which serves as a "Master Proof of Claim Form" for all Claims referenced on the electronic file submitted.  This process was reviewed by JND's Electronic Filing Team and, when appropriate, JND contacted the E-Claim Filers whose submissions were missing information.  This ensured that only fully completed Claims, submitted by properly authorized representatives of the Claimants, were considered eligible for payment from the Net Settlement Fund.

19.     Finally, at the end of the process, JND performed various targeted reviews of Electronic Claims.  Specifically, JND used criteria such as the calculated Recognized Claims and other identified criteria to message code and reach out to a number of E-Claim Filers and request that various sample purchases, sales, and holdings selected by JND be documented by providing confirmation slips or other transaction-specific supporting documentation.  These targeted reviews help to ensure that electronic data supplied by Claimants does not contain inaccurate information.

C.      **Additional Complexities Encountered in Processing Claims**

DECLARATION OF LUIGGY SEGURA

20.     JND received a total of 62,545 claims. Approximately 60,744, or about 97%, of the 62,545 Proof of Claims received through July 15, 2020 were partially or wholly ineligible for one or more reasons, and, therefore, were subjected to the additional processing, correspondence and telephonic communications described in the section below entitled "The Deficiency Process." Notwithstanding the large number of deficient Claim Forms received, only 1 Claimant is still contesting JND's administrative rejection of his Claim Form.

21.     During the processing of Proof of Claims, JND encountered "non-conforming" Proof of Claims, which, in general, require significantly more work than standard Proof of Claims because of the information contained in or missing from the Proof of Claim, or because of the manner in which the Proof of Claim was completed.  Non-conforming Claims include, among other conditions, missing pages, no name or address, Proof of Claims that are blank but submitted with documentation for JND to complete, and Proof of Claims that are so materially deficient as to make what is being claimed unrecognizable.  A significant amount of time and resources was required to hand review those Claims.

## IV.     EXCLUDED PERSONS

22.     JND also reviewed all Claims to ensure that they were not submitted by, or on behalf of, "Excluded Persons," to the extent that the identities of such persons or entities were known to JND through the list of Defendants and other excluded persons and entities set forth in the Stipulation and the Notice and from the Claimants' certifications on the Proof of Claim Forms.  JND also reviewed all Claims against the list of persons who were excluded from the Settlement Class pursuant to request.

## V.     THE DEFICIENCY PROCESS

### A.     Paper and Online Claims

23.     Approximately 84% of the paper Claims, (*i.e.*, 2,616 of the 3,123 paper Claims), and 84% of the online Claims (*i.e.*, 765 of the 907 online Claims) were incomplete or had one or more defects or conditions of ineligibility, such as the Claim not being signed, not being properly documented, or indicating no eligible transactions in Ubiquiti Securities during the Settlement Class

Period. The "Deficiency Process," which primarily involved mailing letters to Claimants and responding to communications from Claimants by email and/or telephone, was intended to assist Claimants in properly completing their otherwise deficient submissions so that they could be eligible to participate in the Settlement.

24.     If paper of online Claims were determined to be defective, a Notice of Deficient Claim Submission ("Deficiency Notice") was sent to the Claimants describing the defect(s) in the Claims and what, if anything, was necessary to cure the defect(s) in these Claims. The Deficiency Notice advised Claimants that submission of appropriate information and/or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or the Claim would be recommended for rejection to the extent that the deficiency or condition of ineligibility was not cured. The Deficiency Notice also advised Claimants that to contest these administrative determinations, they were required to submit written statements to JND requesting Court review of their Claims and setting forth the basis for such requests. JND sent a total of 3,381 Deficiency Notices to Claimants who filed paper or online Claims that JND determined to be defective. Attached hereto as Exhibit A is an example of a Deficiency Notice.

25.     Claimants' responses to Deficiency Notices were scanned into the Settlement Database and associated with the corresponding Claims. The responses were then carefully reviewed and evaluated by JND's team of processors. If a Claimant's response corrected the defect(s), JND manually updated the Settlement Database to reflect the changes in the status of the Claim.

**B.     Electronic Claims**

26.     Approximately 98% of the E-Claims, *i.e.*, 57,363 of the 58,515 E-Claims, were incomplete or had one or more defects or conditions of ineligibility. These 57,363 deficient E-Claims were filed by a total of 42 E-Claim filers. JND informed each of the 42 E-Claim Filers of these deficiencies by sending an email ("Deficiency Email") to the email address included with the respective E-Claim Filers' Proof of Claim Form with an attached report containing detailed information associated with the Claims and indicating which of those Claims within the filing were deficient and/or rejected ("Deficiency Spreadsheet").

DECLARATION OF LUIGGY SEGURA

27.     The Deficiency Email sent to the email address of record provided with the Proof of Claim Form:

      (a)    <u>Notified the filer that any Claims with deficiencies not corrected within twenty (20) days from the date of the email may be rejected;</u>

      (b)    <u>Advised the filer of his, her, or its right to contest the rejection of the Claim(s) and request this Court's review of JND's administrative determination within twenty (20) days from the date of the Deficiency Email; and</u>

      (c)    <u>Provided instructions for how to submit corrections</u>.

28.     The Deficiency Spreadsheet attached to the Deficiency Email identified each of the individual Claims that were found to be deficient or ineligible and the basis for that deficiency or condition of ineligibility.

29.     The E-Claim Filers' responses were reviewed, scanned and/or loaded into JND's database, and associated with the corresponding Electronic Claims.  If a response corrected the defect(s) or affected an Electronic Claim's status, JND manually and/or programmatically updated the database to reflect such change in status of the Electronic Claim.

**C.**     **<u>Calling Campaign to Claimants Who Did Not Cure Deficiencies</u>**

30.     JND also called Claimants with still-deficient Claims to provide them with a final opportunity to cure the deficiencies in their Claims.

31.     JND provided assistance to Claimants where possible, depending on the nature of the deficiency.  For example, if a Claimant needed additional supporting documentation, JND explained the types of documentation that would render the Claim eligible, and how the Claimant could obtain the necessary documentation.  JND also provided some Claimants with direct phone numbers and email addresses so that Claimants could receive continued personalized attention and assistance.

32.     If JND could not reach a Claimant to speak one-on-one, JND left a voice message, when possible, requesting a return call.  JND explained in the voice message it was calling to assist

the Claimant in remedying outstanding deficiencies in his, her or its Claim.  JND also reached out to Claimants via email if a valid email address was provided in their Claim submission.

33.     If, in response to a telephone call or email, a Claimant cured the deficiency in his, her or its Claim by providing the appropriate information and/or supporting documentation, JND updated the Settlement Database to reflect the change in the status of the Claim.

## VI.    DISPUTED CLAIMS

34.     Claimants were advised they had the right to contest JND's administrative determination of deficiencies or ineligibility within twenty (20) days from the date of notification and that they could request that the dispute be submitted to the Court for review.  More specifically, Claimants were advised in the deficiency notice that, if they disputed JND's determination, they had to provide a statement of reasons indicating the grounds for contesting the determination, along with supporting documentation, and if the dispute concerning the Claim could not otherwise be resolved, Lead Counsel would thereafter present the request for review to the Court for a final determination.

35.     JND received 11 requests for court review.  JND reached out to each of these Claimants to fully explain JND's administrative determination with respect to their Claim and, through this additional outreach and explanation, 10 Claimants understood the reason for JND's determination to reject their Claims and they subsequently withdrew their requests for court review. Accordingly, there is only 1 outstanding request for court review.  Attached hereto as Exhibit B, is the outstanding request for court review.  Below are the details of this outstanding request for court review.

36.     Claim DUCNV-QX9HK – The Claimant submitted a timely Claim Form with supporting documentation. JND completed the processing and review of the six (6) purchase transactions and six (6) sale transactions, totaling 376 shares, of Ubiquiti common stock and the corresponding supporting documentation.  These transactions all occurred between February 12, 2014 and September 16, 2014.  The Plan of Allocation was provided in the Notice of Proposed Settlement of Class Action.  It states, in relevant part, that: "For each share of Ubiquiti Common Stock purchased during the period May 9, 2013 through September 17, 2017, inclusive… that was

DECLARATION OF LUIGGY SEGURA

sold prior to September 18, 2017, the Recognized Loss per share is $0." (see Section 1.a. on page 13 of the Notice.) Accordingly, this claim did not calculate to a Recognized Loss and is not eligible to participate in the recovery of this Settlement. On May 7, 2020, JND mailed a letter to the claimant, informing the claimant that the Claim did not calculate to a Recognized Loss in accordance with the Plan of Allocation. On May 22, 2020, JND received the Claimant's response, stating his grounds for contesting the determination of his Claim. JND reviewed the response, confirmed the determination, and made several attempts to contact the Claimant to further explain the determination. JND left a voicemail on May 27, 2020; spoke with the Claimant briefly on June 2, 2020 and advised that JND would call back to discuss and left another voicemail later that day. JND followed up with an email, again requesting acknowledgment and/or a response. On June 3, 2020, the Claimant replied and restated his request for court review.

37.      As set forth in ¶ 47(a) below, JND recommends the one (1) claim for rejection because the claim did not to calculate to a Recognized Claim according to the Court-approved Plan of Allocation.

## VII.   <u>LATE BUT OTHERWISE ELIGIBLE CLAIMS</u>

38.      Of the Presented Claims, 364 were received or postmarked after the April 3, 2020 Claim submission deadline established by the Court. JND processed all late Claims received through July 15, 2020, and 56 have been found to be otherwise eligible in whole or in part (the "Late But Otherwise Eligible Claims"). JND has not rejected any Claim received through July 15, 2020, solely based on its late submission. It is typical, and in fact the norm for courts to accept late filed claims in securities cases. Therefore, to the extent these claims are eligible but for the fact that they were late, they are recommended for payment by JND, subject to the Court's determination.

39.      However, there must be a final cut-off date after which no more Claims will be accepted so that there may be a proportional allocation of the Net Settlement Fund and the distribution may be accomplished. Acceptance of additional Claims or responses to notices of deficiency received during the finalization of the administration and the preparation of this application would necessarily require a delay in the distribution. Accordingly, JND also respectfully

DECLARATION OF LUIGGY SEGURA

requests that this Court order that no received Claim after July 15, 2020 or Claim adjusted after July 15, 2020, be eligible for payment for any reason whatsoever subject only to the provision of ¶ 50(e) of the proposed distribution plan discussed below.  Lead Counsel approves of this Claim cut-off date. If the Court adopts the proposed distribution plan, then, after Lead Counsel has determined that further distributions are not cost-effective and before any contribution of the residual funds to charity, if sufficient funds remain to warrant the processing of Claims received after July 15, 2020 or Claims adjusted after July 15, 2020, these Claims will be processed and, if any would have been eligible if timely received, these Claimants may be paid the distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent permitted by the amount of remaining funds.  *See* ¶ 50(e) below. With respect to previously-filed Claims that are cured or adjusted after July 15, 2020, such Claims will be reevaluated upon receipt of the adjustment and, to the extent that they are found eligible for a distribution or additional distribution, they will be treated in the same manner as Claims received after July 15, 2020.  However, should an adjustment be received that results in a lower Recognized Claim amount, that adjustment will be made, and the Recognized Claim amount will be reduced accordingly prior to a distribution to that Claimant.

## VIII.  <u>QUALITY ASSURANCE</u>

40.     An integral part of the claim's administration process is the Quality Assurance review.  Throughout the administration process, JND's Quality Assurance personnel worked to verify that Claims were processed properly by ensuring that information was entered correctly into the database, deficiency and/or rejection message codes were assigned accurately, and deficiency and/or rejection notification letters were sent appropriately.  After all Claims were processed, deficiency and/or rejection letters were mailed, and Claimants' responses to the deficiency and/or rejection letters were reviewed and processed, JND's Quality Assurance personnel performed additional Quality Assurance reviews.  These final Quality Assurance reviews further ensured the correctness and completeness of all Claims processed prior to preparing this declaration and all JND's final documents in support of distribution of the Net Settlement Fund.  As part of the Quality

Assurance reviews, JND:

(a)  Verified that all Proof of Claim Forms had signatures of authorized individuals;

(b)  Verified that true duplicate Claims were identified, verified, and rejected;

(c)  Verified that persons and entities excluded from the Settlement Class did not file Claims or their Claims were rejected upon review;

(d)  Performed a final Quality Assurance audit of Claims and all supporting documentation to ensure completeness of Claims;

(e)  Performed an audit of deficient Claims;

(f)  Performed additional review of Claims with high Recognized Claim amounts;

(g)  Audited Claims that were designated invalid;

(h)  Audited Claims with a Recognized Claim amount equal to zero;

(i)  Performed other auditing based on Claims completion requirements and the approved calculation specifications based on the Court-approved Plan of Allocation; and

(j)  Re-tested the accuracy of the Recognized Claim amount calculation program.

41.    In support of the work described above, JND's computer staff designed and implemented, and the project team tested, the following programs for this administration: (i) data entry screens that store Claim information (including all transactional data included on each Claim) and attach messages and, where necessary, text to denote conditions existing within the Claim; (ii) programs to load and analyze transactional data submitted electronically for all Electronic Claims; (iii) a program to compare the claimed transaction prices against the reported market prices to confirm that the claimed transactions were within an acceptable range of the reported market prices; (iv) a calculation program to analyze the transactional data for all Claims, and calculate each Claimant's Recognized Claim based on the Court-approved Plan of Allocation; and (v)

DECLARATION OF LUIGGY SEGURA

programs to generate various reports throughout and at the conclusion of the administration, including lists of all eligible and ineligible Claims.

42.     JND also used a variety of fraud protection controls throughout the administration process to identify potential fraudulent Claims.  Duplicate Claim searches, high value reviews, spot reviews and other standard audit reports that examined the information in a variety of ways were used during the Claim review process.

43.     As part of its due diligence in processing the Claims, JND reviewed and compared the entire database for the Settlement against the "watch list" of known questionable filers that JND has developed throughout its years of experiences as a Claims Administrator.  JND has worked closely with Law Enforcement to update that watch list with the latest information available.  JND performs searches based on names, aliases, addresses, and city/zip codes.  In addition, JND's claim processors are trained to identify any potentially inauthentic documentation when processing claims, including claims submitted by Claimants not previously captured in the "watch list."  Processors are instructed to message code any claim that matches to a record on the "watch list" and escalate them to management for review.  JND's Fraud Protection procedures identified one (1) potentially fraudulent Claim which was subject to further review and verification.  The claimant did not resolve the request for further documentation.

## IX.    RECOMMENDATIONS FOR APPROVAL AND REJECTION

44.     As noted above, JND received a total of 62,545 Claims.

### A.     Timely Submitted and Valid Claims

45.     A total of 62,181 Claims were received or postmarked on or before the Court-approved Claim submission deadline of April 3, 2020, of which 2,171 were determined by JND to be eligible and are recommended for approval ("Timely Eligible Claims").  The total Common Stock Recognized Loss amount for these Claims is $30,429,526.10 and the total Option Recognized Loss is $3,851,129.01.  A list with the timely Eligible Claims showing each Claimant's Recognized Claim is attached hereto as Exhibit C.

### B.     Late But Otherwise Eligible Claims

DECLARATION OF LUIGGY SEGURA

46.     A total of 364 Claims were received or postmarked after the Court-approved Claim submission deadline of April 3, 2020 but received on or before July 15, 2020.  Of those, 56 were determined by JND to be otherwise eligible and are recommended for approval ("Late But Otherwise Eligible Claims").   The total Common Stock Recognized Loss amount for these Claims is $542,302.09 and the total Option Recognized Loss amount for these Claims is $0.00. A list with the Late But Otherwise Eligible Claims showing each Claimant's Recognized Claim is attached hereto as Exhibit D.

**C.     Rejected Claims**

47.     After the responses to notices of deficiencies were processed, a total of 60,318 Claims (including the Disputed Claims discussed above) remain recommended for rejection by the Court ("Rejected Claims") for the following reasons:

(a)     46,836 Claim Did Not Result in a Recognized Claim;

(b)     11,681 Claim Did Not Fit Definition of the Class;

(c)     1,788 Deficient Claim Never Cured;

(d)     6 Duplicate Claim; and

(e)     7 Claim Withdrawn.

48.     A list of the Rejected Claims with the reasons for rejection is attached hereto as Exhibit E.

**X.     FEES AND DISBURSEMENTS**

49.     JND has agreed to be the Claims Administrator in exchange for payment of its fees and out-of-pocket expenses. Nevertheless, JND has done its best to keep the cost as low as possible considering the very high claims filing rate in this case. (Attached as Exhibit F are copies of all JND invoice for this matter.) JND's total fees and expenses for this matter through October 30, 2020, are $714,462.54. The brokerage firms and nominees charged JND another $60,220.50 for their work. To date, JND has been reimbursed in the amount of $250,000.00. JND respectfully requests payment of $524,683.04 for unreimbursed fees, expenses and broker fees.

DECLARATION OF LUIGGY SEGURA

XI.   **DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND**

50.   Should the Court concur with JND's determinations concerning the provisionally accepted and rejected Claims, including the Late But Otherwise Eligible Claims, JND recommends the following distribution plan (the "Distribution Plan"):

(a)   JND will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees as follows:

(i)   JND will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now.  In accordance with the Court-approved Plan of Allocation, JND will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund in accordance with the Court-approved Plan of Allocation.

(ii)   JND will, pursuant to the terms of the Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00.

(iii)   After eliminating claimants who would receive less than $10.00, JND will recalculate the *pro rata* distribution payments for Authorized Claimants who would receive $10.00 or more.

(iv)   JND will then conduct the Initial Distribution of the Net Settlement Fund in accordance with the Court's order

(b)   In order to encourage Authorized Claimants to promptly deposit their payments, all distribution checks will bear a notation: "CASH PROMPTLY.   VOID AND SUBJECT TO REDISTRIBUTION IF NOT

DECLARATION OF LUIGGY SEGURA

CASHED BY 90 DAYS AFTER ISSUE DATE."[2]

(c)     Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth in footnote 2 will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants, if Lead Counsel, in consultation with JND, determines that it is cost-effective to conduct a second distribution. Similarly, Authorized Claimants who do not cash their second or subsequent distribution checks (should such distributions occur) within the time allotted or on the conditions set forth in footnote 2 will irrevocably forfeit any further recovery from the Net Settlement Fund.

(d)     Consistent with the Court-approved Plan of Allocation, after JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, which efforts shall consist of the follow-up efforts described in footnote 2, but not earlier than six (6) months after the Initial Distribution, JND will, if Lead Counsel, in consultation with JND,

---

[2] For Authorized Claimants whose checks are returned as undeliverable, JND will endeavor to locate new addresses by running the undeliverable addresses through address-lookup services. Where a new address is located, JND will update the database accordingly and reissue a distribution check to the Authorized Claimant at the new address. In the event an Authorized Claimant loses or damages his, her, or its check, or otherwise requires a new check, JND will issue replacements. Distribution reissues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate. For all checks, JND will void the initial payment prior to reissuing a payment. In order not to delay further distributions to Authorized Claimants who have timely cashed their checks, JND's outreach program, described in the preceding sentences, shall end 30 days after the initial void date. Authorized Claimants will be informed that, if they do not cash their Initial Distribution checks within 90 days of the mail date, or they do not cash check reissues within 30 days of the mailing of such reissued check, their check will lapse, their entitlement to recovery will be irrevocably forfeited, and the funds will be reallocated to other Authorized Claimants. Reissue requests for lost or damaged checks will be granted after the void date on the checks as long as the request for the reissue is received no later than 45 days prior to the next planned distribution. Requests for reissued checks in connection with any subsequent distributions (should such distributions occur) will be handled in the same manner.

DECLARATION OF LUIGGY SEGURA

determines that it is cost-effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution").   Any amounts remaining in the Net Settlement Fund after the Initial Distribution (the funds for all void stale-dated checks), after paying any amounts mistakenly omitted from the initial disbursement, after deducting JND's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including JND's estimated costs of the Second Distribution and those of Lead Counsel as may be approved by the Court),  and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their first distribution check and who would receive at least $10.00 from such distribution based on their *pro rata* share of the remaining funds.  Additional distributions, after deduction of costs and expenses as described above and subject to the same conditions, may occur thereafter in 6-month intervals until Lead Counsel, in consultation with JND, determines that further distribution is not cost-effective.

(e)    At such time as Lead Counsel, in consultation with JND, determines that further distribution of the funds remaining in the Net Settlement Fund is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after July 15, 2020, such Claims will be processed, and any such Claims that are otherwise valid as well as any earlier received Claims for which an adjustment was received after July 15, 2020, which resulted in an increased Recognized Claim, will be paid in accordance with ¶ 50(f) below. If any funds remain in the Net Settlement Fund after payment of such late or late-adjusted Claims, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in connection with

DECLARATION OF LUIGGY SEGURA

administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed as instructed by Lead Counsel, subject to the Court's approval.

(f)     No new Claims may be accepted after July 15, 2020, and no further adjustments to Claims received on or before July 15, 2020, that would result in an increased Recognized Claim amount may be made for any reason after July 15, 2020, subject to the following exception.  If Claims are received after July 15, 2020 or modified after July 15, 2020, that would have been eligible for payment or additional payment under the Plan of Allocation if timely received, then, at the time that Lead Counsel, in consultation with JND, determines that a redistribution is not cost-effective as provided in ¶ 50(e) above, and after payment of any unpaid fees or expenses incurred in connection with administering the Net Settlement Fund and after deducting the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, such Claimants, at the discretion of Lead Counsel, may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible.

(g)     Unless otherwise ordered by the Court, one year after the Second Distribution, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, JND may destroy the paper copies of the Claims and all supporting documentation, and one year after all funds have been distributed, JND may destroy electronic copies of the same.

## XII.  <u>CONCLUSION</u>

51.     JND respectfully requests that the Court enter an Order approving its administrative

DECLARATION OF LUIGGY SEGURA

determinations accepting and rejecting the Claims submitted herein and approving the proposed Distribution Plan.  JND further respectfully submits that its fees and expenses, as reflected on the invoices attached hereto as Exhibit F, should be approved for payment from the Settlement Fund.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in New Hyde Park, New York, on November 23rd, 2020.

_____
Luiggy Segura

DECLARATION OF LUIGGY SEGURA